JS 44 (Rev. 02/19)

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. *(SEE INSTRUCTIONS ON NEXT PAGE OF THIS FORM.)*

## I. (a) PLAINTIFFS

Vitamin Energy, LLC

**(b)** County of Residence of First Listed Plaintiff   Delaware
*(EXCEPT IN U.S. PLAINTIFF CASES)*

**(c)** Attorneys *(Firm Name, Address, and Telephone Number)*
Nicholas Poduslenko, Esquire, Matthew S. Olesh, Esquire
Obermayer Rebmann Maxwell & Hippel, Centre Square West, Suite 340
1500 Market Street, Philadelphia, PA (215) 665-3000

## DEFENDANTS

Evanston Insurance Company

County of Residence of First Listed Defendant   Lake
*(IN U.S. PLAINTIFF CASES ONLY)*
NOTE:   IN LAND CONDEMNATION CASES, USE THE LOCATION OF
THE TRACT OF LAND INVOLVED.

Attorneys *(If Known)*
Elaine Whiteman Klinger, Gavin Fung
Kennedys CMK, LLP, 1600 Market Street, Suite 1410
Philadelphia, PA (267) 479-6700

## II. BASIS OF JURISDICTION *(Place an "X" in One Box Only)*

- ☐ 1   U.S. Government
  Plaintiff
- ☐ 2   U.S. Government
  Defendant
- ☐ 3   Federal Question
  *(U.S. Government Not a Party)*
- ☒ 4   Diversity
  *(Indicate Citizenship of Parties in Item III)*

## III. CITIZENSHIP OF PRINCIPAL PARTIES *(Place an "X" in One Box for Plaintiff*
*(For Diversity Cases Only)*                              *and One Box for Defendant)*

|  | PTF | DEF |  | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated *or* Principal Place of Business In This State | ☒ 4 | ☐ 4 |
| Citizen of Another State | ☒ 2 | ☒ 2 | Incorporated *and* Principal Place of Business In Another State | ☐ 5 | ☒ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT *(Place an "X" in One Box Only)*

Click here for: Nature of Suit Code Descriptions.

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| ☒ 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | ☐ 625 Drug Related Seizure of Property 21 USC 881 | ☐ 422 Appeal 28 USC 158 | ☐ 375 False Claims Act |
| ☐ 120 Marine | ☐ 310 Airplane | ☐ 365 Personal Injury - | ☐ 690 Other | ☐ 423 Withdrawal | ☐ 376 Qui Tam (31 USC |
| ☐ 130 Miller Act | ☐ 315 Airplane Product | Product Liability | | 28 USC 157 | 3729(a)) |
| ☐ 140 Negotiable Instrument | Liability | ☐ 367 Health Care/ | | | ☐ 400 State Reapportionment |
| ☐ 150 Recovery of Overpayment | ☐ 320 Assault, Libel & | Pharmaceutical | | **PROPERTY RIGHTS** | ☐ 410 Antitrust |
| & Enforcement of Judgment | Slander | Personal Injury | | ☐ 820 Copyrights | ☐ 430 Banks and Banking |
| ☐ 151 Medicare Act | ☐ 330 Federal Employers' | Product Liability | | ☐ 830 Patent | ☐ 450 Commerce |
| ☐ 152 Recovery of Defaulted | Liability | ☐ 368 Asbestos Personal | | ☐ 835 Patent - Abbreviated | ☐ 460 Deportation |
| Student Loans | ☐ 340 Marine | Injury Product | | New Drug Application | ☐ 470 Racketeer Influenced and |
| (Excludes Veterans) | ☐ 345 Marine Product | Liability | | ☐ 840 Trademark | Corrupt Organizations |
| ☐ 153 Recovery of Overpayment | Liability | **PERSONAL PROPERTY** | **LABOR** | **SOCIAL SECURITY** | ☐ 480 Consumer Credit |
| of Veteran's Benefits | ☐ 350 Motor Vehicle | ☐ 370 Other Fraud | ☐ 710 Fair Labor Standards | ☐ 861 HIA (1395ff) | ☐ 485 Telephone Consumer |
| ☐ 160 Stockholders' Suits | ☐ 355 Motor Vehicle | ☐ 371 Truth in Lending | Act | ☐ 862 Black Lung (923) | Protection Act |
| ☐ 190 Other Contract | Product Liability | ☐ 380 Other Personal | ☐ 720 Labor/Management | ☐ 863 DIWC/DIWW (405(g)) | ☐ 490 Cable/Sat TV |
| ☐ 195 Contract Product Liability | ☐ 360 Other Personal | Property Damage | Relations | ☐ 864 SSID Title XVI | ☐ 850 Securities/Commodities/ |
| ☐ 196 Franchise | Injury | ☐ 385 Property Damage | ☐ 740 Railway Labor Act | ☐ 865 RSI (405(g)) | Exchange |
| | ☐ 362 Personal Injury - | Product Liability | ☐ 751 Family and Medical | | ☐ 890 Other Statutory Actions |
| | Medical Malpractice | | Leave Act | | ☐ 891 Agricultural Acts |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | ☐ 790 Other Labor Litigation | **FEDERAL TAX SUITS** | ☐ 893 Environmental Matters |
| ☐ 210 Land Condemnation | ☐ 440 Other Civil Rights | **Habeas Corpus:** | ☐ 791 Employee Retirement | ☐ 870 Taxes (U.S. Plaintiff | ☐ 895 Freedom of Information |
| ☐ 220 Foreclosure | ☐ 441 Voting | ☐ 463 Alien Detainee | Income Security Act | or Defendant) | Act |
| ☐ 230 Rent Lease & Ejectment | ☐ 442 Employment | ☐ 510 Motions to Vacate | | ☐ 871 IRS—Third Party | ☐ 896 Arbitration |
| ☐ 240 Torts to Land | ☐ 443 Housing/ | Sentence | | 26 USC 7609 | ☐ 899 Administrative Procedure |
| ☐ 245 Tort Product Liability | Accommodations | ☐ 530 General | | | Act/Review or Appeal of |
| ☐ 290 All Other Real Property | ☐ 445 Amer. w/Disabilities - | ☐ 535 Death Penalty | **IMMIGRATION** | | Agency Decision |
| | Employment | **Other:** | ☐ 462 Naturalization Application | | ☐ 950 Constitutionality of |
| | ☐ 446 Amer. w/Disabilities - | ☐ 540 Mandamus & Other | ☐ 465 Other Immigration | | State Statutes |
| | Other | ☐ 550 Civil Rights | Actions | | |
| | ☐ 448 Education | ☐ 555 Prison Condition | | | |
| | | ☐ 560 Civil Detainee - | | | |
| | | Conditions of | | | |
| | | Confinement | | | |

## V. ORIGIN *(Place an "X" in One Box Only)*

- ☐ 1   Original
  Proceeding
- ☒ 2   Removed from
  State Court
- ☐ 3   Remanded from
  Appellate Court
- ☐ 4   Reinstated or
  Reopened
- ☐ 5   Transferred from
  Another District
  *(specify)*
- ☐ 6   Multidistrict
  Litigation -
  Transfer
- ☐ 8   Multidistrict
  Litigation -
  Direct File

## VI. CAUSE OF ACTION

Cite the U.S. Civil Statute under which you are filing *(Do not cite jurisdictional statutes unless diversity)*:
28 U.S.C. § 1332, et seq., 28 U.S.C. § 1441, et seq.
Brief description of cause:
Removal of Declaratory Judgment action filed by insured against insurer

## VII. REQUESTED IN COMPLAINT:

☐ CHECK IF THIS IS A **CLASS ACTION**
UNDER RULE 23, F.R.Cv.P.

**DEMAND $**

CHECK YES only if demanded in complaint:
**JURY DEMAND:**   ☒ Yes   ☐ No

## VIII. RELATED CASE(S) IF ANY

*(See instructions):*
JUDGE _____   DOCKET NUMBER   190702037

DATE   8/14/19

SIGNATURE OF ATTORNEY OF RECORD   *Elaine Whiteman Klinger*

**FOR OFFICE USE ONLY**

RECEIPT # _____   AMOUNT _____   APPLYING IFP _____   JUDGE _____   MAG. JUDGE _____

## INSTRUCTIONS FOR ATTORNEYS COMPLETING CIVIL COVER SHEET FORM JS 44

### Authority For Civil Cover Sheet

The JS 44 civil cover sheet and the information contained herein neither replaces nor supplements the filings and service of pleading or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. Consequently, a civil cover sheet is submitted to the Clerk of Court for each civil complaint filed. The attorney filing a case should complete the form as follows:

**I.(a)**   **Plaintiffs-Defendants.** Enter names (last, first, middle initial) of plaintiff and defendant. If the plaintiff or defendant is a government agency, use only the full name or standard abbreviations. If the plaintiff or defendant is an official within a government agency, identify first the agency and then the official, giving both name and title.

   **(b)**   **County of Residence.** For each civil case filed, except U.S. plaintiff cases, enter the name of the county where the first listed plaintiff resides at the time of filing. In U.S. plaintiff cases, enter the name of the county in which the first listed defendant resides at the time of filing. (NOTE: In land condemnation cases, the county of residence of the "defendant" is the location of the tract of land involved.)

   **(c)**   **Attorneys.** Enter the firm name, address, telephone number, and attorney of record. If there are several attorneys, list them on an attachment, noting in this section "(see attachment)".

**II.**   **Jurisdiction.** The basis of jurisdiction is set forth under Rule 8(a), F.R.Cv.P., which requires that jurisdictions be shown in pleadings. Place an "X" in one of the boxes. If there is more than one basis of jurisdiction, precedence is given in the order shown below.
United States plaintiff. (1) Jurisdiction based on 28 U.S.C. 1345 and 1348. Suits by agencies and officers of the United States are included here.
United States defendant. (2) When the plaintiff is suing the United States, its officers or agencies, place an "X" in this box.
Federal question. (3) This refers to suits under 28 U.S.C. 1331, where jurisdiction arises under the Constitution of the United States, an amendment to the Constitution, an act of Congress or a treaty of the United States. In cases where the U.S. is a party, the U.S. plaintiff or defendant code takes precedence, and box 1 or 2 should be marked.
Diversity of citizenship. (4) This refers to suits under 28 U.S.C. 1332, where parties are citizens of different states. When Box 4 is checked, the citizenship of the different parties must be checked. **(See Section III below; NOTE: federal question actions take precedence over diversity cases.)**

**III.**   **Residence (citizenship) of Principal Parties.** This section of the JS 44 is to be completed if diversity of citizenship was indicated above. Mark this section for each principal party.

**IV.**   **Nature of Suit.** Place an "X" in the appropriate box. If there are multiple nature of suit codes associated with the case, pick the nature of suit code that is most applicable. Click here for: Nature of Suit Code Descriptions.

**V.**   **Origin.** Place an "X" in one of the seven boxes.
Original Proceedings. (1) Cases which originate in the United States district courts.
Removed from State Court. (2) Proceedings initiated in state courts may be removed to the district courts under Title 28 U.S.C., Section 1441.
Remanded from Appellate Court. (3) Check this box for cases remanded to the district court for further action. Use the date of remand as the filing date.
Reinstated or Reopened. (4) Check this box for cases reinstated or reopened in the district court. Use the reopening date as the filing date.
Transferred from Another District. (5) For cases transferred under Title 28 U.S.C. Section 1404(a). Do not use this for within district transfers or multidistrict litigation transfers.
Multidistrict Litigation – Transfer. (6) Check this box when a multidistrict case is transferred into the district under authority of Title 28 U.S.C. Section 1407.
Multidistrict Litigation – Direct File. (8) Check this box when a multidistrict case is filed in the same district as the Master MDL docket. **PLEASE NOTE THAT THERE IS NOT AN ORIGIN CODE 7.** Origin Code 7 was used for historical records and is no longer relevant due to changes in statue.

**VI.**   **Cause of Action.** Report the civil statute directly related to the cause of action and give a brief description of the cause. **Do not cite jurisdictional statutes unless diversity.** Example: U.S. Civil Statute: 47 USC 553 Brief Description: Unauthorized reception of cable service

**VII.**   **Requested in Complaint.** Class Action. Place an "X" in this box if you are filing a class action under Rule 23, F.R.Cv.P.
Demand. In this space enter the actual dollar amount being demanded or indicate other demand, such as a preliminary injunction.
Jury Demand. Check the appropriate box to indicate whether or not a jury is being demanded.

**VIII.**   **Related Cases.** This section of the JS 44 is used to reference related pending cases, if any. If there are related pending cases, insert the docket numbers and the corresponding judge names for such cases.

**Date and Attorney Signature.** Date and sign the civil cover sheet.

JHS

**UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

19-CV-3672

19   3672

**DESIGNATION FORM**
*(to be used by counsel or pro se plaintiff to indicate the category of the case for the purpose of assignment to the appropriate calendar)*

Address of Plaintiff: Vitamin Energy LLC 391 Wilmington West Chester Pike, Unite 3 #403, Glen Mills, PA 19342

Address of Defendant: Evanston Insurance Company, Ten Parkway North, Deerfield, IL 60015

Place of Accident, Incident or Transaction: 391 Wilmington West Chester Pike, Unite 3 #403, Glen Mills, PA 19342

---

**RELATED CASE, IF ANY:**

Case Number: _____   Judge: _____   Date Terminated: _____

Civil cases are deemed related when *Yes* is answered to any of the following questions:

1. Is this case related to property included in an earlier numbered suit pending or within one year previously terminated action in this court?   Yes ☐   No ☑

2. Does this case involve the same issue of fact or grow out of the same transaction as a prior suit pending or within one year previously terminated action in this court?   Yes ☐   No ☑

3. Does this case involve the validity or infringement of a patent already in suit or any earlier numbered case pending or within one year previously terminated action of this court?   Yes ☐   No ☑

4. Is this case a second or successive habeas corpus, social security appeal, or pro se civil rights case filed by the same individual?   Yes ☐   No ☑

I certify that, to my knowledge, the within case ☐ is / ☑ is not related to any case now pending or within one year previously terminated action in this court except as noted above.

DATE: 08/14/2019 _____   318709

_____   _____
Attorney-at-Law / Pro Se Plaintiff   Attorney I.D. # (if applicable)

---

**CIVIL: (Place a √ in one category only)**

**A.   Federal Question Cases:**

☐ 1. Indemnity Contract, Marine Contract, and All Other Contracts
☐ 2. FELA
☐ 3. Jones Act-Personal Injury
☐ 4. Antitrust
☐ 5. Patent
☐ 6. Labor-Management Relations
☐ 7. Civil Rights
☐ 8. Habeas Corpus
☐ 9. Securities Act(s) Cases
☐ 10. Social Security Review Cases
☐ 11. All other Federal Question Cases
*(Please specify):* _____

**B.   Diversity Jurisdiction Cases:**

☑ 1. Insurance Contract and Other Contracts
☐ 2. Airplane Personal Injury
☐ 3. Assault, Defamation
☐ 4. Marine Personal Injury
☐ 5. Motor Vehicle Personal Injury
☐ 6. Other Personal Injury *(Please specify):* _____
☐ 7. Products Liability
☐ 8. Products Liability – Asbestos
☐ 9. All other Diversity Cases
*(Please specify):* _____

---

**ARBITRATION CERTIFICATION**
*(The effect of this certification is to remove the case from eligibility for arbitration.)*

I, Gavin Fung _____, counsel of record or pro se plaintiff, do hereby certify:

☐ Pursuant to Local Civil Rule 53.2, § 3(c) (2), that to the best of my knowledge and belief, the damages recoverable in this civil action case exceed the sum of $150,000.00 exclusive of interest and costs:

☑ Relief other than monetary damages is sought.

AUG 14 2019

DATE: 08/14/2019 _____   318709

_____   _____
Attorney-at-Law / Pro Se Plaintiff   Attorney I.D. # (if applicable)

NOTE: A trial de novo will be a trial by jury only if there has been compliance with F.R.C.P. 38.

Civ. 609 (5/2018)

## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

### CASE MANAGEMENT TRACK DESIGNATION FORM

| | | |
|---|---|---|
| Vitamin Energy LLC | : | CIVIL ACTION |
| | : | |
| v. | : | |
| | : | |
| Evanston Insurance Company | : | NO. |

In accordance with the Civil Justice Expense and Delay Reduction Plan of this court, counsel for plaintiff shall complete a Case Management Track Designation Form in all civil cases at the time of filing the complaint and serve a copy on all defendants. (See § 1:03 of the plan set forth on the reverse side of this form.) In the event that a defendant does not agree with the plaintiff regarding said designation, that defendant shall, with its first appearance, submit to the clerk of court and serve on the plaintiff and all other parties, a Case Management Track Designation Form specifying the track to which that defendant believes the case should be assigned.

### SELECT ONE OF THE FOLLOWING CASE MANAGEMENT TRACKS:

(a) Habeas Corpus – Cases brought under 28 U.S.C. § 2241 through § 2255.          ( )

(b) Social Security – Cases requesting review of a decision of the Secretary of Health
    and Human Services denying plaintiff Social Security Benefits.          ( )

(c) Arbitration – Cases required to be designated for arbitration under Local Civil Rule 53.2.   ( )

(d) Asbestos – Cases involving claims for personal injury or property damage from
    exposure to asbestos.          ( )

(e) Special Management – Cases that do not fall into tracks (a) through (d) that are
    commonly referred to as complex and that need special or intense management by
    the court. (See reverse side of this form for a detailed explanation of special
    management cases.)          ( )

(f) Standard Management – Cases that do not fall into any one of the other tracks.   ( x )

| | | |
|---|---|---|
| 8/14/2019 | | Evanston Insurance Company |
| **Date** | **Attorney-at-law** | **Attorney for** |
| 267-479-6700 | 215-665-8475 | gavin.fung@kennedyslaw.com |
| **Telephone** | **FAX Number** | **E-Mail Address** |

(Civ. 660) 10/02

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| VITAMIN ENERGY, LLC, | : | |
| | : | CIVIL ACTION NO. : |
| Plaintiff, | : | |
| vs. | : | |
| | : | |
| EVANSTON INSURANCE | : | JURY DEMANDED |
| COMPANY, | : | |
| | : | |
| Defendant. | : | |
| | : | |

**NOTICE OF REMOVAL OF DEFENDANT,
<u>EVANSTON INSURANCE COMPANY</u>**

TO THE JUDGES OF THE COURT:

Defendant, Evanston Insurance Company (hereinafter "Evanston"), by and through its attorneys, Kennedys CMK, LLP, hereby files this Notice of Removal from the Court of Common Pleas of Philadelphia County, Pennsylvania, Docket No. 2037 of July Term, 2019, Case ID: 190702037 in which it is now pending, to the United States District Court for the Eastern District of Pennsylvania pursuant to 28 U.S.C. §§ 1441 and 1446, and in support thereof, avers as follows:

1.     Plaintiff, Vitamin Energy, LLC (hereinafter, "Plaintiff" or "Vitamin Energy"), commenced this action via a Writ of Summons filed on July 18, 2019 with the Philadelphia County Court of Common Pleas entitled <u>Vitamin Energy, LLC v. Evanston Insurance Company</u>, Case No. 190702037.  A true and correct copy of Plaintiff's Writ of Summons is attached as **Exhibit "A"**.

2.      Plaintiff next filed a Complaint on July 22, 2019. A true and correct copy of Plaintiff's Complaint is attached as **Exhibit "B"**.

3.      As of the date of this filing, Plaintiff has yet to serve this Complaint upon Evanston.

4.      Plaintiff avers that it is the defendant of a civil action brought against it in the United States District Court for the Eastern District of Michigan (hereinafter the "Michigan Lawsuit").

5.      Plaintiff alleges that it is entitled to a defense and to be indemnified under an insurance policy issued by Evanston in connection with the Michigan Lawsuit.

6.      Pursuant to 28 U.S.C. § 1446(b)(1):

> The notice of removal of a civil action or proceeding shall be filed within 30 days after the receipt by the defendant, through service or otherwise, of a copy of the initial pleading setting forth the claim for relief upon which such action or proceeding is based, or within 30 days after the service of summons upon the defendant if such initial pleading has then been filed in court and is not required to be served on the defendant, whichever period is shorter.."

28 U.S.C. § 1446(b)(3).

7.      For the purpose of removal pursuant to Section 1446(b), the "initial pleading" is the Complaint. See Sikirica v. Nationwide Ins. Co., 416 F.3d 214, 223 (3d Cir. 2005).

8.      As shown hereunder, this Notice of Removal is timely pursuant to 28 U.S.C. § 1446(b)(1) because Plaintiff's Complaint, filed on July 22, 2019, is the "initial pleading".

9.      Federal district courts have original jurisdiction over civil actions where the plaintiffs and defendants are citizens of different states and the amount in controversy exceeds $75,000.00.  28 U.S.C. § 1332(a)(1).

10.     Federal jurisdiction exercised pursuant to diversity of citizenship requires that each plaintiff be diverse from every defendant.  See In re Briscoe, 448 F.3d 201, 215, 215 (3d Cir. 2006).

11.     Plaintiff avers in its Complaint that it is a limited liability company with a business address at 391 Wilmington West Chester Pike, Unit 3, #403 in Glen Mills, Pennsylvania.  Exhibit B, ¶1.

12.     Plaintiff was organized under the laws of Delaware on January 25, 2018. See Department of State of the State of Delaware record accessed on July 25, 2019 attached as **Exhibit "C"**.

13.     The Complaint in the Michigan Lawsuit alleges that Vitamin Energy is a Delaware limited liability company, having its principle office in New York, New York.

14.     Thus, for the purposes of this removal action, Vitamin Energy is a citizen of Delaware and either New York or Pennsylvania.  28 U.S.C. § 1332(c)(1).

15.     Evanston Insurance Company is a corporation organized under the laws of the State of Illinois and maintains its principal office at Ten Parkway North, Deerfield, Illinois.  Consequently, for purposes of this removal action, Evanston is a citizen of Illinois.  28 U.S.C. § 1332(c)(1).

16.     Therefore, diversity of citizenship exists between Plaintiff and Defendant.

17.     The amount in controversy is generally determined from the complaint itself. <u>Angus v. Shiley, Inc.</u>, 989 F.2d 142, 145 (3d Cir. 1993).

18.     "Attorneys' fees and costs are excluded from the calculation of the amount in controversy ***unless*** a plaintiff can recover such fees and costs under a specific state statute." <u>Lasch v. Idearc Media Corp.</u>, 2007 U.S. Dist. LEXIS 90479, at *10 (E.D. Pa. Dec. 7, 2007) (emphasis added).

19.     Plaintiff is seeking declaratory and monetary relief in its Complaint, for Evanston to reimburse Vitamin Energy for all costs it has already incurred to defend against the Michigan Lawsuit, to provide a defense against the claims in the Michigan Lawsuit going forward, and to pay for all losses incurred by Vitamin Energy resulting from the claims in the Michigan Lawsuit. <u>See</u> ¶41 of Complaint, Exhibit B.

20.     Plaintiff alleges that it is seeking compensatory damages in excess of $50,000.00. <u>See</u> Count II of Complaint.

21.     Count III of the Complaint alleges that Evanston acted in bad faith and Plaintiff is seeking statutory remedies under 42 Pa.C.S. § 8371, including an award of punitive damages, costs, and attorneys' fees in addition to compensatory damages. <u>See</u> Count III of Complaint.

22.     Based on the allegations of Plaintiff's Complaint, the amount in controversy exceeds the jurisdictional limit of $75,000.00 established by 28 U.S.C. § 1332(a). <u>Suber v. Chrysler Corp.</u>, 104 F.3d 578, 585 (3d Cir. 1997) ("in calculating the

amount in controversy, we must consider potential attorney's fees."); <u>Packard v.</u>
<u>Provident Nat'l Bank</u>, 994 F.2d 1039, 1046 (3d Cir. 1993) ("When both actual and
punitive damages are recoverable, punitive damages are properly considered in
determining whether the jurisdictional amount has been satisfied.").

23.     Accordingly, this Honorable Court has the authority to exercise
jurisdiction over this matter by virtue of 28 U.S.C. § 1332, *et seq.* and 28 U.S.C. §
1441, *et seq.*

24.     Promptly after filing this Notice of Removal, Evanston will provide
written notice of the removal to Plaintiff and will file a copy of the Notice of Removal
with the Philadelphia County Court of Common Pleas.

25.     Nothing in Evanston's Notice of Removal shall be interpreted as a
waiver or relinquishment of its rights to assert any defense or affirmative matter or
an admission to any of the allegations made in the Complaint.

WHEREFORE, based on the foregoing, Defendant, Evanston Insurance
Company, respectfully requests that Plaintiff's action, entitled <u>Vitamin Energy, LLC</u>
<u>v. Evanston Insurance Company</u>, Case No. 190702037, filed with the Philadelphia
County Court of Common Pleas, be removed to the United States District Court for
the Eastern District of Pennsylvania.

Respectfully submitted,

By: _____
Elaine Whiteman Klinger
Attorney I.D. No.: 63553
Gavin Fung

Attorney I.D. No.: 318709
KENNEDYS CMK, LLP
1600 Market Street
Suite 1410
Philadelphia, PA 19103
(267) 479-6700 (phone)
(267) 470-6710 (fax)
Elaine.Klinger@kennedyslaw.com
Gavin.Fung@kennedyslaw.com
Attorneys for Defendant,
Evanston Insurance Company

Date: August 14, 2019

# EXHIBIT A

OBERMAYER REBMANN MAXWELL & HIPPEL LLP
By:    Nicholas Poduslenko (PA ID: 51562)
Centre Square West
1500 Market Street, Suite 3400
Philadelphia, PA  19102
(215) 665-3000
Counsel for Plaintiff



Filed and Attested by the
Office of Judicial Records
18 JUL 2019 08:51 am
S. PELLEGRINI

---

VITAMIN ENERGY, LLC
391 Wilmington West Chester Pike
Unit 3, #403
Glen Mills, PA  19342

     v.

EVANSTON INSURANCE COMPANY
Ten Parkway North
Deerfield, IL  60015

COURT OF COMMON PLEAS
PHILADELPHIA COUNTY

JULY TERM, 2019
NO.

COMMERCE PROGRAM

---

## PRAECIPE TO ISSUE WRIT OF SUMMONS

**TO THE PROTHONOTARY:**

Kindly issue a Writ of Summons in the above-captioned matter.

Respectfully submitted,

**OBERMAYER REBMANN MAXWELL & HIPPEL LLP**

By:    /s/ Nicholas Poduslenko
       Nicholas Poduslenko, Esq.
       Counsel for Plaintiff

Dated:  July 18, 2019

Summons
Citacion

# Commonwealth of Pennsylvania
## COUNTY OF PHILADELPHIA

| | | |
|---|---|---|
| VITAMIN ENERGY, LLC | : | COURT OF COMMON PLEAS |
| *Plaintiff* | : | |
| | : | _____Term, 20_____ |
| | : | |
| vs. | : | |
| | : | No._____ |
| EVANSTON INSURANCE COMPANY | : | |
| *Defendant* | : | |

To[1]

Evanston Insurance  Company

Ten Parkway North

Deerfield, IL  60015

# **Writ of Summons**

You are notified that the Plaintiff[2]
*Usted esta avisado que el demandante*

Vitamin Energy, LLC

_____

_____

_____

Has (have) commenced an action against you.
*Ha (han) iniciado una accion en contra suya.*

ERIC FEDER
*Director, Office of Judicial Records*

By: _____

Date:_____

10-208 (Rev. 6/14)

_____

[1] Name(s) of Defendant(s)
[2] Name(s) of Plaintiff(s)

Case ID: 19070203

# Court of Common Pleas

_____ Term, 20 _____

No. _____

VITAMIN ENERGY, LLC
*Plaintiff*

vs.

EVANSTON INSURANCE COMPANY
*Defendant*

# SUMMONS

# EXHIBIT B



Filed and Attested by the
Office of Judicial Records
22 JUL 2019 05:00 pm
S. RICE

**OBERMAYER REBMANN MAXWELL & HIPPEL LLP**
By: Nicholas Poduslenko, Esquire (#51562)
Matthew S. Olesh, Esquire (#206553)
Centre Square West, Suite 3400
1500 Market Street
Philadelphia, PA  19102
(215) 665-3000

ATTORNEYS FOR PLAINTIFF
VITAMIN ENERGY, LLC

| VITAMIN ENERGY, LLC, | PHILADELPHIA COUNTY COURT OF COMMON PLEAS |
|---|---|
| Plaintiff, | |
| v. | JULY TERM, 2019 |
| EVANSTON INSURANCE COMPANY, | No. 02037 |
| Defendant. | |

<div style="display:flex">
<div>

NOTICE

You have been sued in court. If you wish to defend against
the claims set forth in the following pages, you must take
action within twenty (20) days after this complaint and notice
are served, by entering a written appearance personally or by
attorney and filing in writing with the court your defenses or
objections to the claims set forth against you. You are warned
that if you fail to do so the case may proceed without you and
a judgment may be entered against you by the court without
further notice for any money claimed in the complaint or for
any other claim or relief requested by the plaintiff. You may
lose money or property or other rights important to you.

YOU SHOULD TAKE THIS PAPER TO YOUR LAWYER
AT ONCE. IF YOU DO NOT HAVE A LAWYER OR
CANNOT AFFORD ONE, GO TO OR TELEPHONE THE
OFFICE SET FORTH BELOW TO FIND OUT WHERE
YOU CAN GET LEGAL HELP.

PHILADELPHIA BAR ASSOCIATION
LAWYER REFERRAL AND INFORMATION SERVICE
1101 MARKET STREET, 11th FLOOR
PHILADELPHIA, PA 19107
TELEPHONE: (215) 238-6333

</div>
<div>

AVISO

Le han demandado a usted en la corte. Si usted quiere defenderse
de estat demandas expuestas las páginas siguientes, usted tiene
viente (20) dias de plazo al partir de la fecha de la demanda y la
notificatión. Hace falta asentar una comparencia escrita o en
persona o con un abogado y entregar a la corte en forma escrita sus
defensas o sus objeciones a las demandas en contra de su personá.
Sea avisado que si usted no se defiende, la corte tomará medidas y
puede continuar la demanda en contra suya sin previo aviso o
notificatión. Además, la corte puede decidir a favor del
demandante y requiere que usted cumpla con todas las provisiones
de esta demanda. Usted puese perder dinero o sus propiedades u
ostros derechos importantes para usted.

LLEVE ESTA DEMANDA A UN ABOGADO
INMEDIATAMENTE. SI NO TIENE ABOGADO O SI NO
TIENE EL DINERO SUFICIENTE DE PAGAR TAL SERVICO,
VAYA EN PERSONA O LLAME POR TELEPHONO A LA
OFICINA CUYA DIRECCION SE ENCUENTRA ESCRITA
ABAJO PARA AVERIGUAR DONDE SE PUEDE CONSEGUIR
ASISTENCIA LEGAL.

ASOCIACION DE LICENCIADOS DE FILADELFIA
Servicio De Referencia E Información Legal
1101 Market Street, 11th Floor
Philadelphia, Pennsylvania 19107
Telephono: (215) 238-6333

</div>
</div>

**OBERMAYER REBMANN MAXWELL & HIPPEL LLP**
By: Nicholas Poduslenko, Esquire (#51562)
Matthew S. Olesh, Esquire (#206553)
Centre Square West, Suite 3400
1500 Market Street
Philadelphia, PA  19102                                   ATTORNEYS FOR PLAINTIFF
(215) 665-3000                                               VITAMIN ENERGY, LLC

---

VITAMIN ENERGY, LLC,

                Plaintiff,

        v.

EVANSTON INSURANCE COMPANY,

                Defendant.

PHILADELPHIA COUNTY
COURT OF COMMON PLEAS

JULY TERM, 2019
No. 02037

COMMERCE PROGRAM

## COMPLAINT

Plaintiff, Vitamin Energy, LLC ("Vitamin Energy"), files this action against defendant,

Evanston Insurance Company ("Evanston"), for declaratory judgment, breach of contract, and

violation of Pennsylvania's insurance bad faith statute, and in support thereof avers as follows:

**I.**    **Parties**

1.    Vitamin Energy is a limited liability company with a business address at 391

Wilmington West Chester Pike, Unit 3, #403, Glen Mills, Pennsylvania.

2.    Vitamin Energy makes beverage products that provide consumers with increased

energy and other health benefits.

3.    Vitamin Energy regularly conducts business in Philadelphia County.

4.    Evanston is an Illinois domiciled insurance company with its principal place of

business at Ten Parkway North, Deerfield, Illinois 60015.

5.    Upon information and belief, Evanston regularly conducts business in

Philadelphia County.

6.    Venue is proper in Philadelphia pursuant to Pa. R. C. P. 2179(a)(2) and (b)(1).

II.     **The Insurance Policy**

7.      Vitamin Energy is the Named Insured to a General Liability Insurance Policy issued by Evanston with a policy period of July 23, 2018 to July 23, 2019 (the "Policy Period"). A copy of this policy (hereinafter the "Policy"), which is incorporated in its entirety, is attached as Exhibit A.

8.      The Policy provides coverage for "Advertising Injury," stating that [t]he Company shall pay on behalf of the Insured all sums in excess of the Deductible amount stated in Item 5. of the Declarations, which the Insured shall become legally obligated to pay as Damages as a result of Claims first made against the Insured during the Policy Period or during the Extended Reporting Period, if exercised, and reported to the Company pursuant to Section Claims A., Claim Reporting Provision, for Personal Injury or Advertising Injury to which this insurance applies caused by an offense, provided: (1) the entirety of such Personal Injury or Advertising Injury and offense happens during the Policy Period or on or after the Retroactive Date stated in Item 7. of the Declarations; and (2) such Personal Injury or Adverting Injury arises out of only those products, goods, operations or premises specified in Item 6. of the Declarations." *See* Policy, Insuring Agreements, Subpart B, pp. 2-3 of 16.

9.      Advertising Injury is defined in the Policy as "injury, including consequential Bodily Injury, arising out of oral or written publication of material that libels or slanders a person or organization or a person's or organization's products, good or operations or other defamatory or disparaging material, occurring in the course of the Named Insured's Advertisement." *See* Policy, Definitions, Subpart B, p. 3 of 16.

10.     The Policy provides that the definition of Advertisement is "a commercial communication, including communications that are published material placed on the Internet or

Case ID: 19070203

on similar electronic means of communication, that is broadcast or published about the products, goods or operations of the Named Insured for the purpose of promoting the sale or use of such products, goods or operations; provided, however, only that part of a website that is about the products, goods or operations of the Named Insured for the purposes of promoting such products, goods or operations is considered an Advertisement." *See* Policy, Definitions, Subpart A, p. 3 of 16.

11.     Claim is defined by the policy as "a notice received by the Insured of an intention to hold the Insured responsible for: (1) a Bodily Injury; (2) a Property Damage; (3) an Advertising Injury; or (4) a Personal Injury; involving this policy and shall include the service of suit or institution of arbitration proceedings against the Insured." *See* Policy, Definitions, Subpart F, p. 3 of 16.

12.     Damages are defined in the policy as "the monetary portion of any judgment, award or settlement; provided, however, that Damages shall not include: (1) multiplied portions of damages in excess of actual damages, including trebling of damages; (2) taxes, criminal or civil fines, or penalties imposed by law; (3) sanctions; (4) matters which are uninsurable under the law pursuant to which this policy shall be construed; or (5) the return of or restitution of fees, profits or charges for services rendered." *See* Policy, Definitions, Subpart I, p. 4 of 16.

13.     Item 6 of the Declarations to the Policy states that products, goods, operations, and premises covered by the Policy are "[s]upplements; all related premises and operations of the Insured." *See* Policy, Declarations, p. 2 of 2.

14.     The Policy further provides that "[t]he Company shall have the right and duty to defend and investigate any Claim to which coverage under this policy applies." *See* Policy, Defense, Settlement and Claim Expenses, p. 10 of 16.

3

15.     Coverage for Advertising Injury is provided under the Policy in an amount of up to $1,000,000 per person or organization, or up to $2,000,000 in the aggregate, with no deductible.  *See* Policy, Declarations, p. 1 of 2.  As noted herein, however, these amounts were both modified to $5,000,000 pursuant to an endorsement to the policy effective October 8, 2018.

### III.   The Underlying Lawsuit and Evanston's Refusal to Defend/Provide Coverage

16.     On June 10, 2019, Vitamin Energy was sued by International IP Holdings, LLC and Innovation Ventures, LLC (together, the "Michigan Plaintiffs") in the United States District Court for the Eastern District of Michigan (the "Michigan Lawsuit").  A copy of the Complaint filed against Vitamin Energy in the Michigan Lawsuit (the "Michigan Complaint") is attached as Exhibit B.

17.     Among other claims, the Michigan Complaint alleges that Vitamin Energy engaged in false and misleading advertising that ultimately disparaged the Michigan Plaintiffs' products, commonly known as 5-Hour Energy "liquid energy shots."

18.     Specifically, the Michigan Complaint alleges that Vitamin Energy "advertises its product with a series of misleading and false statements, including false and misleading *comparative advertising* and claims that [Vitamin Energy's] products provide steroid-like athletic performance enhancement." *See* Michigan Complaint, ¶ 32 (emphasis added).

19.     The Michigan Complaint further alleges that the Vitamin Energy was originally designed as the "shot of choice" and that its product "deliver[s] improved performance without the use of harmful steroids or steroid like compounds." *See id*.

20.     Inherent in this averment is the allegation that Vitamin Energy is insinuating that the Michigan Plaintiffs' own product either (a) contains steroids, (b) is just as harmful as steroids, and/or (c) is inferior to Vitamin Energy.

4

21.     The Michigan Plaintiffs further aver that Vitamin Energy's allegedly false, misleading, confusing, and deceptive advertising has caused them to suffer both economic and irreparable injury. *See* Michigan Complaint, ¶¶ 45, 52.

22.     These allegations place claims brought in the Michigan Lawsuit squarely within the coverage provided by the Policy.

23.     As a result, on June 13, 2019, Vitamin Energy's insurance broker, Bolton & Company, placed Evanston on notice under the Policy of the Michigan Lawsuit via email.  A copy of this email is attached as Exhibit C.

24.     Despite subsequent requests from Vitamin Energy, Evanston did not promptly respond, forcing Vitamin Energy to retain counsel in order to prepare a defense to the Michigan Lawsuit.

25.     Evanston finally responded on July 10, 2019, when it issued a letter disclaiming coverage and stating its position that it "has no current obligation to defend or indemnify Vitamin Energy for this loss."  A copy of this letter is attached as Exhibit D.

26.     Evanston's position is grounded in its erroneous contention that "there are no allegations of . . . 'advertising injury'" as defined by the Policy.  *See* Exhibit D.

27.     Evanston also claims that even if there were advertising injury, coverage would be barred based on a Policy exclusion "as all of the claims arise out of an infringement of an intellectual property right or unfair competition."  *See id.*

28.     Evanston further contends that coverage is barred pursuant to exclusions in the Policy "for claims arising out of Advertising Injury arising out of a mistake in an advertised price or description of any product as well as claims based upon or arising out of the failure to conform."  *See id.*

Case ID: 19070203

29.     Evanston's positions are clearly wrong under the plain language of the Policy.

30.     While the Michigan Complaint does contain allegations and claims relating to both intellectual property (trademark) and unfair competition, it *also* contains separate and independent allegations regarding false and misleading comparative advertising that purportedly disparaged the Michigan Plaintiffs' product, as detailed above.

31.     Moreover, these allegations have nothing to do with a mistake in any product's advertised price or description, nor do they relate to or allege a purported failure of Vitamin Energy to conform with any statement of quality or performance made in its advertisements.

32.     Rather, coverage is invoked due to the allegations that Vitamin Energy harmed the Michigan Plaintiffs via purportedly false and misleading advertising that disparaged, and thus harmed, their product.

33.     Following receipt of Evanston's July 10, 2019 letter, Vitamin Energy's Philadelphia-based counsel engaged in both an oral discussion and email correspondence with Evanston regarding Vitamin Energy's position that Evanston was improperly disclaiming coverage under the Policy.

34.     Despite those discussions, Evanston still refuses to provide coverage, sending a letter July 19, 2019 confirming this to be the case (and clarifying the limits of liability under the Policy via the aforementioned endorsement).   A copy of this letter is attached as Exhibit E.

### COUNT I – DECLARATORY JUDGMENT

35.     Vitamin Energy restates and incorporates the averments set forth in paragraphs 1 through 34 herein.

36.     An actual controversy exists between Vitamin Energy and Evanston regarding Evanston's obligation to provide insurance coverage to Vitamin Energy under the Policy.

37.   Vitamin Energy placed Evanston on notice of the Michigan Lawsuit within the Policy Period of the Policy.

38.   Conduct alleged in the Michigan Lawsuit falls within the Policy's coverage for "Advertising Injury" and is not subject to any exclusion.

39.   Notwithstanding this, Evanston has taken the position that it has no obligation to defend and provide coverage.

40.   The parties disagree about whether Evanston has the obligation to defend and provide coverage for claims in the Michigan Lawsuit under the terms of the Policy.

41.   Vitamin Energy is entitled to have the Court determine and declare that, under the terms and conditions of the Policy, Evanston is obligated to defend and provide coverage to Vitamin Energy for claims in the Michigan Lawsuit.

WHEREFORE, Vitamin Energy demands judgment against Evanston, and respectfully requests that the Court determine and declare that:

(a)   The Michigan Lawsuit alleges "Advertising Injury" as defined under the Policy;

(b)   The "Advertising Injury" alleged in the Michigan Lawsuit is not subject to any exclusions under the Policy;

(c)   Evanston is obligated to reimburse Vitamin Energy for all costs it has already incurred to defend against the Michigan Lawsuit;

(d)   Evanston is obligated to defend against the claims in the Michigan Lawsuit alleging "Advertising Injury" going forward; and

(e)   Evanston is obligated to pay all losses incurred by Vitamin Energy resulting from the claims in the Michigan Lawsuit alleging "Advertising Injury."

Case ID: 19070203

Vitamin Energy also respectfully requests that the Court grant such other relief as it deems appropriate.

## COUNT II – BREACH OF CONTRACT

42.     Vitamin Energy restates and incorporates the averments set forth in paragraphs 1 through 41 herein.

43.     The Policy is an enforceable contract between Vitamin Energy and Evanston.

44.     Subject to the terms and conditions of the Policy, Evanston is obligated to defend and provide coverage to Vitamin Energy for the claims alleging "Advertising Injury" in the Michigan Lawsuit.

45.      Vitamin Energy has fully complied with its obligations under the Policy, including paying its premium and providing timely notice of the Michigan Lawsuit to Evanston within the Policy Period.

46.     In breach of its obligations under the Policy, Evanston has refused to defend and provide coverage to Vitamin Energy for the claims alleging "Advertising Injury" in the Michigan Lawsuit.

47.     As a direct result of Evanston's breach of the policies, Vitamin Energy has suffered damages.

WHEREFORE Vitamin Energy demands judgment against Evanston, and respectfully requests that the Court enter an order awarding Vitamin Energy compensatory damages in excess of $50,000, pre- and post-judgment interest, and such other relief as the Court deems appropriate.

## COUNT III – BAD FAITH/VIOLATION OF 42 Pa.C.S. § 8371

48.     Vitamin Energy restates and incorporates the averments set forth in paragraphs 1 through 47 herein.

8

49.     42 Pa.C.S. § 8371 provides for statutory remedies, including an award of punitive damages and attorneys' fees, if the Court finds that an insurer has acted in bad faith toward an insured.

50.     A refusal to provide coverage to an insured with no good cause when a policy provides for coverage violates the statute.

51.     Likewise, an insurance carrier's failure to timely correspond with its insured violates the statute.

52.     Vitamin Energy submitted a claim for insurance coverage to Evanston under the Policy in connection with the claims brought against it in the Michigan Lawsuit.

53.     Evanston violated the bad faith statute in its handling of Vitamin Energy's claim under the Policy, effectively and actually denying coverage without a reasonable or legitimate basis.

54.     Evanston acted in bad faith through its arbitrary and unreasonable refusal to provide coverage pursuant to the terms and conditions of the Policy.

55.     Evanston acted in bad faith by interpreting the Policy provisions in such a way to avoid any duty to provide coverage to Vitamin Energy.

56.     Evanston acted in bad faith by taking the position that claims in the Michigan Lawsuit do not allege "Advertising Injury" as defined by the Policy.

57.     Evanston acted in bad faith by delaying its coverage determination despite requests from Vitamin Energy.

58.     Evanston's coverage determination is contradicted by the plain language of the Policy.

9

59.     Evanston acted with knowledge or reckless disregard of its lack of reasonable basis for denying coverage to Vitamin Energy.

60.     Evanston's conduct is sufficiently outrageous that an award of punitive damages is appropriate.

WHEREFORE, Vitamin Energy demands judgment against Evanston, and respectfully requests that the Court grant it the following relief:

a.     Compensatory damages;

b.     Interest;

c.     Punitive damages;

d.     Costs;

e.     Reasonable attorneys' fees; and

f.     Such other relief as the Court deems appropriate.

*/s/ Nicholas Poduslenko*
Nicholas Poduslenko (I.D. 51562)
Matthew S. Olesh (I.D. 206553)
**OBERMAYER REBMANN MAXWELL
& HIPPEL LLP**
1500 Market Street, Suite 3400
Philadelphia, PA 19102
Tel.:   (215) 665-3000
Fax:   (215) 665-3165
nicholas.poduslenko@obermayer.com
matthew.olesh@obermayer.com

Dated: July 22, 2019

10

<u>**VERIFICATION**</u>

I, Nick Mihnovets, hereby verify and state that (a) I am the Chief Executive Officer of plaintiff, Vitamin Energy, LLC, (b) I am authorized to submit this verification in this action, and (c) the statements made in the foregoing Complaint are true and correct to the best of my knowledge, information and belief.  I understand that the statements made therein are subject to the penalties of 18 PA. CONS. STAT. ANN. § 4904 relating to unsworn falsification to authorities.

_____

Nick Mihnovets

Dated: July 22, 2019

A

**A STOCK COMPANY**



# EVANSTON INSURANCE COMPANY

Ten Parkway North
Deerfield, IL 60015

**INSURANCE POLICY**

**Coverage afforded by this policy is provided by the Company (Insurer) and named in the Declarations.**

In **Witness Whereof**, the company (insurer) has caused this policy to be executed and attested and countersigned by a duly authorized representative of the company (insurer) identified in the Declarations.

**Secretary**                                         **President**

**MJIL 1000 06 10**                                         Page 1 of 1

Case 19: 19070203

IL 09 10 07 02

# PENNSYLVANIA NOTICE

An Insurance Company, its agents, employees, or service contractors acting on its behalf, may provide services to reduce the likelihood of injury, death or loss. These services may include any of the following or related services incident to the application for, issuance, renewal or continuation of, a policy of insurance:

1. Surveys;

2. Consultation or advice; or

3. Inspections.

The "Insurance Consultation Services Exemption Act" of Pennsylvania provides that the Insurance Company, its agents, employees or service contractors acting on its behalf, is not liable for damages from injury, death or loss occurring as a result of any act or omission by any person in the furnishing of or the failure to furnish these services.

The Act does not apply:

1. If the injury, death or loss occurred during the actual performance of the services and was caused by the negligence of the Insurance Company, its agents, employees or service contractors;

2. To consultation services required to be performed under a written service contract not related to a policy of insurance; or

3. If any acts or omissions of the Insurance Company, its agents, employees or service contractors are judicially determined to constitute a crime, actual malice, or gross negligence.

| **Instruction to Policy Writers** |
| Attach the Pennsylvania Notice to all new and renewal certificates insuring risks located in Pennsylvania. |

IL 09 10 07 02                © ISO Properties, Inc.,  2001                Page 1 of 1



Case ID: 190702903



# EVANSTON INSURANCE COMPANY

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

## TRADE OR ECONOMIC SANCTIONS

The following is added to this policy:

**Trade Or Economic Sanctions**

This insurance does not provide any coverage, and we (the Company) shall not make payment of any claim or provide any benefit hereunder, to the extent that the provision of such coverage, payment of such claim or provision of such benefit would expose us (the Company) to a violation of any applicable trade or economic sanctions, laws or regulations, including but not limited to, those administered and enforced by the United States Treasury Department's Office of Foreign Assets Control (OFAC).

All other terms and conditions remain unchanged.

**MIL 1214 09 17**

Case ID: 19070203

INTERLINE



# PRIVACY NOTICE

We are committed to safeguarding your privacy. We understand your concerns regarding the privacy of your nonpublic personal information. No nonpublic personal information is required to be collected when you visit our websites; however, this information may be requested in order to provide the products and services described.  We do not sell nonpublic personal information to non-affiliated third parties for marketing or other purposes. We only use and share this type of information with non-affiliated third parties for the purposes of underwriting insurance, administering your policy or claim and other purposes as permitted by law, such as disclosures to insurance regulatory authorities or in response to legal process. Notwithstanding the foregoing, we may use this information for the purpose of marketing our own products and services to you.

We collect nonpublic personal information about you from the following sources:

- Information we receive from you on applications or other forms;

- Information about your transactions with us, our affiliates, or others; and/or

- Information we receive from consumer reporting agencies and inspection reports.

We do not disclose any nonpublic personal information about our customers/claimants or former customers/claimants to anyone, except as permitted by law.

We may disclose nonpublic personal information about you to the following types of third parties:

- Service providers, such as insurance agents and/ or brokers and claims adjusters; and/or

- Other non-affiliated third parties as permitted by law.

We restrict access to nonpublic personal information about our customers/claimants to those individuals who need to know that information to provide products and services to our customers/claimants or as permitted by law.  We maintain physical, electronic, and procedural safeguards to guard your nonpublic personal information.

*Residents of California:*

You may request to review and make corrections to recorded non-public personal information contained in our files.  A more detailed description of your rights and practices regarding such information is available upon request.  Please contact your agent/broker for instructions on how to submit a request to us.

Case ID: 19070203

INTERLINE



# EVANSTON INSURANCE COMPANY

## U.S. TREASURY DEPARTMENT'S OFFICE OF FOREIGN ASSETS CONTROL ("OFAC") ADVISORY NOTICE TO POLICYHOLDERS

No coverage is provided by this Policyholder Notice nor can it be construed to replace any provisions of your policy. You should read your policy and review your Declarations page for complete information on the coverages you are provided.

This Notice provides information concerning possible impact on your insurance coverage due to directives issued by OFAC. **Please read this Notice carefully.**

The Office of Foreign Assets Control (OFAC) administers and enforces sanctions policy, based on Presidential declarations of "national emergency". OFAC has identified and listed numerous:

- Foreign agents;
- Front organizations;
- Terrorists;
- Terrorist organizations; and
- Narcotics traffickers;

as "Specially Designated Nationals and Blocked Persons". This list can be located on the United States Treasury's web site – http//www.treas.gov/ofac.

In accordance with OFAC regulations, if it is determined that you or any other insured, or any person or entity claiming the benefits of this insurance has violated U.S. sanctions law or is a Specially Designated National and Blocked Person, as identified by OFAC, this insurance will be considered a blocked or frozen contract and all provisions of this insurance are immediately subject to OFAC. When an insurance policy is considered to be such a blocked or frozen contract, no payments nor premium refunds may be made without authorization from OFAC. Other limitations on the premiums and payments also apply.

Case ID: 19070203



## POLICYHOLDER DISCLOSURE NOTICE OF TERRORISM INSURANCE COVERAGE

RE:   Policy Number:  SP884506
      Insured:   VITAMIN ENERGY, LLC
      Insurer:   Evanston Insurance Company

You are hereby notified that under the Terrorism Risk Insurance Act as amended in 2015 the definition of terrorism has changed. As *defined in Section 102(1) of the Act*: The term "act of terrorism" means any act that is certified by the Secretary of the Treasury—in consultation with the Secretary of Homeland Security, and the Attorney General of the United States—to be an act of terrorism; to be a violent act or an act that is dangerous to human life, property, or infrastructure; to have resulted in damage within the United States, or outside the United States in the case of an air carrier or vessel or the premises of a United States mission; and to have been committed by an individual or individuals as part of an effort to coerce the civilian population of the United States or to influence the policy or affect the conduct of the United States Government by coercion.

Under the Act, any losses resulting from certified acts of terrorism may be partially reimbursed by the United States Government under a formula established by the Terrorism Risk Insurance Act as amended. However, your policy may contain other exclusions which might affect your coverage, such as an exclusion for nuclear events. The Act requires Evanston Insurance Company to also notify you that Terrorism Coverage required to be offered by the Act for losses caused by certified acts of terrorism is partially reimbursed by the United States Government under a formula established by federal law. Under this formula, the United States Government generally reimburses 85% through 2015; 84% beginning on January 1, 2016; 83% beginning on January 1, 2017; 82% beginning on January 1, 2018; 81% beginning on January 1, 2019 and 80% beginning on January 1, 2020 of covered terrorism losses exceeding the statutorily established deductible paid by the insurance company providing the coverage. The Terrorism Risk Insurance Act as amended, contains a $100 billion cap that limits United States Government reimbursement as well as insurers' liability for losses resulting from certified acts of terrorism when the amount of such losses exceeds $100 billion in any one calendar year. If the aggregate insured losses for all insurers exceed $100 billion, your coverage may be reduced.

Nothing in this notice affects or modifies your coverage except and only to the extent specifically required by the Act.

When the above captioned policy was quoted, you were offered this Terrorism Coverage for a premium equal to a 3% surcharge of the total policy premium. If you elected to purchase this insurance coverage your policy premium includes a 3% surcharge, and does not include any charge for the portion of losses covered by the United States government under the Act.



# EVANSTON INSURANCE COMPANY

## DECLARATIONS
## GENERAL LIABILITY (INCLUDING PRODUCTS/COMPLETED OPERATIONS LIABILITY) INSURANCE POLICY

**Claims Made Coverage:** The coverage afforded by this policy is limited to liability for only those Claims that are first made against the Insured during the Policy Period or the Extended Reporting Period, if exercised, and reported in writing to the Company pursuant to the terms herein.

**Notice:** This is a duty to defend policy. Additionally, this policy contains provisions that reduce the limits of liability stated in the policy by the costs of legal defense and permit legal defense costs to be applied against the deductible, unless the policy is amended by endorsement. Please read the policy carefully.

POLICY NUMBER: SP884506                    RENEWAL OF POLICY: NEW

1.    **NAMED INSURED:**  VITAMIN ENERGY, LLC

2.    **BUSINESS ADDRESS:**
               391 WILMINGTON WEST CHESTER PIKE SUITE 3
               GLEN MILLS, PA  19342

3.    **POLICY PERIOD:**  From 07/23/2018 to 07/23/2019
               12:01 A.M. Standard Time at address of Insured stated above.

**IN RETURN FOR THE PAYMENT OF THE PREMIUM, AND SUBJECT TO ALL THE TERMS OF THIS POLICY, THE COMPANY AGREES WITH THE NAMED INSURED TO PROVIDE THE INSURANCE AS STATED IN THIS POLICY.**

4.    **LIMITS OF LIABILITY:**

       A.  For Coverage A (Bodily Injury and Property Damage Liability):

            (i)   Each Occurrence:                                    $  1,000,000

            (ii)  Damage to Premises – Any One Premises:              $    100,000

       B.  For Coverage B (Personal Injury and Advertising Injury Liability):

            Each Person or Organization:                             $  1,000,000

       C.  Policy Aggregate:                                         $  2,000,000

5.    **DEDUCTIBLES:**

       A.  For Coverage A (Bodily Injury and Property Damage Liability):

            Each Occurrence:                                         $         0

       B.  For Coverage B (Personal Injury and Advertising Injury Liability):

            Each Person or Organization:                             $         0

| Producer Number, Name and Address |
| --- |
| 03250<br>Worldwide Facilities, LLC - L.A.<br>725 S. Figueroa St., 19th floor<br>Los Angeles, CA  90017 |

PD-12000-01 03 04

6. **SPECIFIED PRODUCTS, GOODS, OPERATIONS AND PREMISES COVERED:**

Supplements; all related premises and operations of the Insured

7. **RETROACTIVE DATE:** 07/23/2018

8. **RATE:** Flat

9. **PREMIUM FOR POLICY PERIOD:**

| | | |
|---|---|---|
| Minimum | $ | 1,995.00 |
| Deposit | $ | 1,995.00 |

10. **PREMIUM FOR EXTENDED REPORTING PERIOD:** 100% for 12 months; 150% for 24 months; or 200% for 36 months

11. **ENDORSEMENTS ATTACHED AT POLICY INCEPTION:**

See MDIL 1001 08 10 attached

12. **NOTICES:**

**CLAIM NOTICES:**

Claims Service Center
MARKEL SERVICE, INCORPORATED
Ten Parkway North
Deerfield, Illinois 60015

Fax: (855) 662-7535
E-mail: newclaims@markelcorp.com

**ALL OTHER NOTICES:**

Markel West Insurance Services,
a division of Markel Service, Incorporated
(#0D95581)
21600 Oxnard Street, Suite 900
Woodland Hills, CA  91367-4800
Telephone: (818) 595-0600
Fax: (866) 730-2529

**These declarations, together with the Policy, any Endorsement(s) and any application(s) complete the above numbered policy.**

| | |
|---|---|
| Countersigned: 7/24/2018 | *[signature]*<br>DIRECTOR, UNDERWRITING  & PRODUCTION<br>MARKEL WEST INSURANCE  SERVICES<br>COUNTERSIGNATURE |
| (Date) | By: |

PA Surplus Lines Taxes & Fees

| | | |
|---|---|---|
| Premium: | $ | 1,995.00 |
| 3% State Tax: | $ | 59.85 |
| FLAT Stamp Fee: | $ | 20.00 |
| Broker Fee: | $ | 250.00 |

**The Insurer with which the Licensee places the insurance is not licensed by the Pennsylvania Insurance Department, and is subject to its limited regulation; and in the event of insolvency of an eligible surplus line insurer, losses will not be paid by the Pennsylvania Property and Casualty Insurance Guaranty Association.**
Worldwide Facilities, LLC - License #483776

Case ID: 19070203

# Markel's Designed Protection®
## Risk Management Resources Specified Products Liability

<u>Welcome</u> to Markel's Designed Protection® leading edge Risk Management Resources.

The following risk management resources are available exclusively to our policyholders at our website www.markelcorp.com/riskmanagement at *no additional cost*.

## HOW TO QUICKLY ACCESS RISK MANAGEMENT RESOURCES:

<u>Step 1.</u>   Go onto our website, www.markelcorp.com/riskmanagement.

<u>Step 2.</u>   Select the Designed Protection services that apply to your policy, to get to the Login screen.

<u>Step 3.</u>   Review the disclaimer, enter your current policy number and click on the button below to access. Your policy number is SP884506.

If you need technical assistance during the log in process, call (866) 932-2433, x113719.

**Available Risk Management Resources include:**

**Designed Protection® Risk Management Telephone Hotline for Specified Products Liability**
This confidential telephone hotline is staffed by a nationally respected panel of experienced Products Liability defense lawyers that are available to answer general risk management questions.

- **Top 10 Tips for Reducing Risk of Product Liability**

Please check our website regularly as additional resources are added throughout the year.



<div align="right">
INTERLINE
**POLICY NUMBER:** SP884506
</div>

# EVANSTON INSURANCE COMPANY

## FORMS SCHEDULE

| FORM NUMBER | FORM NAME |
|---|---|
| MJIL 1000 06 10 | Policy Jacket |
| IL 09 10 07 02 | Pennsylvania Notice |
| MIL 1214 09 17 | Trade Or Economic Sanctions |
| MPIL 1007 03 14 | Privacy Notice |
| MPIL 1083 04 15 | US Treasury Dept's Office Of Foreign Assets Control ("OFAC") Policyholder Notice |
| ZZ-50000-03 01 15 | Policyholder Disclosure Notice Of Terrorism Insurance Coverage |
| PD-12000-01 03 04 | Declarations General Liability (Including Products/Completed Operations Liability) Insurance Policy |
| MDIL 1001 08 10 | Forms Schedule |
| PD-22000-02 06 04 | General Liability (Including Products And Completed Operations Liability) Insurance Policy |
| EIC 3022-01 3 04 | Amendment of Territory - Worldwide Coverage |
| EIC 4115-01 2 03 | 25% Minimum Earned Premium Endorsement |
| EIC 4568 01 06 | Exclusion of Known Claims/Incidents |
| EIC 832-01 10 02 | Asbestos Exclusion |
| MEGL 1662 05 15 | Exclusion - Unmanned Aircraft |
| MEGL 2204 10 17 | Elite Nutra Enhancement |
| MEIL 1313 02 12 | Amendment Of Definition & Excl-Electronic Data & Distribution Of Materials In Violation Of Statutes |
| MEIL 1317 01 16 | Exclusion - Designated Ingredients |
| MEIL 1321 02 13 | Banned Substances Exclusion |
| ZZ-44002-01 | Mold Exclusion |
| ZZ-44003-03 01 15 | Certified Acts Of Terrorism Exclusion |

Case ID: 19070203



# EVANSTON INSURANCE COMPANY

## GENERAL LIABILITY (INCLUDING PRODUCTS AND COMPLETED OPERATIONS LIABILITY) INSURANCE POLICY

THIS IS A CLAIMS MADE POLICY. PLEASE READ IT CAREFULLY.

In consideration of the premium paid, and in reliance upon the underwriting information submitted on behalf of the Insured, the Company and the Insured agree as follows:

Throughout this policy, the term Company refers to the insurance company providing this insurance.

### THE INSURED

The unqualified word "Insured", either in the singular or plural, means:

A.   the Named Insured named in Item 1. of the Declarations;

B.   if the Named Insured named in the Declarations is an individual, the person so named and his/her lawful spouse, but only with respect to his/her conduct of business as a sole proprietor;

C.   if the Named Insured named in the Declarations is a partnership or joint venture, the partnership or joint venture so named and any partner or member thereof or his/her lawful spouse, but only with respect to the conduct of the partnership or joint venture business;

D.   if the Named Insured named in the Declarations is a limited liability company, the limited liability company so named, any manager thereof, but only with respect to their duties as manager of the limited liability company and any member thereof, but only with respect to the conduct of the business of the limited liability company;

E.   if the Named Insured named in the Declarations is other than an individual, partnership, joint venture or limited liability company, the organization so designated and any executive officer or director thereof, but only with respect to his/her duties as an executive officer or director of such organization;

F.   any person (other than an employee of the Named Insured) or organization while acting as real estate manager for the Named Insured;

G.   any employee of the Named Insured, other than the executive officers of the Named Insured if the Named Insured is an organization other than a partnership, joint venture or limited liability company or managers of the Named Insured if the Named Insured is a limited liability company, solely while acting within the scope of his/her duties as such;

provided, however, that coverage afforded to such employee does not apply to:

1.   Bodily Injury, Personal Injury or Advertising Injury:

(i)   to the Named Insured, the Named Insured's partners, the Named Insured's members or to a co-employee while in the course of his/her employment or performing duties related to the conduct of the Named Insured's business;

(ii)  to the spouse, child, parent, brother or sister of that co-employee as a consequence of subparagraph 1.(i) hereinabove;

(iii) for which there is any obligation to share Damages with or repay someone else who must pay Damages because of the injury described in subparagraphs 1.(i) and (ii) hereinabove; or

(iv)  arising out of his/her providing or failure to provide professional health care services, if the Named Insured is engaged  in the business or occupation of providing professional health care services;

2.   Property Damage to property:

(i)   owned, occupied or used by; or

(ii) rented to, in the care, custody or control of, or over which physical control is being exercised for any purpose by;

the Named Insured, any employee of the Named Insured or any partner or member;

H. with respect to the operation, for the purpose of locomotion upon a public highway, of Mobile Equipment registered in the name of the Named Insured under any motor vehicle registration law:

1. an employee of the Named Insured while operating any such equipment in the course of his/her employment by the Named Insured; or

2. any other person while operating with the permission of the Named Insured any such equipment and any person or organization legally responsible for such person but only with respect to liability arising out of such operation, but only if there is no other valid and collectible insurance available, either on a primary or excess basis, to such person or organization;

provided, however, that no person or organization shall be an Insured under this paragraph H. with respect to:

(i) Bodily Injury to any co-employee of such person operating any such equipment; or

(ii) Property Damage to property owned by, rented to, in the charge of or occupied by the Named Insured or the employer of any person described in subparagraph 2. hereinabove;

I. any organization which is acquired or formed by the Named Insured, other than a partnership, joint venture or limited liability company, and over which the Named Insured maintains majority ownership, will qualify as a Named Insured if there is no other similar insurance available to that organization;

provided, however that:

1. coverage under this provision is afforded only for ninety (90) days from the date the Named Insured acquires or forms such organization, or the end of the Policy Period, whichever is earlier;

2. Coverage A. does not apply to Bodily Injury or Property Damage that occurred before the Named Insured acquired or formed the organization; and

3. Coverage B. does not apply to Personal Injury or Advertising Injury arising out of an offense committed before the Named Insured acquired or formed the organization;

J. the heirs, executors, administrators, assigns and legal representatives of each Insured in the event of death, incapacity or bankruptcy of such Insured, but only while acting within the scope of their duties as such on behalf of the Named Insured or of the Insured's estate.

This policy does not apply to Bodily Injury, Property Damage, Personal Injury or Advertising Injury arising out of the conduct of any partnership, joint venture or limited liability company which is not named in the Declarations as a Named Insured.

## INSURING AGREEMENTS

A. **Coverage A. - Bodily Injury and Property Damage Liability:** The Company shall pay on behalf of the Insured all sums in excess of the Deductible amount stated in Item 5. of the Declarations, which the Insured shall become legally obligated to pay as Damages as a result of Claims first made against the Insured during the Policy Period or during the Extended Reporting Period, if exercised, and reported to the Company pursuant to Section Claims A., Claim Reporting Provision, for Bodily Injury or Property Damage to which this insurance applies caused by an Occurrence, provided:

1. the entirety of such Bodily Injury or Property Damage and Occurrence happens during the Policy Period or on or after the Retroactive Date stated in Item 7. of the Declarations; and

2. such Bodily Injury or Property Damage arises out of only those products, goods, operations or premises specified in Item 6. of the Declarations.

B. **Coverage B. - Personal Injury and Advertising Injury Liability:** The Company shall pay on behalf of the Insured all sums in excess of the Deductible amount stated in Item 5. of the Declarations, which the Insured shall become legally obligated to pay as Damages as a result of Claims first made against the Insured during the Policy Period or during the Extended Reporting Period, if exercised, and reported to the Company pursuant to Section Claims A., Claim Reporting Provision, for Personal Injury or Advertising Injury to which this insurance applies caused by an Occurrence, provided:

1. the entirety of such Personal Injury or Advertising Injury and offense happens during the Policy Period or on or after the Retroactive Date stated in Item 7. of the Declarations; and

2.  such Personal Injury or Adverting Injury arises out of only those products, goods, operations or premises specified in Item 6. of the Declarations.

## DEFINITIONS

A.  **Advertisement** means a commercial communication, including communications that are published material placed on the Internet or on similar electronic means of communication, that is broadcast or published about the products, goods or operations of the Named Insured for the purpose of promoting the sale or use of such products, goods or operations; provided, however, only that part of a website that is about the products, goods or operations of the Named Insured for the purposes of promoting such products, goods or operations is considered an Advertisement.

B.  **Advertising Injury** means injury, including consequential Bodily Injury, arising out of oral or written publication of material that libels or slanders a person or organization or a person's or organization's products, goods or operations or other defamatory or disparaging material, occurring in the course of the Named Insured's Advertisement.

C.  **Aircraft Products** means any aircraft whether or not heavier than air (including spacecraft and missiles) and any ground support, guidance, control or communications equipment used in connection therewith, and also includes parts, supplies, or equipment installed in or on or used in connection with aircraft, including tools, training aids, instructions, manuals, blueprints and other data, engineering and other advice, services and labor used in the operation, maintenance or manufacture of aircraft products.

D.  **Automobile** means a land motor vehicle, trailer or semitrailer designed for travel on public roads (including any attached machinery or equipment); provided, however, it does not include Mobile Equipment.

E.  **Bodily Injury** means bodily injury, sickness or disease sustained by a person, including death resulting from any of these at any time.

Bodily Injury shall also mean Incidental Medical Malpractice Injury, provided that the Named Insured is not engaged in the business or occupation of providing professional health care services.

F.  **Claim** means a notice received by the Insured of an intention to hold the Insured responsible for: (1) a Bodily Injury; (2) a Property Damage; (3) an Advertising Injury; or (4) a Personal Injury; involving this policy and shall include the service of suit or institution of arbitration proceedings against the Insured.

G.  **Claim Expenses** means reasonable and necessary amounts incurred by the Company or by the Insured with the prior written consent of the Company in the defense of that portion of any Claim for which coverage is afforded under this policy, including costs of investigation, court costs, costs of bonds to release attachments and similar bonds, but without any obligation of the Company to apply for or furnish any such bonds, and costs of appeals; provided, however, that Claim Expenses shall not include: (1) salary, wages, overhead, or benefit expenses of or associated with employees or officials of the Named Insured or employees or officials of the Company; or (2) salary, wages, administration, overhead, benefit expenses, or charges of any kind attributable to any in-house counsel or captive out-of-house counsel for the Named Insured or the Company.

Solely for the purposes of liability assumed in an Insured Contract, Claim Expenses incurred by or for a party other than an Insured are deemed to be Damages because of Bodily Injury or Property Damage; provided, however, that:

1.  liability to such party for, or the cost of, that party's defense has also been assumed in the same Insured Contract; and

2.  such Claim Expenses are for the defense of that party against a civil or alternative dispute resolution proceeding in which Damages to which this insurance applies are alleged.

H.  **Completed Operations Hazard** means Bodily Injury and Property Damage arising out of only those operations specified in Item 6. of the Declarations, after such operations have been completed or abandoned by the Insured and occurs away from premises owned by or rented to the Named Insured. Operations includes materials, parts or equipment furnished in connection therewith, warranties or representations made at any time with respect to the fitness, quality, durability, performance or use of those products, goods and operations specified in Item 6. of the Declarations and the providing or failure to provide instructions related thereto. Operations shall be deemed completed at the earliest of the following times:

1.  when all operations to be performed by or on behalf of the Insured under a contract with the Insured have been completed;

2.  when all operations to be performed by or on behalf of the Insured at the site of the operations have been completed; or

3. when the portion of the work out of which the injury or damage arises has been put to its intended use by any person or organization other than another contractor or sub-contractor engaged in performing operations for a principal as a part of the same project.

Operations which may require further service or maintenance work, or correction, repair or replacement, but which are otherwise complete, shall be deemed complete.

The Completed Operations Hazard does not include Bodily Injury or Property Damage arising out of:

1. operations in connection with the transportation of property, unless the Bodily Injury or Property Damage arises out of a condition in or on a vehicle not owned or operated by the Named Insured created by the loading or unloading thereof; or

2. the existence of tools, uninstalled equipment or abandoned or unused materials.

I. **Damages** means the monetary portion of any judgment, award or settlement; provided, however, that Damages shall not include: (1) multiplied portions of damages in excess of actual damages, including trebling of damages; (2) taxes, criminal or civil fines, or penalties imposed by law; (3) sanctions; (4) matters which are uninsurable under the law pursuant to which this policy shall be construed; or (5) the return of or restitution of fees, profits or charges for services rendered.

J. **Gross Receipts** means Sales and other income, exclusive of deductions, from any other source, insofar as the Sales or other income relate to or emanate from sale of products or goods or operations specified in Item 6. of the Declarations performed during the Policy Period by or on behalf of the Insured.

K. **Grounding** means the withdrawal of one or more aircraft from flight operations or the imposition of speed, passenger or load restrictions on such aircraft because of the existence of or alleged existence of a defect, fault or condition in any Aircraft Products.

L. **Incidental Medical Malpractice Injury** means Bodily Injury arising out of the rendering of or failure to render, during the Policy Period or on or after the Retroactive Date stated in Item 7. of the Declarations, the following services:

1. medical, surgical, dental, x-ray or nursing service or treatment or the furnishing of food or beverages in connection therewith; or

2. the furnishing or dispensing of drugs or medical, dental or surgical supplies or appliances.

M. **Insured Contract** means:

1. a contract for lease of premises; provided, however, that the portion of the contract for a lease of premises that indemnifies any person or organization for damage by fire to premises while rented to the Insured or temporarily occupied by the Insured with the permission of the owner shall not be an Insured Contract;

2. any easement or license, except in connection with construction or demolition operations on or within fifty (50) feet of a railroad;

3. an obligation, as required by municipal ordinance, to indemnify a municipality, except in connection with work for the municipality;

4. a sidetrack agreement;

5. an elevator maintenance agreement; or

6. that part of any other contract or agreement pertaining to the Named Insured's business under which the Named Insured assumes the tort liability of another party to pay for Bodily Injury or Property Damage to a third party; provided, however, Insured Contact shall not include that part of any contract or agreement:

   (i) that indemnifies a railroad for Bodily Injury or Property Damage arising out of construction or demolition operations, within fifty (50) feet of any railroad property and affecting any railroad bridge or trestle, tracks, roadbeds, tunnel, underpass or crossing;

   (ii) that indemnifies an architect, engineer or surveyor for injury or damage arising out of:

      (a) preparing, approving, or failing to prepare or approve, maps, shop drawings, opinions, reports, surveys, field orders, change orders or designs or specifications; or

      (b) supervision, inspection, failure to supervise or inspect or architectural, engineering or surveying services; or

   (iii) under which the Insured, if an architect, engineer or surveyor, assumes liability for an injury or damage arising

out of the Insured's rendering or failure to render professional services, including those listed in subparagraph (ii) hereinabove or any supervision, inspection, failure to supervise or inspect or architectural, engineering or survey services.

N. **Mobile Equipment** means any of the following types of land vehicles, including any attached machinery or equipment:

1. bulldozers, farm machinery, forklifts and other vehicles designed for use principally off public roads;

2. vehicles maintained for use solely on or next to premises the Named Insured owns or rents;

3. vehicles that travel on crawler treads;

4. vehicles, whether self-propelled or not, on which are permanently mounted:

   (i) power cranes, shovels, loaders, diggers, or drills; or

   (ii) road construction or resurfacing equipment such as graders, scrapers or rollers;

5. vehicles not described in 1., 2., 3., or 4. above that are not self-propelled and are maintained primarily to provide mobility to permanently attached equipment of the following types:

   (i) air compressors, pumps and generators, including spraying, welding, building cleaning, geophysical exploration, lighting and well servicing equipment; or

   (ii) cherry pickers and similar devices used to raise or lower workers;

6. vehicles not described in 1., 2., 3., or 4. above maintained primarily for purposes other than the transportation of persons or cargo; provided, however, that self-propelled vehicles with the following types of permanently attached equipment are not Mobile Equipment but will be considered Automobiles:

   (i) equipment designed primarily for:

      (a) snow removal;

      (b) road maintenance, but not construction or resurfacing; or

      (c) street cleaning;

   (ii) cherry pickers and similar devices mounted on Automobile or truck chassis and used to raise or lower workers; and

   (iii) air compressors, pumps and generators, including spraying, welding, building cleaning, geophysical exploration, lighting and well servicing equipment.

O. **Named Insured's Products** means goods or products, other than real property, manufactured, sold, handled or distributed by the Named Insured or by others trading under the Named Insured's name, including any container thereof (other than a vehicle); provided, however, that Named Insured's Products shall not include a vending machine or any other property rented to or located for use of others but not sold.

P. **Occurrence** means an accident, including continuous or repeated exposure to substantially the same general harmful conditions.

Q. **Personal Injury** means injury, including consequential Bodily Injury, arising out of one or more of the following offenses:

1. false arrest, detention or imprisonment or malicious prosecution;

2. wrongful eviction from, wrongful entry into, or invasion of the right of private occupancy of a room, dwelling or premises that a person occupies, committed by or on behalf of its owner, landlord, or lessor; or

3. oral or written publication of material that violates a person's right of privacy.

R. **Policy Period** means the period from the inception date of this policy to the policy expiration date as stated in Item 3. of the Declarations, or its earlier cancellation or termination date.

S. **Products Hazard** means Bodily Injury or Property Damage arising out of only those products or goods specified in Item 6. of the Declarations which are the Named Insured's Products, including warranties or representations made at any time with respect to the fitness, quality, durability, performance or use of those products or goods specified in Item 6. of the Declarations and the providing or failure to provide instructions related thereto, occurring away from premises owned by or rented to the Named Insured and after physical possession of such products has been relinquished to others.

T.  **Property Damage** means:

    1.   physical injury to or destruction of tangible property, including consequential loss of use thereof; or

    2.   loss of use of tangible property which has not been physically injured or destroyed; provided, however, such loss of use is caused by an Occurrence.

U.  **Sales** means the gross amount of money charged by the Named Insured or by others trading under such Named Insured's name for all goods and products sold or distributed during the Policy Period and charged during the Policy Period for installation, servicing or repair, and includes taxes, other than taxes which the Named Insured and such others collect as a separate item and remit directly to a governmental division.

## THE EXCLUSIONS

A.  With respect to all Coverages, this policy does not apply to:

    1.   any Claim based upon or arising out of:

        (i)   the actual, alleged or threatened discharge, disposal, migration, dispersal, seepage, release or escape of Pollutants; provided, however, this subparagraph shall not apply with respect to:

            (a)   the Products Hazard or Completed Operations Hazard;

            (b)   damage, arising out of heat, smoke or fumes from hostile fire at or from any premises, site or location which is or was at any time owned or occupied by, or rented or loaned to any Insured.

        (ii)  Bodily Injury or Property Damage arising out the actual, alleged or threatened discharge, disposal, migration, dispersal, seepage, release or escape of Pollutants:

            (a)   at or from any premises, site or location which is or was at any time used by or for any Insured or others for the handling, storage, disposal, processing or treatment of waste;

            (b)   which are or were at any time transported, handled, stored, treated, disposed of, or processed as waste by or for any Insured or any person or organization for whom the Insured may be legally responsible; or

        (iii) any demand, request, direction, order or statutory or regulatory requirement to test for, monitor, remediate, clean up, remove, contain, treat, detoxify or neutralize Pollutants, or in any way respond to or assess the effects of Pollutants or to pay for or contribute to the costs of undertaking such actions; provided, however, this subparagraph shall not apply to liability for Damages because of Property Damage that the Insured would have in the absence of such demand, request, direction, order or statutory or regulatory requirement.

        Pollutants means any solid, liquid, gaseous or thermal irritants or contaminants including, smoke, vapors, soot, fumes, acids, alkalis, chemicals and waste. Waste includes materials to be recycled, reconditioned or reclaimed;

    2.   any Claim based upon or arising out of the rendering of or failure to render professional services by the Insured or by any person or organization for whose acts, errors or omissions the Insured is legally responsible; provided, however, this exclusion shall not apply to Incidental Medical Malpractice Injury;

    3.   any Claim based upon or arising out of the Insured's activities as a fiduciary under the Employee Retirement Income Security Act of 1974 and its amendments or any regulation or order issued pursuant thereto; or

    4.   any Claim based upon or arising out of any unlawful discrimination by any Insured.

B.  With respect to Coverage A., this policy does not apply to:

    1.   any Claim based upon or arising out of Bodily Injury or Property Damage expected or intended from the standpoint of the Insured; provided, however, this exclusion does not apply to Bodily Injury resulting from the use of reasonable force to protect persons or property;

    2.   any Claim based upon or arising out of Bodily Injury or Property Damage for which the Insured is obligated to pay Damages because of the assumption of liability in any contract or agreement; provided, however, this exclusion shall not apply to liability for damages:

        (i)   that the Insured would have in the absence of the contract or agreement; or

        (ii)  assumed in a contract or agreement that is an Insured Contract, provided, the Bodily Injury and Property Damage occurs subsequent to the execution of the Insured Contract;

PRODUCTS INTERLINE

3. any Claim based upon or arising out of loss of use of tangible property which has not been physically injured or destroyed resulting from:

   (i) a delay in or lack of performance by or on behalf of the Named Insured of any contract or agreement; or

   (ii) a defect, deficiency, inadequacy or dangerous condition in the products, goods or operations of the Named Insured;

   provided, however, this exclusion does not apply to loss of use of other tangible property resulting from the sudden and accidental physical injury to or destruction of the Named Insured's Products or work performed by or on behalf of the Named Insured after such products or work have been put to use by any person or organization other than an Insured;

4. any Claim based upon or arising out of Property Damage to the Named Insured's Products arising out of it or any part of it, or for the cost of inspecting, repairing or replacing any defective or allegedly defective product or part thereof or for loss of use of any defective or allegedly defective product;

5. any Claim for Damages for any loss, cost or expense incurred by the Named Insured or others for the loss of use, withdrawal, recall, inspection, repair, replacement, adjustment, removal or disposal of the Named Insured's Products or work completed by or for the Named Insured or of any property of which such products or work form a part, if such products, work or property are withdrawn from the market or from use because of any known or suspected defect, deficiency, inadequacy or dangerous condition therein;

6. any Claim based upon or arising out of Bodily Injury or Property Damage arising out of ownership, maintenance, operation, use or entrustment to others or loading or unloading of:

   (i) any Automobile, aircraft or watercraft owned or operated by or rented or loaned to any Insured; or

   (ii) any other Automobile, aircraft or watercraft operated by any person in the course of his/her employment by the Named Insured;

   provided, however, this exclusion shall not apply to:

   (a) the parking of an Automobile on premises owned by, rented to or controlled by the Named Insured or on ways next to such premises, if such Automobile is not owned by or rented or loaned to any Insured;

   (b) a watercraft while ashore on premises owned by, rented to or controlled by the Named Insured; or

   (c) a watercraft that is less than twenty-six (26) feet in length, that is not owned by the Named Insured and that is not being used to carry persons or property for a charge;

7. any Claim based upon or arising out of Bodily Injury or Property Damage arising out of:

   (i) the ownership, maintenance, operation, use, loading or unloading of any Mobile Equipment while being used in any prearranged or organized racing, speed or demolition contest or in any stunting activity or in practice or preparation for such contest or activity; or

   (ii) the operation or use of any snowmobile, moped or motorized bicycle, or trailer designed for use therewith;

8. any Claim based upon or arising out of Bodily Injury or Property Damage arising out of the transportation of Mobile Equipment by an Automobile owned or operated by or rented or loaned to any Insured;

9. any Claim based upon or arising out of Property Damage to:

   (i) property owned, occupied or rented to the Insured;

   (ii) property loaned to the Insured;

   (iii) personal property in the care, custody or control of the Insured;

   (iv) that particular part of any property,

       (a) upon which operations are being performed by or on behalf of the Insured if the Property Damage arises out of those operations; or

       (b) the restoration, repair or replacement of which has been made or is necessary because of faulty workmanship thereon by or on behalf of the Insured; provided, however, this subparagraph shall not apply with respect to Property Damage included in the Completed Operations Hazard or the Products Hazard;

(v) premises that the Named Insured sells, gives away or abandons, if the Property Damage arises out of any part of those premises; provided, however, this subparagraph shall not apply if the premises are included in the Completed Operations Hazard and were never occupied, rented or held for rental by the Named Insured; or

(vi) to work performed by the Insured arising out of such work or any portion thereof, or out of such materials, parts or equipment furnished in connection therewith with respect to the Completed Operations Hazard;

provided, however, Items (ii), (iii), and (iv) of this exclusion shall not apply with respect to liability under a written sidetrack agreement;

10. any Claim based upon or arising out of any obligation of the Insured under any workers' compensation, unemployment compensation or disability benefits law or under any similar law;

11. any Claim based upon or arising out of Bodily Injury to any employee of the Insured arising out of and in the course of employment by the Insured or performing duties related to conduct of the Insured's business or any such Claim brought by or on behalf of the spouse, child, parent, brother, sister or partner of the employee;

this exclusion shall apply:

(i) whether the Insured may be liable as an employer or in any other capacity; and

(ii) to any obligation to share damages with or repay someone else who must pay damages because of injury;

provided, however, that this exclusion shall not apply with respect to liability assumed by the Insured under an Insured Contract;

12. any Claim based upon or arising out of Bodily Injury or Property Damage for which the Insured may be held liable because of:

(i) causing or contributing to the intoxication of any person;

(ii) the furnishing of alcoholic beverages to a person under legal drinking age or under the influence of alcohol; or

(iii) any statute, ordinance or regulation relating to the sale, gift, distribution or use of alcoholic beverages;

provided, however, this exclusion shall apply only if the Named Insured:

(a) manufactures or distributes alcoholic beverages;

(b) serves or furnishes alcoholic beverages for a charge whether or not such activity requires a license, is for financial gain or livelihood; or

(c) serves or furnishes alcoholic beverages without a charge if a license is required for such activity;

13. any Claim based upon or arising out of Bodily Injury or Property Damage due to war, whether or not declared, civil war, insurrection, rebellion or revolution or to any act or condition incident to any of the foregoing with respect to liability assumed by the Insured under an Insured Contract;

14. any Claim based upon or arising out of Aircraft Products including consequential loss of use thereof resulting from Grounding;

15. any Claim based upon or arising out of any products or goods manufactured, sold, handled, or distributed or work completed by the Insured or by others operating under the direction or control of the Insured in violation of any law, statute, ordinance, or regulation, Federal, State or Municipal government, or agencies thereof;

16. any Claim for Bodily Injury arising out of Personal Injury or Advertising Injury;

17. any Claim for Incidental Medical Malpractice Injury for any expenses incurred by the Insured for first aid to others at the time of an accident; or

18. any Claim for Incidental Medical Malpractice Injury caused by an indemnitee if such indemnitee is engaged in the business or occupation of providing any of the following services:

(a) medical, surgical, dental x-ray or nursing service or treatment or the furnishing of food or beverages in connection therewith; or

(b) the furnishing or dispensing of drugs or medical, dental or surgical supplies or appliances.

Exclusions 3. through 16. shall not apply to damage by fire to premises while rented by the Named Insured or temporarily occupied by the Named Insured with the permission of the owner of the premises. A Limit of Liability applies to this coverage as described in Section Limits of Liability, Coverage A. - Limit of Liability - Damage to Premises.

C.  With respect to Coverage B., this policy does not apply to:

1.  any Claim based upon or arising out of Personal Injury or Advertising Injury caused by or at the direction of the Insured with the knowledge that the act would violate the rights of another and would inflict Personal Injury or Advertising Injury;

2.  any Claim based upon or arising out of Personal Injury or Advertising Injury arising out of the oral or written publication of material, if done by or at the direction of the Insured with the knowledge of its falsity;

3.  any Claim based upon or arising out of Personal Injury or Advertising Injury arising out of oral or written publication of material whose first publication took place before the Retroactive Date stated in Item 7. of the Declarations;

4.  any Claim based upon or arising out of Personal Injury or Advertising Injury arising out of any criminal act committed by or at the direction of the Insured;

5.  any Claim based upon or arising out of Advertising Injury arising out of a mistake in advertised price or incorrect description of any product, good or operation;

6.  any Claim based upon or arising out of any liability assumed by the Insured in a contract or agreement; provided, however, this exclusion shall not apply to liability an Insured would have in the absence of the contract or agreement;

7.  any Claim based upon or arising out of Personal Injury or Advertising Injury arising out of piracy, unfair competition, the infringement of copyright, title, trade dress, slogan, service mark, service name or trademark, trade name, patent, trade secret or other intellectual property right;

8.  any Claim based upon or arising out of Personal Injury or Advertising Injury arising out of an electronic chatroom or bulletin board the Insured hosts, owns, or over which the Insured exercises control;

9.  any Advertising Injury committed by any Insured whose business is:

    (i)   advertising, broadcasting, publishing, or telecasting;

    (ii)  designing or determining content for websites for others; or

    (iii) an Internet access, content search or service provider;

10. any Claim based upon or arising out of a breach of contract; provided, however, this exclusion shall not apply to an implied contract to use another's advertising idea in the Named Insured's Advertisement; or

11. any Claim based upon or arising out of the failure of products, goods or services to conform with any statement of quality or performance made in the Named Insured's Advertisement.

## TERRITORY

The insurance afforded by this policy applies worldwide, provided the Claim is made in the United States of America, its territories or possessions, Puerto Rico or Canada.

## LIMITS OF LIABILITY

A.  **Coverage A. - Limit of Liability-Each Occurrence:**  The total liability of the Company for the combined total of Damages and Claim Expenses for all Claims insured herein because of all Bodily Injury or Property Damage sustained by one or more persons or entities as the result of any one Occurrence shall not exceed the Limit of Liability stated in Item 4.A.(i) of the Declarations as applicable to Each Occurrence.

B.  **Coverage A. - Limit of Liability-Damage to Premises:**  The total liability of the Company for the combined total of Damages and Claim Expenses for all Claims, including those subject to the above provision regarding the Coverage A - Limit of Liability – Each Occurrence, insured herein because of Property Damage to any one premises while rented by the Named Insured or in the case of damage by fire, while rented by the Named Insured or temporarily occupied by the Named Insured with the permission of the owner of the premises, shall not exceed the Limit of Liability stated in Item 4.A.(ii) of the Declarations as applicable to Damage to Premises – Any One Premises.

C. **Coverage B. - Limit of Liability-Each Person or Organization:** The total liability of the Company for the combined total of Damages and Claim Expenses for all Claims insured herein because of all Personal Injury and all Advertising Injury sustained by any one person or organization shall not exceed the Limit of Liability stated in Item 4.B. of the Declarations as applicable to Each Person or Organization.

D. **Limit of Liability - Policy Aggregate:** Subject to the above Limits of Liability A, B and C, the total liability of the Company shall not exceed the Aggregate Limit of Liability as stated in Item 4.C. of the Declarations for all Damages and Claim Expenses arising out of all Claims first made during the Policy Period and the Extended Reporting Period, if exercised.

E. **Deductible:** The applicable Deductible amount stated in Item 5. of the Declarations shall be paid by the Named Insured and shall be applicable to each Occurrence and to each person or organization and shall include Damages and Claim Expenses, whether or not Damages payments are made.

Such amounts shall, upon written demand by the Company, be paid by the Named Insured within ten (10) days. The total payments requested from the Named Insured in respect of each Occurrence or each person or organization shall not exceed the applicable Deductible amount stated in Item 5. of the Declarations. Solely for the purpose of determining the Company's limit of liability, the applicable Deductible amount shall be deemed to be applied first to the Damages.

The determination of the Company as to the reasonableness of the Claim Expenses shall be conclusive on the Named Insured.

F. **Multiple Insureds, Claims and Claimants:** The inclusion herein of more than one Insured in any Claim or suit or the making of Claims or the bringing of suits by more than one person or organization shall not operate to increase the Limits of Liability stated in Item 4. of the Declarations. More than one Claim arising out of a single Occurrence or offense shall be considered a single Claim. All such Claims, whenever made, shall be treated as a single Claim. Such single Claim, whenever made, shall be deemed to be first made on the date on which the earliest Claim arising out of such Occurrence or offense is made or with regard to notice given to and accepted by the Company pursuant to Section Claims B., Discovery Clause, on the date within the Policy Period on which such notice of potential Claim is first received by the Company.

## DEFENSE, SETTLEMENTS AND CLAIM EXPENSES

The Company shall have the right and duty to defend and investigate any Claim to which coverage under this policy applies. The Company may make such investigation and settlement of any Claim as it deems expedient. Claim Expenses incurred in defending and investigating a Claim shall be a part of and shall not be in addition to the applicable Limits of Liability stated in Item 4. of the Declarations. Such Claim Expenses shall reduce the Limits of Liability and shall be applied against the applicable Deductible. The Company shall have no obligation to pay any Damages or to defend or to continue to defend any Claim or to pay Claim Expenses for Claims after the applicable Limit or Limits of Liability stated in Item 4. of the Declarations have been exhausted.

## CLAIMS

A. **Claim Reporting Provision:** The Insured shall give to the Company written notice as soon as practicable of any Claim first made against the Insured during the Policy Period or the Extended Reporting Period, if exercised.

In the event suit is brought against the Insured, the Insured shall immediately forward to Markel Service, Incorporated, Ten Parkway North, Deerfield, Illinois, 60015, on behalf of the Company, every demand, notice, summons or other process received by him/her or by his/her representatives.

B. **Discovery Clause:** If during the Policy Period, the Insured first becomes aware of a specific Occurrence or offense which is reasonably expected to result in a Claim within the scope of coverage of this policy, then the Insured may provide written notice to the Company containing the information listed below. If such written notice is received by the Company during the Policy Period, then any Claim subsequently made against the Insured arising out of such Occurrence or offense shall be deemed for the purpose of this insurance to have been made on the date on which such written notice is received by the Company.

It is a condition precedent to the coverage afforded by this Discovery Clause that written notice be given to the Company containing the following information:

1. the description of the specific Occurrence or offense;

2. the date on which such Occurrence or offense took place;

3. the injury or damage which has or may result from such Occurrence or offense;

4. the identity of any injured persons; and