UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| VITAMIN ENERGY, LLC,<br><br>                    Plaintiff,<br><br>        v.<br><br>EVANSTON INSURANCE COMPANY,<br><br>                    Defendant. | No. 2:19-cv-03672-JHS |

## AMENDED COMPLAINT

Plaintiff, Vitamin Energy, LLC ("Vitamin Energy"), files this amended complaint against defendant, Evanston Insurance Company ("Evanston"), for declaratory judgment, breach of contract, and violation of Pennsylvania's insurance bad faith statute, and in support thereof avers as follows:

**I.      Parties**

1.      Vitamin Energy is a limited liability company with a business address at 391 Wilmington West Chester Pike, Unit 3, #403, Glen Mills, Pennsylvania.

2.      Vitamin Energy makes beverage products that provide consumers with increased energy and other health benefits.

3.      Vitamin Energy regularly conducts business in Philadelphia County.

4.      Evanston is an Illinois domiciled insurance company with its principal place of business at Ten Parkway North, Deerfield, Illinois 60015.

5.      Upon information and belief, Evanston regularly conducts business in Philadelphia County.

II.    **The Insurance Policy**

6.     Vitamin Energy is the Named Insured to a General Liability Insurance Policy issued by Evanston with a policy period of July 23, 2018 to July 23, 2019 (the "Policy Period"). A copy of this policy (hereinafter the "Policy"), which is incorporated in its entirety, is attached as Exhibit A.

7.     The Policy provides coverage for "Advertising Injury," stating that "[t]he Company shall pay on behalf of the Insured all sums in excess of the Deductible amount stated in Item 5. of the Declarations, which the Insured shall become legally obligated to pay as Damages as a result of Claims first made against the Insured during the Policy Period or during the Extended Reporting Period, if exercised, and reported to the Company pursuant to Section Claims A., Claim Reporting Provision, for Personal Injury or Advertising Injury to which this insurance applies caused by an offense, provided: (1) the entirety of such Personal Injury or Advertising Injury and offense happens during the Policy Period or on or after the Retroactive Date stated in Item 7. of the Declarations; and (2) such Personal Injury or Adverting Injury arises out of only those products, goods, operations or premises specified in Item 6. of the Declarations." *See* Policy, Insuring Agreements, Subpart B, pp. 2-3 of 16.

8.     Advertising Injury is defined in the Policy as "injury, including consequential Bodily Injury, arising out of oral or written publication of material that libels or slanders a person or organization or a person's or organization's products, good or operations or other defamatory or disparaging material, occurring in the course of the Named Insured's Advertisement." *See* Policy, Definitions, Subpart B, p. 3 of 16.

9.     The Policy provides that the definition of Advertisement is "a commercial communication, including communications that are published material placed on the Internet or

2

on similar electronic means of communication, that is broadcast or published about the products, goods or operations of the Named Insured for the purpose of promoting the sale or use of such products, goods or operations; provided, however, only that part of a website that is about the products, goods or operations of the Named Insured for the purposes of promoting such products, goods or operations is considered an Advertisement." *See* Policy, Definitions, Subpart A, p. 3 of 16.

10.    Claim is defined by the policy as "a notice received by the Insured of an intention to hold the Insured responsible for: (1) a Bodily Injury; (2) a Property Damage; (3) an Advertising Injury; or (4) a Personal Injury; involving this policy and shall include the service of suit or institution of arbitration proceedings against the Insured." *See* Policy, Definitions, Subpart F, p. 3 of 16.

11.    Damages are defined in the policy as "the monetary portion of any judgment, award or settlement; provided, however, that Damages shall not include: (1) multiplied portions of damages in excess of actual damages, including trebling of damages; (2) taxes, criminal or civil fines, or penalties imposed by law; (3) sanctions; (4) matters which are uninsurable under the law pursuant to which this policy shall be construed; or (5) the return of or restitution of fees, profits or charges for services rendered." *See* Policy, Definitions, Subpart I, p. 4 of 16.

12.    Item 6 of the Declarations to the Policy states that products, goods, operations, and premises covered by the Policy are "[s]upplements; all related premises and operations of the Insured." *See* Policy, Declarations, p. 2 of 2.

13.    The Policy further provides that "[t]he Company shall have the right and duty to defend and investigate any Claim to which coverage under this policy applies." *See* Policy, Defense, Settlement and Claim Expenses, p. 10 of 16.

14.    Coverage for Advertising Injury is provided under the Policy in an amount of up to $1,000,000 per person or organization, or up to $2,000,000 in the aggregate, with no deductible. *See* Policy, Declarations, p. 1 of 2. As noted herein, however, these amounts were both modified to $5,000,000 pursuant to an endorsement to the policy effective October 8, 2018.

### III.    The Underlying Lawsuit and Evanston's Refusal to Defend/Provide Coverage

15.    On June 10, 2019, Vitamin Energy was sued by International IP Holdings, LLC and Innovation Ventures, LLC (together, the "Michigan Plaintiffs") in the United States District Court for the Eastern District of Michigan (the "Michigan Lawsuit"). A copy of the Complaint filed against Vitamin Energy in the Michigan Lawsuit (the "Michigan Complaint") is attached as Exhibit B.

16.    Among other claims, the Michigan Complaint alleges that Vitamin Energy engaged in false and misleading advertising that ultimately disparaged the Michigan Plaintiffs' products, commonly known as 5-Hour Energy "liquid energy shots."

17.    Specifically, the Michigan Complaint alleges that Vitamin Energy "advertises its product with a series of misleading and false statements, including false and misleading *comparative advertising* and claims that [Vitamin Energy's] products provide steroid-like athletic performance enhancement." *See* Michigan Complaint, ¶ 32 (emphasis added).

18.    In this averment, the Michigan Plaintiffs make two distinct allegations about Vitamin Energy's advertisements, each of which is sufficient to trigger coverage by Evanston, in addition to insinuating that their allegations include other misleading and false advertisements not specifically identified or discussed in the Michigan Complaint.

19.    First, the Michigan Plaintiffs allege that Vitamin Energy uses false and misleading comparative advertising.

4

20.     Specifically, the Michigan Plaintiffs allege that Vitamin Energy compare its product to theirs in a false and misleading way that is derogatory and/or disparaging to 5-Hour Energy.

21.     To that end, the Michigan Complaint includes the following comparison chart, which the Michigan Plaintiffs allege that Vitamin Energy used in its advertising:



| | VITAMIN ENERGY™ | RedBull | Vitamin Water | EmergenC | 5 Hour Energy |
|---|---|---|---|---|---|
| 0 Carbs | ● | | | | ● |
| 0 Sugar | ● | | | | ● |
| 1000 MG of C | ● | | | ● | |
| 100% daily value of vitamin B | ● | | ● | | |
| More energy than 1 cup of coffee | ● | ● | | | ● |
| Tastes great | ● | | ● | | ● |

22.    In doing so, the Michigan Plaintiffs specifically allege that Vitamin Energy is using comparative advertising to disparage 5-Hour Energy.

23.    The comparison chart is central to the Michigan Plaintiffs' claims, as it is alleged to have been used by Vitamin Energy to disparage 5-Hour Energy by stating and/or insinuating that (a) 5-Hour Energy is an inferior product to Vitamin Energy and (b) 5-Hour Energy does not contain certain essential nutrients that are in Vitamin Energy.

24.    The Michigan Plaintiffs reference Vitamin Energy's alleged comparative advertising elsewhere, averring that Vitamin Energy's advertisements include claims of "7 hours of energy" in a manner that can only be construed as disparaging to 5-Hour Energy due to the inherent comparison drawn from such advertising. *See* Michigan Complaint, ¶ 24.

25.    Based on these averments in the Michigan Complaint, the comparative advertising alleged to be undertaken by Vitamin Energy can only be interpreted to be disparaging towards the Michigan Plaintiffs' product.

26.    Second, and distinct from the above-described allegations regarding comparative advertising, the Michigan Complaint alleges that Vitamin Energy claims that its products provide steroid-like athletic performance enhancement.

27.    The Michigan Complaint alleges that Vitamin Energy claims that it was originally designed as the "shot of choice" and that its product "deliver[s] improved performance without the use of harmful steroids or steroid like compounds." *See* Michigan Complaint, ¶ 32.

28.    In addition to making claims about Vitamin Energy's own product, inherent in these averments is the allegation that Vitamin Energy is insinuating that the Michigan Plaintiffs' own product either (a) contains steroids and/or (b) is just as harmful as steroids.

29.     The Michigan Plaintiffs further aver that Vitamin Energy's allegedly false, misleading, confusing, and deceptive advertising has caused them to suffer both economic and irreparable injury. *See* Michigan Complaint, ¶¶ 45, 52.

30.     All of these allegations, both separately and taken together, place claims brought in the Michigan Lawsuit squarely within the coverage provided by the Policy.

31.     As a result, on June 13, 2019, Vitamin Energy's insurance broker, Bolton & Company, placed Evanston on notice under the Policy of the Michigan Lawsuit via email.  A copy of this email is attached as Exhibit C.

32.     Despite subsequent requests from Vitamin Energy, Evanston did not promptly respond, forcing Vitamin Energy to retain counsel in order to prepare a defense to the Michigan Lawsuit.

33.     Evanston finally responded on July 10, 2019, when it issued a letter disclaiming coverage and stating its position that it "has no current obligation to defend or indemnify Vitamin Energy for this loss."  A copy of this letter is attached as Exhibit D.

34.     Evanston's position is grounded in its erroneous contention that "there are no allegations of . . . 'advertising injury'" as defined by the Policy. *See* Exhibit D.

35.     Evanston also claims that even if there were advertising injury, coverage would be barred based on a Policy exclusion "as all of the claims arise out of an infringement of an intellectual property right or unfair competition." *See id.*

36.     Evanston further contends that coverage is barred pursuant to exclusions in the Policy "for claims arising out of Advertising Injury arising out of a mistake in an advertised price or description of any product as well as claims based upon or arising out of the failure to conform." *See id.*

37.     Evanston's positions are clearly wrong under the plain language of the Policy.

38.     While the Michigan Complaint does contain allegations and claims relating to both intellectual property (trademark) and unfair competition, it *also* contains separate and independent allegations regarding false and misleading comparative advertising that purportedly disparaged the Michigan Plaintiffs' product, as detailed above.

39.     Moreover, these allegations have nothing to do with a mistake in any product's advertised price or description, nor do they relate to or allege a purported failure of Vitamin Energy to conform with any statement of quality or performance made in its advertisements.

40.     Rather, coverage is invoked due to the allegations that Vitamin Energy harmed the Michigan Plaintiffs via purportedly false and misleading advertising that disparaged, and thus harmed, their product.

41.     Following receipt of Evanston's July 10, 2019 letter, Vitamin Energy's Philadelphia-based counsel engaged in both an oral discussion and email correspondence with Evanston regarding Vitamin Energy's position that Evanston was improperly disclaiming coverage under the Policy.

42.     Despite those discussions, Evanston still refuses to provide coverage, sending a letter July 19, 2019 confirming this to be the case (and clarifying the limits of liability under the Policy via the aforementioned endorsement). A copy of this letter is attached as Exhibit E.

## COUNT I – DECLARATORY JUDGMENT

43.     Vitamin Energy restates and incorporates the averments set forth in paragraphs 1 through 42 herein.

44.     An actual controversy exists between Vitamin Energy and Evanston regarding Evanston's obligation to provide insurance coverage to Vitamin Energy under the Policy.

8

45.    Vitamin Energy placed Evanston on notice of the Michigan Lawsuit within the Policy Period of the Policy.

46.    Conduct alleged in the Michigan Lawsuit falls within the Policy's coverage for "Advertising Injury" and is not subject to any exclusion.

47.    Notwithstanding this, Evanston has taken the position that it has no obligation to defend and provide coverage.

48.    The parties disagree about whether Evanston has the obligation to defend and provide coverage for claims in the Michigan Lawsuit under the terms of the Policy.

49.    Vitamin Energy is entitled to have the Court determine and declare that, under the terms and conditions of the Policy, Evanston is obligated to defend and provide coverage to Vitamin Energy for claims in the Michigan Lawsuit.

WHEREFORE, Vitamin Energy demands judgment against Evanston, and respectfully requests that the Court determine and declare that:

(a)    The Michigan Lawsuit alleges "Advertising Injury" as defined under the Policy;

(b)    The "Advertising Injury" alleged in the Michigan Lawsuit is not subject to any exclusions under the Policy;

(c)    Evanston is obligated to reimburse Vitamin Energy for all costs it has already incurred to defend against the Michigan Lawsuit;

(d)    Evanston is obligated to defend against the claims in the Michigan Lawsuit alleging "Advertising Injury" going forward; and

(e)    Evanston is obligated to pay all losses incurred by Vitamin Energy resulting from the claims in the Michigan Lawsuit alleging "Advertising Injury."

Vitamin Energy also respectfully requests that the Court grant such other relief as it deems appropriate.

## COUNT II – BREACH OF CONTRACT

50.    Vitamin Energy restates and incorporates the averments set forth in paragraphs 1 through 49 herein.

51.    The Policy is an enforceable contract between Vitamin Energy and Evanston.

52.    Subject to the terms and conditions of the Policy, Evanston is obligated to defend and provide coverage to Vitamin Energy for the claims alleging "Advertising Injury" in the Michigan Lawsuit.

53.    Vitamin Energy has fully complied with its obligations under the Policy, including paying its premium and providing timely notice of the Michigan Lawsuit to Evanston within the Policy Period.

54.    In breach of its obligations under the Policy, Evanston has refused to defend and provide coverage to Vitamin Energy for the claims alleging "Advertising Injury" in the Michigan Lawsuit.

55.    As a direct result of Evanston's breach of the policies, Vitamin Energy has suffered damages.

WHEREFORE Vitamin Energy demands judgment against Evanston, and respectfully requests that the Court enter an order awarding Vitamin Energy compensatory damages in excess of $50,000, pre- and post-judgment interest, and such other relief as the Court deems appropriate.

## COUNT III – BAD FAITH/VIOLATION OF 42 Pa.C.S. § 8371

56.    Vitamin Energy restates and incorporates the averments set forth in paragraphs 1 through 55 herein.

57.    42 Pa.C.S. § 8371 provides for statutory remedies, including an award of punitive damages and attorneys' fees, if the Court finds that an insurer has acted in bad faith toward an insured.

58.    A refusal to provide coverage to an insured with no good cause when a policy provides for coverage violates the statute.

59.    Likewise, an insurance carrier's failure to timely correspond with its insured violates the statute.

60.    Vitamin Energy submitted a claim for insurance coverage to Evanston under the Policy in connection with the claims brought against it in the Michigan Lawsuit.

61.    Evanston violated the bad faith statute in its handling of Vitamin Energy's claim under the Policy, effectively and actually denying coverage without a reasonable or legitimate basis.

62.    Evanston acted in bad faith through its arbitrary and unreasonable refusal to provide coverage pursuant to the terms and conditions of the Policy.

63.    Evanston acted in bad faith by interpreting the Policy provisions in such a way to avoid any duty to provide coverage to Vitamin Energy.

64.    Evanston acted in bad faith by taking the position that claims in the Michigan Lawsuit do not allege "Advertising Injury" as defined by the Policy.

65.    Evanston acted in bad faith by delaying its coverage determination despite requests from Vitamin Energy.

66.    Evanston's coverage determination is contradicted by the plain language of the Policy.

11

67.     Evanston acted with knowledge or reckless disregard of its lack of reasonable basis for denying coverage to Vitamin Energy.

68.     Evanston's conduct is sufficiently outrageous that an award of punitive damages is appropriate.

WHEREFORE, Vitamin Energy demands judgment against Evanston, and respectfully requests that the Court grant it the following relief:

a.      Compensatory damages;

b.      Interest;

c.      Punitive damages;

d.      Costs;

e.      Reasonable attorneys' fees; and

f.      Such other relief as the Court deems appropriate.


Nicholas Poduslenko (I.D. 51562)
Matthew S. Olesh (I.D. 206553)
**OBERMAYER REBMANN MAXWELL**
**& HIPPEL LLP**
1500 Market Street, Suite 3400
Philadelphia, PA 19102
Tel.:   (215) 665-3000
Fax:   (215) 665-3165
nicholas.poduslenko@obermayer.com
matthew.olesh@obermayer.com


Dated: October 2, 2019

A

A STOCK COMPANY



**MARKEL**®

# EVANSTON INSURANCE COMPANY

Ten Parkway North
Deerfield, IL 60015

**INSURANCE POLICY**

**Coverage afforded by this policy is provided by the Company (Insurer) and named in the Declarations.**

In **Witness Whereof**, the company (insurer) has caused this policy to be executed and attested and countersigned by a duly authorized representative of the company (insurer) identified in the Declarations.

**Secretary**

**President**

IL 09 10 07 02

# PENNSYLVANIA NOTICE

An Insurance Company, its agents, employees, or service contractors acting on its behalf, may provide services to reduce the likelihood of injury, death or loss. These services may include any of the following or related services incident to the application for, issuance, renewal or continuation of, a policy of insurance:

1. Surveys;

2. Consultation or advice; or

3. Inspections.

The "Insurance Consultation Services Exemption Act" of Pennsylvania provides that the Insurance Company, its agents, employees or service contractors acting on its behalf, is not liable for damages from injury, death or loss occurring as a result of any act or omission by any person in the furnishing of or the failure to furnish these services.

The Act does not apply:

1. If the injury, death or loss occurred during the actual performance of the services and was caused by the negligence of the Insurance Company, its agents, employees or service contractors;

2. To consultation services required to be performed under a written service contract not related to a policy of insurance; or

3. If any acts or omissions of the Insurance Company, its agents, employees or service contractors are judicially determined to constitute a crime, actual malice, or gross negligence.

| **Instruction to Policy Writers** |
|---|
| Attach the Pennsylvania Notice to all new and renewal certificates insuring risks located in Pennsylvania. |

© ISO Properties, Inc.,  2001



# EVANSTON INSURANCE COMPANY

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# TRADE OR ECONOMIC SANCTIONS

The following is added to this policy:

**Trade Or Economic Sanctions**

This insurance does not provide any coverage, and we (the Company) shall not make payment of any claim or provide any benefit hereunder, to the extent that the provision of such coverage, payment of such claim or provision of such benefit would expose us (the Company) to a violation of any applicable trade or economic sanctions, laws or regulations, including but not limited to, those administered and enforced by the United States Treasury Department's Office of Foreign Assets Control (OFAC).

All other terms and conditions remain unchanged.

MIL 1214 09 17                                                                                        Page 1 of 1

INTERLINE



**MARKEL**®

# PRIVACY NOTICE

We are committed to safeguarding your privacy. We understand your concerns regarding the privacy of your nonpublic personal information. No nonpublic personal information is required to be collected when you visit our websites; however, this information may be requested in order to provide the products and services described. We do not sell nonpublic personal information to non-affiliated third parties for marketing or other purposes. We only use and share this type of information with non-affiliated third parties for the purposes of underwriting insurance, administering your policy or claim and other purposes as permitted by law, such as disclosures to insurance regulatory authorities or in response to legal process. Notwithstanding the foregoing, we may use this information for the purpose of marketing our own products and services to you.

We collect nonpublic personal information about you from the following sources:

- Information we receive from you on applications or other forms;

- Information about your transactions with us, our affiliates, or others; and/or

- Information we receive from consumer reporting agencies and inspection reports.

We do not disclose any nonpublic personal information about our customers/claimants or former customers/claimants to anyone, except as permitted by law.

We may disclose nonpublic personal information about you to the following types of third parties:

- Service providers, such as insurance agents and/ or brokers and claims adjusters; and/or

- Other non-affiliated third parties as permitted by law.

We restrict access to nonpublic personal information about our customers/claimants to those individuals who need to know that information to provide products and services to our customers/claimants or as permitted by law. We maintain physical, electronic, and procedural safeguards to guard your nonpublic personal information.

*Residents of California:*

You may request to review and make corrections to recorded non-public personal information contained in our files. A more detailed description of your rights and practices regarding such information is available upon request. Please contact your agent/broker for instructions on how to submit a request to us.

INTERLINE



# EVANSTON INSURANCE COMPANY

## U.S. TREASURY DEPARTMENT'S OFFICE OF FOREIGN ASSETS CONTROL ("OFAC") ADVISORY NOTICE TO POLICYHOLDERS

No coverage is provided by this Policyholder Notice nor can it be construed to replace any provisions of your policy. You should read your policy and review your Declarations page for complete information on the coverages you are provided.

This Notice provides information concerning possible impact on your insurance coverage due to directives issued by OFAC. **Please read this Notice carefully.**

The Office of Foreign Assets Control (OFAC) administers and enforces sanctions policy, based on Presidential declarations of "national emergency". OFAC has identified and listed numerous:

- Foreign agents;
- Front organizations;
- Terrorists;
- Terrorist organizations; and
- Narcotics traffickers;

as "Specially Designated Nationals and Blocked Persons". This list can be located on the United States Treasury's web site – http//www.treas.gov/ofac.

In accordance with OFAC regulations, if it is determined that you or any other insured, or any person or entity claiming the benefits of this insurance has violated U.S. sanctions law or is a Specially Designated National and Blocked Person, as identified by OFAC, this insurance will be considered a blocked or frozen contract and all provisions of this insurance are immediately subject to OFAC. When an insurance policy is considered to be such a blocked or frozen contract, no payments nor premium refunds may be made without authorization from OFAC. Other limitations on the premiums and payments also apply.



## POLICYHOLDER DISCLOSURE NOTICE OF TERRORISM INSURANCE COVERAGE

RE:    Policy Number: SP884506
      Insured:   VITAMIN ENERGY, LLC
      Insurer:   Evanston Insurance Company

You are hereby notified that under the Terrorism Risk Insurance Act as amended in 2015 the definition of terrorism has changed. As *defined in Section 102(1) of the Act*: The term "act of terrorism" means any act that is certified by the Secretary of the Treasury—in consultation with the Secretary of Homeland Security, and the Attorney General of the United States—to be an act of terrorism; to be a violent act or an act that is dangerous to human life, property, or infrastructure; to have resulted in damage within the United States, or outside the United States in the case of an air carrier or vessel or the premises of a United States mission; and to have been committed by an individual or individuals as part of an effort to coerce the civilian population of the United States or to influence the policy or affect the conduct of the United States Government by coercion.

Under the Act, any losses resulting from certified acts of terrorism may be partially reimbursed by the United States Government under a formula established by the Terrorism Risk Insurance Act as amended. However, your policy may contain other exclusions which might affect your coverage, such as an exclusion for nuclear events. The Act requires Evanston Insurance Company to also notify you that Terrorism Coverage required to be offered by the Act for losses caused by certified acts of terrorism is partially reimbursed by the United States Government under a formula established by federal law. Under this formula, the United States Government generally reimburses 85% through 2015; 84% beginning on January 1, 2016; 83% beginning on January 1, 2017; 82% beginning on January 1, 2018; 81% beginning on January 1, 2019 and 80% beginning on January 1, 2020 of covered terrorism losses exceeding the statutorily established deductible paid by the insurance company providing the coverage. The Terrorism Risk Insurance Act as amended, contains a $100 billion cap that limits United States Government reimbursement as well as insurers' liability for losses resulting from certified acts of terrorism when the amount of such losses exceeds $100 billion in any one calendar year. If the aggregate insured losses for all insurers exceed $100 billion, your coverage may be reduced.

Nothing in this notice affects or modifies your coverage except and only to the extent specifically required by the Act.

When the above captioned policy was quoted, you were offered this Terrorism Coverage for a premium equal to a 3% surcharge of the total policy premium. If you elected to purchase this insurance coverage your policy premium includes a 3% surcharge, and does not include any charge for the portion of losses covered by the United States government under the Act.


**MARKEL®**

# EVANSTON INSURANCE COMPANY

# DECLARATIONS
# GENERAL LIABILITY (INCLUDING PRODUCTS/COMPLETED OPERATIONS LIABILITY) INSURANCE POLICY

**Claims Made Coverage:** The coverage afforded by this policy is limited to liability for only those Claims that are first made against the Insured during the Policy Period or the Extended Reporting Period, if exercised, and reported in writing to the Company pursuant to the terms herein.

**Notice:** This is a duty to defend policy. Additionally, this policy contains provisions that reduce the limits of liability stated in the policy by the costs of legal defense and permit legal defense costs to be applied against the deductible, unless the policy is amended by endorsement. Please read the policy carefully.

POLICY NUMBER: SP884506                    RENEWAL OF POLICY: NEW

1.    **NAMED INSURED:**  VITAMIN ENERGY, LLC

2.    **BUSINESS ADDRESS:**
                         391 WILMINGTON WEST CHESTER PIKE SUITE 3
                         GLEN MILLS, PA  19342

3.    **POLICY PERIOD:**  From 07/23/2018 to 07/23/2019
                         12:01 A.M. Standard Time at address of Insured stated above.

## IN RETURN FOR THE PAYMENT OF THE PREMIUM, AND SUBJECT TO ALL THE TERMS OF THIS POLICY, THE COMPANY AGREES WITH THE NAMED INSURED TO PROVIDE THE INSURANCE AS STATED IN THIS POLICY.

4.    **LIMITS OF LIABILITY:**

    A.  For Coverage A (Bodily Injury and Property Damage Liability):

        (i)   Each Occurrence:                                    $ 1,000,000

        (ii)  Damage to Premises – Any One Premises:              $    100,000

    B.  For Coverage B (Personal Injury and Advertising Injury Liability):

        Each Person or Organization:                           $ 1,000,000

    C.  Policy Aggregate:                                       $ 2,000,000

5.    **DEDUCTIBLES:**

    A.  For Coverage A (Bodily Injury and Property Damage Liability):

        Each Occurrence:                                       $         0

    B.  For Coverage B (Personal Injury and Advertising Injury Liability):

        Each Person or Organization:                           $         0

| Producer Number, Name and Address |
|---|
| 03250 |
| Worldwide Facilities, LLC - L.A. |
| 725 S. Figueroa St., 19th floor |
| Los Angeles, CA  90017 |

6. **SPECIFIED PRODUCTS, GOODS, OPERATIONS AND PREMISES COVERED:**

   Supplements; all related premises and operations of the Insured

7. **RETROACTIVE DATE:** 07/23/2018

8. **RATE:** Flat

9. **PREMIUM FOR POLICY PERIOD:**

   | | | |
   |---|---|---|
   | Minimum | $ | 1,995.00 |
   | Deposit | $ | 1,995.00 |

10. **PREMIUM FOR EXTENDED REPORTING PERIOD:** 100% for 12 months; 150% for 24 months; or 200% for 36 months

11. **ENDORSEMENTS ATTACHED AT POLICY INCEPTION:**

    See MDIL 1001 08 10 attached

12. **NOTICES:**

    **CLAIM NOTICES:**

    Claims Service Center
    MARKEL SERVICE, INCORPORATED
    Ten Parkway North
    Deerfield, Illinois 60015

    Fax: (855) 662-7535
    E-mail: newclaims@markelcorp.com

    **ALL OTHER NOTICES:**

    Markel West Insurance Services,
    a division of Markel Service, Incorporated
    (#0D95581)
    21600 Oxnard Street, Suite 900
    Woodland Hills, CA  91367-4800
    Telephone: (818) 595-0600
    Fax: (866) 730-2529

**These declarations, together with the Policy, any Endorsement(s) and any application(s) complete the above numbered policy.**

| Countersigned: 7/24/2018 | |
|---|---|
| (Date) | By: |

PA Surplus Lines Taxes & Fees

| | | |
|---|---|---|
| Premium: | $ | 1,995.00 |
| 3% State Tax: | $ | 59.85 |
| FLAT Stamp Fee: | $ | 20.00 |
| Broker Fee: | $ | 250.00 |

**The Insurer with which the Licensee places the insurance is not licensed by the Pennsylvania Insurance Department, and is subject to its limited regulation; and in the event of insolvency of an eligible surplus lines insurer, losses will not be paid by the Pennsylvania Property and Casualty Insurance Guaranty Association."**
Worldwide Facilities, LLC - License #483776

## Markel's Designed Protection®
## Risk Management Resources Specified Products Liability

<u>Welcome</u> to Markel's Designed Protection® leading edge Risk Management Resources.

The following risk management resources are available exclusively to our policyholders at our website www.markelcorp.com/riskmanagement at *no additional cost*.

**HOW TO QUICKLY ACCESS RISK MANAGEMENT RESOURCES:**

<u>Step 1.</u>    Go onto our website, www.markelcorp.com/riskmanagement.

<u>Step 2.</u>    Select the Designed Protection services that apply to your policy, to get to the Login screen.

<u>Step 3.</u>    Review the disclaimer, enter your current policy number and click on the button below to access. Your policy number is SP884506.

If you need technical assistance during the log in process, call (866) 932-2433, x113719.

**Available Risk Management Resources include:**

**Designed Protection® Risk Management Telephone Hotline for Specified Products Liability**
This confidential telephone hotline is staffed by a nationally respected panel of experienced Products Liability defense lawyers that are available to answer general risk management questions.

- **Top 10 Tips for Reducing Risk of Product Liability**

Please check our website regularly as additional resources are added throughout the year.

01/11



**MARKEL**®

INTERLINE
**POLICY NUMBER:** SP884506

# EVANSTON INSURANCE COMPANY

## FORMS SCHEDULE

| <u>FORM NUMBER</u> | <u>FORM NAME</u> |
|---|---|
| MJIL 1000 06 10 | Policy Jacket |
| IL 09 10 07 02 | Pennsylvania Notice |
| MIL 1214 09 17 | Trade Or Economic Sanctions |
| MPIL 1007 03 14 | Privacy Notice |
| MPIL 1083 04 15 | US Treasury Dept's Office Of Foreign Assets Control ("OFAC") Policyholder Notice |
| ZZ-50000-03 01 15 | Policyholder Disclosure Notice Of Terrorism Insurance Coverage |
| PD-12000-01 03 04 | Declarations General Liability (Including Products/Completed Operations Liability) Insurance Policy |
| MDIL 1001 08 10 | Forms Schedule |
| PD-22000-02 06 04 | General Liability (Including Products And Completed Operations Liability) Insurance Policy |
| EIC 3022-01 3 04 | Amendment of Territory - Worldwide Coverage |
| EIC 4115-01 2 03 | 25% Minimum Earned Premium Endorsement |
| EIC 4568 01 06 | Exclusion of Known Claims/Incidents |
| EIC 832-01 10 02 | Asbestos Exclusion |
| MEGL 1662 05 15 | Exclusion - Unmanned Aircraft |
| MEGL 2204 10 17 | Elite Nutra Enhancement |
| MEIL 1313 02 12 | Amendment Of Definition & Excl-Electronic Data & Distribution Of Materials In Violation Of Statutes |
| MEIL 1317 01 16 | Exclusion - Designated Ingredients |
| MEIL 1321 02 13 | Banned Substances Exclusion |
| ZZ-44002-01 | Mold Exclusion |
| ZZ-44003-03 01 15 | Certified Acts Of Terrorism Exclusion |



# EVANSTON INSURANCE COMPANY

## GENERAL LIABILITY (INCLUDING PRODUCTS AND COMPLETED OPERATIONS LIABILITY) INSURANCE POLICY

THIS IS A CLAIMS MADE POLICY. PLEASE READ IT CAREFULLY.

In consideration of the premium paid, and in reliance upon the underwriting information submitted on behalf of the Insured, the Company and the Insured agree as follows:

Throughout this policy, the term Company refers to the insurance company providing this insurance.

## THE INSURED

The unqualified word "Insured", either in the singular or plural, means:

A.  the Named Insured named in Item 1. of the Declarations;

B.  if the Named Insured named in the Declarations is an individual, the person so named and his/her lawful spouse, but only with respect to his/her conduct of business as a sole proprietor;

C.  if the Named Insured named in the Declarations is a partnership or joint venture, the partnership or joint venture so named and any partner or member thereof or his/her lawful spouse, but only with respect to the conduct of the partnership or joint venture business;

D.  if the Named Insured named in the Declarations is a limited liability company, the limited liability company so named, any manager thereof, but only with respect to their duties as manager of the limited liability company and any member thereof, but only with respect to the conduct of the business of the limited liability company;

E.  if the Named Insured named in the Declarations is other than an individual, partnership, joint venture or limited liability company, the organization so designated and any executive officer or director thereof, but only with respect to his/her duties as an executive officer or director of such organization;

F.  any person (other than an employee of the Named Insured) or organization while acting as real estate manager for the Named Insured;

G.  any employee of the Named Insured, other than the executive officers of the Named Insured if the Named Insured is an organization other than a partnership, joint venture or limited liability company or managers of the Named Insured if the Named Insured is a limited liability company, solely while acting within the scope of his/her duties as such;

provided, however, that coverage afforded to such employee does not apply to:

1.  Bodily Injury, Personal Injury or Advertising Injury:

    (i)   to the Named Insured, the Named Insured's partners, the Named Insured's members or to a co-employee while in the course of his/her employment or performing duties related to the conduct of the Named Insured's business;

    (ii)  to the spouse, child, parent, brother or sister of that co-employee as a consequence of subparagraph 1.(i) hereinabove;

    (iii) for which there is any obligation to share Damages with or repay someone else who must pay Damages because of the injury described in subparagraphs 1.(i) and (ii) hereinabove; or

    (iv)  arising out of his/her providing or failure to provide professional health care services, if the Named Insured is engaged  in the business or occupation of providing professional health care services;

2.  Property Damage to property:

    (i)   owned, occupied or used by; or

    (ii)  rented to, in the care, custody or control of, or over which physical control is being exercised for any purpose by;

the Named Insured, any employee of the Named Insured or any partner or member;

H.    with respect to the operation, for the purpose of locomotion upon a public highway, of Mobile Equipment registered in the name of the Named Insured under any motor vehicle registration law:

    1.    an employee of the Named Insured while operating any such equipment in the course of his/her employment by the Named Insured; or

    2.    any other person while operating with the permission of the Named Insured any such equipment and any person or organization legally responsible for such person but only with respect to liability arising out of such operation, but only if there is no other valid and collectible insurance available, either on a primary or excess basis, to such person or organization;

provided, however, that no person or organization shall be an Insured under this paragraph H. with respect to:

    (i)  Bodily Injury to any co-employee of such person operating any such equipment; or

    (ii)  Property Damage to property owned by, rented to, in the charge of or occupied by the Named Insured or the employer of any person described in subparagraph 2. hereinabove;

I.    any organization which is acquired or formed by the Named Insured, other than a partnership, joint venture or limited liability company, and over which the Named Insured maintains majority ownership, will qualify as a Named Insured if there is no other similar insurance available to that organization;

provided, however that:

    1.    coverage under this provision is afforded only for ninety (90) days from the date the Named Insured acquires or forms such organization, or the end of the Policy Period, whichever is earlier;

    2.    Coverage A. does not apply to Bodily Injury or Property Damage that occurred before the Named Insured acquired or formed the organization; and

    3.    Coverage B. does not apply to Personal Injury or Advertising Injury arising out of an offense committed before the Named Insured acquired or formed the organization;

J.    the heirs, executors, administrators, assigns and legal representatives of each Insured in the event of death, incapacity or bankruptcy of such Insured, but only while acting within the scope of their duties as such on behalf of the Named Insured or of the Insured's estate.

This policy does not apply to Bodily Injury, Property Damage, Personal Injury or Advertising Injury arising out of the conduct of any partnership, joint venture or limited liability company which is not named in the Declarations as a Named Insured.

## INSURING AGREEMENTS

A.    **Coverage A. - Bodily Injury and Property Damage Liability:** The Company shall pay on behalf of the Insured all sums in excess of the Deductible amount stated in Item 5. of the Declarations, which the Insured shall become legally obligated to pay as Damages as a result of Claims first made against the Insured during the Policy Period or during the Extended Reporting Period, if exercised, and reported to the Company pursuant to Section Claims A., Claim Reporting Provision, for Bodily Injury or Property Damage to which this insurance applies caused by an Occurrence, provided:

    1.    the entirety of such Bodily Injury or Property Damage and Occurrence happens during the Policy Period or on or after the Retroactive Date stated in Item 7. of the Declarations; and

    2.    such Bodily Injury or Property Damage arises out of only those products, goods, operations or premises specified in Item 6. of the Declarations.

B.    **Coverage B. - Personal Injury and Advertising Injury Liability:** The Company shall pay on behalf of the Insured all sums in excess of the Deductible amount stated in Item 5. of the Declarations, which the Insured shall become legally obligated to pay as Damages as a result of Claims first made against the Insured during the Policy Period or during the Extended Reporting Period, if exercised, and reported to the Company pursuant to Section Claims A., Claim Reporting Provision, for Personal Injury or Advertising Injury to which this insurance applies caused by an offense, provided:

    1.    the entirety of such Personal Injury or Advertising Injury and offense happens during the Policy Period or on or after the Retroactive Date stated in Item 7. of the Declarations; and

2.  such Personal Injury or Adverting Injury arises out of only those products, goods, operations or premises specified in Item 6. of the Declarations.

## DEFINITIONS

A.  **Advertisement** means a commercial communication, including communications that are published material placed on the Internet or on similar electronic means of communication, that is broadcast or published about the products, goods or operations of the Named Insured for the purpose of promoting the sale or use of such products, goods or operations; provided, however, only that part of a website that is about the products, goods or operations of the Named Insured for the purposes of promoting such products, goods or operations is considered an Advertisement.

B.  **Advertising Injury** means injury, including consequential Bodily Injury, arising out of oral or written publication of material that libels or slanders a person or organization or a person's or organization's products, goods or operations or other defamatory or disparaging material, occurring in the course of the Named Insured's Advertisement.

C.  **Aircraft Products** means any aircraft whether or not heavier than air (including spacecraft and missiles) and any ground support, guidance, control or communications equipment used in connection therewith, and also includes parts, supplies, or equipment installed in or on or used in connection with aircraft, including tools, training aids, instructions, manuals, blueprints and other data, engineering and other advice, services and labor used in the operation, maintenance or manufacture of aircraft products.

D.  **Automobile** means a land motor vehicle, trailer or semitrailer designed for travel on public roads (including any attached machinery or equipment); provided, however, it does not include Mobile Equipment.

E.  **Bodily Injury** means bodily injury, sickness or disease sustained by a person, including death resulting from any of these at any time.

Bodily Injury shall also mean Incidental Medical Malpractice Injury, provided that the Named Insured is not engaged in the business or occupation of providing professional health care services.

F.  **Claim** means a notice received by the Insured of an intention to hold the Insured responsible for: (1) a Bodily Injury; (2) a Property Damage; (3) an Advertising Injury; or (4) a Personal Injury; involving this policy and shall include the service of suit or institution of arbitration proceedings against the Insured.

G.  **Claim Expenses** means reasonable and necessary amounts incurred by the Company or by the Insured with the prior written consent of the Company in the defense of that portion of any Claim for which coverage is afforded under this policy, including costs of investigation, court costs, costs of bonds to release attachments and similar bonds, but without any obligation of the Company to apply for or furnish any such bonds, and costs of appeals; provided, however, that Claim Expenses shall not include: (1) salary, wages, overhead, or benefit expenses of or associated with employees or officials of the Named Insured or employees or officials of the Company; or (2) salary, wages, administration, overhead, benefit expenses, or charges of any kind attributable to any in-house counsel or captive out-of-house counsel for the Named Insured or the Company.

Solely for the purposes of liability assumed in an Insured Contract, Claim Expenses incurred by or for a party other than an Insured are deemed to be Damages because of Bodily Injury or Property Damage; provided, however, that:

1.  liability to such party for, or the cost of, that party's defense has also been assumed in the same Insured Contract; and

2.  such Claim Expenses are for the defense of that party against a civil or alternative dispute resolution proceeding in which Damages to which this insurance applies are alleged.

H.  **Completed Operations Hazard** means Bodily Injury and Property Damage arising out of only those operations specified in Item 6. of the Declarations, after such operations have been completed or abandoned by the Insured and occurs away from premises owned by or rented to the Named Insured. Operations includes materials, parts or equipment furnished in connection therewith, warranties or representations made at any time with respect to the fitness, quality, durability, performance or use of those products, goods and operations specified in Item 6. of the Declarations and the providing or failure to provide instructions related thereto. Operations shall be deemed completed at the earliest of the following times:

1.  when all operations to be performed by or on behalf of the Insured under a contract with the Insured have been completed;

2.  when all operations to be performed by or on behalf of the Insured at the site of the operations have been completed; or

3.   when the portion of the work out of which the injury or damage arises has been put to its intended use by any person or organization other than another contractor or sub-contractor engaged in performing operations for a principal as a part of the same project.

Operations which may require further service or maintenance work, or correction, repair or replacement, but which are otherwise complete, shall be deemed complete.

The Completed Operations Hazard does not include Bodily Injury or Property Damage arising out of:

1.   operations in connection with the transportation of property, unless the Bodily Injury or Property Damage arises out of a condition in or on a vehicle not owned or operated by the Named Insured created by the loading or unloading thereof; or

2.   the existence of tools, uninstalled equipment or abandoned or unused materials.

I.   **Damages** means the monetary portion of any judgment, award or settlement; provided, however, that Damages shall not include: (1) multiplied portions of damages in excess of actual damages, including trebling of damages; (2) taxes, criminal or civil fines, or penalties imposed by law; (3) sanctions; (4) matters which are uninsurable under the law pursuant to which this policy shall be construed; or (5) the return of or restitution of fees, profits or charges for services rendered.

J.   **Gross Receipts** means Sales and other income, exclusive of deductions, from any other source, insofar as the Sales or other income relate to or emanate from sale of products or goods or operations specified in Item 6. of the Declarations performed during the Policy Period by or on behalf of the Insured.

K.   **Grounding** means the withdrawal of one or more aircraft from flight operations or the imposition of speed, passenger or load restrictions on such aircraft because of the existence of or alleged existence of a defect, fault or condition in any Aircraft Products.

L.   **Incidental Medical Malpractice Injury** means Bodily Injury arising out of the rendering of or failure to render, during the Policy Period or on or after the Retroactive Date stated in Item 7. of the Declarations, the following services:

1.   medical, surgical, dental, x-ray or nursing service or treatment or the furnishing of food or beverages in connection therewith; or

2.   the furnishing or dispensing of drugs or medical, dental or surgical supplies or appliances.

M.   **Insured Contract** means:

1.   a contract for lease of premises; provided, however, that the portion of the contract for a lease of premises that indemnifies any person or organization for damage by fire to premises while rented to the Insured or temporarily occupied by the Insured with the permission of the owner shall not be an Insured Contract;

2.   any easement or license, except in connection with construction or demolition operations on or within fifty (50) feet of a railroad;

3.   an obligation, as required by municipal ordinance, to indemnify a municipality, except in connection with work for the municipality;

4.   a sidetrack agreement;

5.   an elevator maintenance agreement; or

6.   that part of any other contract or agreement pertaining to the Named Insured's business under which the Named Insured assumes the tort liability of another party to pay for Bodily Injury or Property Damage to a third party; provided, however, Insured Contact shall not include that part of any contract or agreement:

(i)    that indemnifies a railroad for Bodily Injury or Property Damage arising out of construction or demolition operations, within fifty (50) feet of any railroad property and affecting any railroad bridge or trestle, tracks, roadbeds, tunnel, underpass or crossing;

(ii)   that indemnifies an architect, engineer or surveyor for injury or damage arising out of:

(a)   preparing, approving, or failing to prepare or approve, maps, shop drawings, opinions, reports, surveys, field orders, change orders or designs or specifications; or

(b)   supervision, inspection, failure to supervise or inspect or architectural, engineering or surveying services; or

(iii)  under which the Insured, if an architect, engineer or surveyor, assumes liability for an injury or damage arising

out of the Insured's rendering or failure to render professional services, including those listed in subparagraph (ii) hereinabove or any supervision, inspection, failure to supervise or inspect or architectural, engineering or survey services.

N.   **Mobile Equipment** means any of the following types of land vehicles, including any attached machinery or equipment:

1.   bulldozers, farm machinery, forklifts and other vehicles designed for use principally off public roads;

2.   vehicles maintained for use solely on or next to premises the Named Insured owns or rents;

3.   vehicles that travel on crawler treads;

4.   vehicles, whether self-propelled or not, on which are permanently mounted:

   (i)   power cranes, shovels, loaders, diggers, or drills; or

   (ii)  road construction or resurfacing equipment such as graders, scrapers or rollers;

5.   vehicles not described in 1., 2., 3., or 4. above that are not self-propelled and are maintained primarily to provide mobility to permanently attached equipment of the following types:

   (i)   air compressors, pumps and generators, including spraying, welding, building cleaning, geophysical exploration, lighting and well servicing equipment; or

   (ii)  cherry pickers and similar devices used to raise or lower workers;

6.   vehicles not described in 1., 2., 3., or 4. above maintained primarily for purposes other than the transportation of persons or cargo; provided, however, that self-propelled vehicles with the following types of permanently attached equipment are not Mobile Equipment but will be considered Automobiles:

   (i)   equipment designed primarily for:

      (a)  snow removal;

      (b)  road maintenance, but not construction or resurfacing; or

      (c)  street cleaning;

   (ii)  cherry pickers and similar devices mounted on Automobile or truck chassis and used to raise or lower workers; and

   (iii) air compressors, pumps and generators, including spraying, welding, building cleaning, geophysical exploration, lighting and well servicing equipment.

O.   **Named Insured's Products** means goods or products, other than real property, manufactured, sold, handled or distributed by the Named Insured or by others trading under the Named Insured's name, including any container thereof (other than a vehicle); provided, however, that Named Insured's Products shall not include a vending machine or any other property rented to or located for use of others but not sold.

P.   **Occurrence** means an accident, including continuous or repeated exposure to substantially the same general harmful conditions.

Q.   **Personal Injury** means injury, including consequential Bodily Injury, arising out of one or more of the following offenses:

1.   false arrest, detention or imprisonment or malicious prosecution;

2.   wrongful eviction from, wrongful entry into, or invasion of the right of private occupancy of a room, dwelling or premises that a person occupies, committed by or on behalf of its owner, landlord, or lessor; or

3.   oral or written publication of material that violates a person's right of privacy.

R.   **Policy Period** means the period from the inception date of this policy to the policy expiration date as stated in Item 3. of the Declarations, or its earlier cancellation or termination date.

S.   **Products Hazard** means Bodily Injury or Property Damage arising out of only those products or goods specified in Item 6. of the Declarations which are the Named Insured's Products, including warranties or representations made at any time with respect to the fitness, quality, durability, performance or use of those products or goods specified in Item 6. of the Declarations and the providing or failure to provide instructions related thereto, occurring away from premises owned by or rented to the Named Insured and after physical possession of such products has been relinquished to others.

T.  **Property Damage** means:

1.  physical injury to or destruction of tangible property, including consequential loss of use thereof; or

2.  loss of use of tangible property which has not been physically injured or destroyed; provided, however, such loss of use is caused by an Occurrence.

U.  **Sales** means the gross amount of money charged by the Named Insured or by others trading under such Named Insured's name for all goods and products sold or distributed during the Policy Period and charged during the Policy Period for installation, servicing or repair, and includes taxes, other than taxes which the Named Insured and such others collect as a separate item and remit directly to a governmental division.

## THE EXCLUSIONS

A.  With respect to all Coverages, this policy does not apply to:

1.  any Claim based upon or arising out of:

    (i)  the actual, alleged or threatened discharge, disposal, migration, dispersal, seepage, release or escape of Pollutants; provided, however, this subparagraph shall not apply with respect to:

        (a)  the Products Hazard or Completed Operations Hazard; or

        (b)  damage, arising out of heat, smoke or fumes from hostile fire at or from any premises, site or location which is or was at any time owned or occupied by, or rented or loaned to any Insured.

    (ii)  Bodily Injury or Property Damage arising out the actual, alleged or threatened discharge, disposal, migration, dispersal, seepage, release or escape of Pollutants:

        (a)  at or from any premises, site or location which is or was at any time used by or for any Insured or others for the handling, storage, disposal, processing or treatment of waste;

        (b)  which are or were at any time transported, handled, stored, treated, disposed of, or processed as waste by or for any Insured or any person or organization for whom the Insured may be legally responsible; or

    (iii)  any demand, request, direction, order or statutory or regulatory requirement to test for, monitor, remediate, clean up, remove, contain, treat, detoxify or neutralize Pollutants, or in any way respond to or assess the effects of Pollutants or to pay for or contribute to the costs of undertaking such actions; provided, however, this subparagraph shall not apply to liability for Damages because of Property Damage that the Insured would have in the absence of such demand, request, direction, order or statutory or regulatory requirement.

    Pollutants means any solid, liquid, gaseous or thermal irritants or contaminants including, smoke, vapors, soot, fumes, acids, alkalis, chemicals and waste. Waste includes materials to be recycled, reconditioned or reclaimed;

2.  any Claim based upon or arising out of the rendering of or failure to render professional services by the Insured or by any person or organization for whose acts, errors or omissions the Insured is legally responsible; provided, however, this exclusion shall not apply to Incidental Medical Malpractice Injury;

3.  any Claim based upon or arising out of the Insured's activities as a fiduciary under the Employee Retirement Income Security Act of 1974 and its amendments or any regulation or order issued pursuant thereto; or

4.  any Claim based upon or arising out of any unlawful discrimination by any Insured.

B.  With respect to Coverage A., this policy does not apply to:

1.  any Claim based upon or arising out of Bodily Injury or Property Damage expected or intended from the standpoint of the Insured; provided, however, this exclusion does not apply to Bodily Injury resulting from the use of reasonable force to protect persons or property;

2.  any Claim based upon or arising out of Bodily Injury or Property Damage for which the Insured is obligated to pay Damages because of the assumption of liability in any contract or agreement; provided, however, this exclusion shall not apply to liability for damages:

    (i)  that the Insured would have in the absence of the contract or agreement; or

    (ii)  assumed in a contract or agreement that is an Insured Contract, provided, the Bodily Injury and Property Damage occurs subsequent to the execution of the Insured Contract;

3. any Claim based upon or arising out of loss of use of tangible property which has not been physically injured or destroyed resulting from:

   (i) a delay in or lack of performance by or on behalf of the Named Insured of any contract or agreement; or

   (ii) a defect, deficiency, inadequacy or dangerous condition in the products, goods or operations of the Named Insured;

   provided, however, this exclusion does not apply to loss of use of other tangible property resulting from the sudden and accidental physical injury to or destruction of the Named Insured's Products or work performed by or on behalf of the Named Insured after such products or work have been put to use by any person or organization other than an Insured;

4. any Claim based upon or arising out of Property Damage to the Named Insured's Products arising out of it or any part of it, or for the cost of inspecting, repairing or replacing any defective or allegedly defective product or part thereof or for loss of use of any defective or allegedly defective product;

5. any Claim for Damages for any loss, cost or expense incurred by the Named Insured or others for the loss of use, withdrawal, recall, inspection, repair, replacement, adjustment, removal or disposal of the Named Insured's Products or work completed by or for the Named Insured or of any property of which such products or work form a part, if such products, work or property are withdrawn from the market or from use because of any known or suspected defect, deficiency, inadequacy or dangerous condition therein;

6. any Claim based upon or arising out of Bodily Injury or Property Damage arising out of ownership, maintenance, operation, use or entrustment to others or loading or unloading of:

   (i) any Automobile, aircraft or watercraft owned or operated by or rented or loaned to any Insured; or

   (ii) any other Automobile, aircraft or watercraft operated by any person in the course of his/her employment by the Named Insured;

   provided, however, this exclusion shall not apply to:

   (a) the parking of an Automobile on premises owned by, rented to or controlled by the Named Insured or on ways next to such premises, if such Automobile is not owned by or rented or loaned to any Insured;

   (b) a watercraft while ashore on premises owned by, rented to or controlled by the Named Insured; or

   (c) a watercraft that is less than twenty-six (26) feet in length, that is not owned by the Named Insured and that is not being used to carry persons or property for a charge;

7. any Claim based upon or arising out of Bodily Injury or Property Damage arising out of:

   (i) the ownership, maintenance, operation, use, loading or unloading of any Mobile Equipment while being used in any prearranged or organized racing, speed or demolition contest or in any stunting activity or in practice or preparation for such contest or activity; or

   (ii) the operation or use of any snowmobile, moped or motorized bicycle, or trailer designed for use therewith;

8. any Claim based upon or arising out of Bodily Injury or Property Damage arising out of the transportation of Mobile Equipment by an Automobile owned or operated by or rented or loaned to any Insured;

9. any Claim based upon or arising out of Property Damage to:

   (i) property owned, occupied or rented to the Insured;

   (ii) property loaned to the Insured;

   (iii) personal property in the care, custody or control of the Insured;

   (iv) that particular part of any property,

      (a) upon which operations are being performed by or on behalf of the Insured if the Property Damage arises out of those operations; or

      (b) the restoration, repair or replacement of which has been made or is necessary because of faulty workmanship thereon by or on behalf of the Insured; provided, however, this subparagraph shall not apply with respect to Property Damage included in the Completed Operations Hazard or the Products Hazard;

    (v) premises that the Named Insured sells, gives away or abandons, if the Property Damage arises out of any part of those premises; provided, however, this subparagraph shall not apply if the premises are included in the Completed Operations Hazard and were never occupied, rented or held for rental by the Named Insured; or

    (vi) to work performed by the Insured arising out of such work or any portion thereof, or out of such materials, parts or equipment furnished in connection therewith with respect to the Completed Operations Hazard;

    provided, however, Items (ii), (iii), and (iv) of this exclusion shall not apply with respect to liability under a written sidetrack agreement;

10. any Claim based upon or arising out of any obligation of the Insured under any workers' compensation, unemployment compensation or disability benefits law or under any similar law;

11. any Claim based upon or arising out of Bodily Injury to any employee of the Insured arising out of and in the course of employment by the Insured or performing duties related to conduct of the Insured's business or any such Claim brought by or on behalf of the spouse, child, parent, brother, sister or partner of the employee;

    this exclusion shall apply:

    (i) whether the Insured may be liable as an employer or in any other capacity; and

    (ii) to any obligation to share damages with or repay someone else who must pay damages because of injury;

    provided, however, that this exclusion shall not apply with respect to liability assumed by the Insured under an Insured Contract;

12. any Claim based upon or arising out of Bodily Injury or Property Damage for which the Insured may be held liable because of:

    (i) causing or contributing to the intoxication of any person;

    (ii) the furnishing of alcoholic beverages to a person under legal drinking age or under the influence of alcohol; or

    (iii) any statute, ordinance or regulation relating to the sale, gift, distribution or use of alcoholic beverages;

    provided, however, this exclusion shall apply only if the Named Insured:

    (a) manufactures or distributes alcoholic beverages;

    (b) serves or furnishes alcoholic beverages for a charge whether or not such activity requires a license, is for financial gain or livelihood; or

    (c) serves or furnishes alcoholic beverages without a charge if a license is required for such activity;

13. any Claim based upon or arising out of Bodily Injury or Property Damage due to war, whether or not declared, civil war, insurrection, rebellion or revolution or to any act or condition incident to any of the foregoing with respect to liability assumed by the Insured under an Insured Contract;

14. any Claim based upon or arising out of Aircraft Products including consequential loss of use thereof resulting from Grounding;

15. any Claim based upon or arising out of any products or goods manufactured, sold, handled, or distributed or work completed by the Insured or by others operating under the direction or control of the Insured in violation of any law, statute, ordinance, or regulation, Federal, State or Municipal government, or agencies thereof;

16. any Claim for Bodily Injury arising out of Personal Injury or Advertising Injury;

17. any Claim for Incidental Medical Malpractice Injury for any expenses incurred by the Insured for first aid to others at the time of an accident; or

18. any Claim for Incidental Medical Malpractice Injury caused by an indemnitee if such indemnitee is engaged in the business or occupation of providing any of the following services:

    (a) medical, surgical, dental x-ray or nursing service or treatment or the furnishing of food or beverages in connection therewith; or

    (b) the furnishing or dispensing of drugs or medical, dental or surgical supplies or appliances.

Exclusions 3. through 16. shall not apply to damage by fire to premises while rented by the Named Insured or temporarily occupied by the Named Insured with the permission of the owner of the premises. A Limit of Liability applies to this coverage as described in Section Limits of Liability, Coverage A. - Limit of Liability - Damage to Premises.

C.    With respect to Coverage B., this policy does not apply to:

1.    any Claim based upon or arising out of Personal Injury or Advertising Injury caused by or at the direction of the Insured with the knowledge that the act would violate the rights of another and would inflict Personal Injury or Advertising Injury;

2.    any Claim based upon or arising out of Personal Injury or Advertising Injury arising out of the oral or written publication of material, if done by or at the direction of the Insured with the knowledge of its falsity;

3.    any Claim based upon or arising out of Personal Injury or Advertising Injury arising out of oral or written publication of material whose first publication took place before the Retroactive Date stated in Item 7. of the Declarations;

4.    any Claim based upon or arising out of Personal Injury or Advertising Injury arising out of any criminal act committed by or at the direction of the Insured;

5.    any Claim based upon or arising out of Advertising Injury arising out of a mistake in advertised price or incorrect description of any product, good or operation;

6.    any Claim based upon or arising out of any liability assumed by the Insured in a contract or agreement; provided, however, this exclusion shall not apply to liability an Insured would have in the absence of the contract or agreement;

7.    any Claim based upon or arising out of Personal Injury or Advertising Injury arising out of piracy, unfair competition, the infringement of copyright, title, trade dress, slogan, service mark, service name or trademark, trade name, patent, trade secret or other intellectual property right;

8.    any Claim based upon or arising out of Personal Injury or Advertising Injury arising out of an electronic chatroom or bulletin board the Insured hosts, owns, or over which the Insured exercises control;

9.    any Advertising Injury committed by any Insured whose business is:

   (i)     advertising, broadcasting, publishing, or telecasting;

   (ii)    designing or determining content for websites for others; or

   (iii)   an Internet access, content search or service provider;

10.   any Claim based upon or arising out of a breach of contract; provided, however, this exclusion shall not apply to an implied contract to use another's advertising idea in the Named Insured's Advertisement; or

11.   any Claim based upon or arising out of the failure of products, goods or services to conform with any statement of quality or performance made in the Named Insured's Advertisement.

## TERRITORY

The insurance afforded by this policy applies worldwide, provided the Claim is made in the United States of America, its territories or possessions, Puerto Rico or Canada.

## LIMITS OF LIABILITY

A.    **Coverage A. - Limit of Liability-Each Occurrence:**  The total liability of the Company for the combined total of Damages and Claim Expenses for all Claims insured herein because of all Bodily Injury or Property Damage sustained by one or more persons or entities as the result of any one Occurrence shall not exceed the Limit of Liability stated in Item 4.A.(i) of the Declarations as applicable to Each Occurrence.

B.    **Coverage A. - Limit of Liability-Damage to Premises:**  The total liability of the Company for the combined total of Damages and Claim Expenses for all Claims, including those subject to the above provision regarding the Coverage A - Limit of Liability – Each Occurrence, insured herein because of Property Damage to any one premises while rented by the Named Insured or in the case of damage by fire, while rented by the Named Insured or temporarily occupied by the Named Insured with the permission of the owner of the premises, shall not exceed the Limit of Liability stated in Item 4.A.(ii) of the Declarations as applicable to Damage to Premises – Any One Premises.

C.   **Coverage B. - Limit of Liability-Each Person or Organization:** The total liability of the Company for the combined total of Damages and Claim Expenses for all Claims insured herein because of all Personal Injury and all Advertising Injury sustained by any one person or organization shall not exceed the Limit of Liability stated in Item 4.B. of the Declarations as applicable to Each Person or Organization.

D.   **Limit of Liability - Policy Aggregate:** Subject to the above Limits of Liability A, B and C, the total liability of the Company shall not exceed the Aggregate Limit of Liability as stated in Item 4.C. of the Declarations for all Damages and Claim Expenses arising out of all Claims first made during the Policy Period and the Extended Reporting Period, if exercised.

E.   **Deductible:** The applicable Deductible amount stated in Item 5. of the Declarations shall be paid by the Named Insured and shall be applicable to each Occurrence and to each person or organization and shall include Damages and Claim Expenses, whether or not Damages payments are made.

Such amounts shall, upon written demand by the Company, be paid by the Named Insured within ten (10) days. The total payments requested from the Named Insured in respect of each Occurrence or each person or organization shall not exceed the applicable Deductible amount stated in Item 5. of the Declarations. Solely for the purpose of determining the Company's limit of liability, the applicable Deductible amount shall be deemed to be applied first to the Damages.

The determination of the Company as to the reasonableness of the Claim Expenses shall be conclusive on the Named Insured.

F.   **Multiple Insureds, Claims and Claimants:** The inclusion herein of more than one Insured in any Claim or suit or the making of Claims or the bringing of suits by more than one person or organization shall not operate to increase the Limits of Liability stated in Item 4. of the Declarations. More than one Claim arising out of a single Occurrence or offense shall be considered a single Claim. All such Claims, whenever made, shall be treated as a single Claim. Such single Claim, whenever made, shall be deemed to be first made on the date on which the earliest Claim arising out of such Occurrence or offense is made or with regard to notice given to and accepted by the Company pursuant to Section Claims B., Discovery Clause, on the date within the Policy Period on which such notice of potential Claim is first received by the Company.

## DEFENSE, SETTLEMENTS AND CLAIM EXPENSES

The Company shall have the right and duty to defend and investigate any Claim to which coverage under this policy applies. The Company may make such investigation and settlement of any Claim as it deems expedient. Claim Expenses incurred in defending and investigating a Claim shall be a part of and shall not be in addition to the applicable Limits of Liability stated in Item 4. of the Declarations. Such Claim Expenses shall reduce the Limits of Liability and shall be applied against the applicable Deductible. The Company shall have no obligation to pay any Damages or to defend or to continue to defend any Claim or to pay Claim Expenses for Claims after the applicable Limit or Limits of Liability stated in Item 4. of the Declarations have been exhausted.

## CLAIMS

A.   **Claim Reporting Provision:** The Insured shall give to the Company written notice as soon as practicable of any Claim first made against the Insured during the Policy Period or the Extended Reporting Period, if exercised.

In the event suit is brought against the Insured, the Insured shall immediately forward to Markel Service, Incorporated, Ten Parkway North, Deerfield, Illinois, 60015, on behalf of the Company, every demand, notice, summons or other process received by him/her or by his/her representatives.

B.   **Discovery Clause:** If during the Policy Period, the Insured first becomes aware of a specific Occurrence or offense which is reasonably expected to result in a Claim within the scope of coverage of this policy, then the Insured may provide written notice to the Company containing the information listed below. If such written notice is received by the Company during the Policy Period, then any Claim subsequently made against the Insured arising out of such Occurrence or offense shall be deemed for the purpose of this insurance to have been made on the date on which such written notice is received by the Company.

It is a condition precedent to the coverage afforded by this Discovery Clause that written notice be given to the Company containing the following information:

1.   the description of the specific Occurrence or offense;

2.   the date on which such Occurrence or offense took place;

3.   the injury or damage which has or may result from such Occurrence or offense;

4.   the identity of any injured persons; and

5.    the circumstances by which the Insured first became aware of such Occurrence or offense.

C.   **Assistance and Cooperation of the Insured:** The Insured shall cooperate with the Company and upon the Company's request, the Insured shall: (1) submit to examination and interview by a representative of the Company, under oath if required; (2) attend hearings, depositions and trials; (3) assist in effecting settlement, securing and giving evidence, obtaining the attendance of witnesses in the conduct of suits; (4) give a written statement or statements to the Company's representatives and meet with such representatives for the purpose of determining coverage and investigating and/or defending any Claim, all without cost to the Company. The Insured shall further cooperate with the Company and do whatever is necessary to secure and effect any right of indemnity, contribution or apportionment which the Insured may have. The Insured shall not, except at his/her own cost, make any payment, admit any liability, settle any Claims, assume any obligation or incur any expense without the written consent of the Company.

D.   **False or Fraudulent Claims:** If any Insured shall commit fraud in proffering any Claim, this insurance shall become void as to such Insured from the date such fraudulent Claim is proffered.

# EXTENDED REPORTING PERIOD

A.   If the Named Insured nonrenews this policy or cancels this policy pursuant to Section Other Conditions A., or if the Company nonrenews this policy or cancels this policy pursuant to Section Other Conditions A., for reasons other than nonpayment of premium or Deductible or non-compliance with the terms and conditions of this policy, then the Named Insured shall have the right upon payment of an additional premium calculated at that percentage stated in Item 10. of the Declarations of the adjusted annual premium for the Policy Period, but in no event less than the percentage set forth in Item 10. of the Declarations of the minimum and deposit premium stated in the Declarations, to extend the coverage granted under this policy, to Claims first made against the Insureds during: (1) twelve (12) months; (2) twenty-four (24) months; or (3) thirty-six (36) months; as elected by the Named Insured, and reported to the Company pursuant to Section Claims A., Claim Reporting Provision, following immediately upon the effective date of such cancellation or nonrenewal, for:

1.    Bodily Injury or Property Damage which happened on or after the Retroactive Date and prior to the effective date of such cancellation or nonrenewal, caused by an Occurrence which happened on or after the Retroactive Date and prior to the effective date of such cancellation or nonrenewal and arising from those products, goods, operations or premises specified in Item 6. of the Declarations and which is otherwise covered by this policy; or

2.    Personal Injury or Advertising Injury which happened on or after the Retroactive Date and prior to the effective date of such cancellation or nonrenewal, caused by an offense which happened on or after the Retroactive Date and prior to the effective date of such cancellation or nonrenewal and arising from those products, goods, operations or premises specified in Item 6. of the Declarations and which is otherwise covered by this policy.

This period of months as elected by the Named Insured and described in this paragraph shall be referred to in this policy as the Extended Reporting Period.

If, however, this policy is immediately succeeded by similar claims made insurance coverage on which the Retroactive Date is the same as or earlier than that stated in the Item 7. of the Declarations, the succeeding insurance shall be deemed to be a renewal hereof and, in consequence, the Named Insured shall have no right to purchase an Extended Reporting Period.

The quotation of a different premium and/or Deductible and/or Limit of Liability for renewal does not constitute a cancellation or refusal to renew for the purpose of this provision.

B.   As a condition precedent to the right to purchase the Extended Reporting Period, the Named Insured must have paid: 1) all Deductibles when due; (2) all premiums due for the Policy Period in accordance with Section Other Conditions I., Premium and Audit; and (3) all premium due on any other policy(ies) issued by the Company or any of its affiliated companies in an uninterrupted series of policies of which this policy is a renewal or replacement must have been paid. The right to purchase the Extended Reporting Period shall terminate unless a written request for the Extended Reporting Period is received by the Company within thirty (30) days after the effective date of cancellation or nonrenewal together with full payment for the Extended Reporting Period. If such written request and premium payment are not so received by the Company, there shall be no right to purchase the Extended Reporting Period at a later date.

C.   In the event of the purchase of the Extended Reporting Period the entire premium therefor shall be fully earned at its commencement.

D.   The Extended Reporting Period shall not in any way increase the Limits of Liability stated in Item 4. of the Declarations.

## OTHER CONDITIONS

A. **Cancellation:** This policy may be cancelled by the Named Insured on behalf of all Insureds by mailing to the Company written notice stating when thereafter such cancellation shall be effective. If cancelled by the Named Insured, the earned premium shall be computed at the customary short rate. Payment or tender of unearned premium shall not be a condition precedent to the effectiveness of cancellation, but such payment shall be made as soon as practicable.

This policy may be cancelled by the Company or by its underwriting manager, on behalf of the Company, by mailing to the Named Insured, at the address stated in Item 2. of the Declarations, written notice stating when, not less than thirty (30) days thereafter, such cancellation shall be effective. However, if the Company cancels the policy because the Named Insured has failed to pay a premium or Deductible when due, including premium due on any other policy(ies) issued by the Company or any of its affiliated companies in an uninterrupted series of policies of which this policy is a renewal or replacement, this policy may be cancelled by the Company by mailing a written notice of cancellation to the Named Insured stating when, not less than ten (10) days thereafter, such cancellation shall be effective. The mailing of notice as aforementioned shall be sufficient notice and the effective date of cancellation stated in the notice shall become the end of the Policy Period. Such notice shall be conclusive on all Insureds. Delivery of such written notice by the Named Insured, the Company or its underwriting manager shall be equivalent to mailing. If cancelled by the Company or its underwriting manager, earned premium shall be computed pro rata. Premium adjustment may be made at the time cancellation is effected or as soon as practicable thereafter.

B. **Representations:** By acceptance of this policy, the Insureds agree as follows:

   1. that the information and statements contained in the application(s) are the basis of this policy and are to be considered as incorporated into and constituting a part of this policy; and

   2. that the information and statements contained in the application(s) are their representations, that they shall be deemed material to the acceptance of the risk or hazard assumed by the Company under this policy, and that this policy is issued in reliance upon the truth of such representations.

C. **Entire Agreement:** This policy, the Declarations, the application(s) and any written endorsements attached hereto shall be deemed to be a single unitary contract.

D. **Prevention of Loss:** In the event of an Occurrence or an offense involving the products, goods, operations or premises covered by this policy, the Insured shall promptly, at his/her expense, take all reasonable steps to prevent other Bodily Injury, Property Damage, Personal Injury or Advertising Injury from arising out of the same or similar conditions.

E. **Other Insurance:** This insurance shall be in excess of the applicable Deductible stated in Item 5. of the Declarations and any other valid and collectible insurance available to the Insured whether such other insurance is stated to be primary, contributory, excess, contingent or otherwise, unless such other insurance is written only as a specific excess insurance over the Limits of Liability provided in this policy.

F. **Changes:** Notice to any agent or knowledge possessed by any agent or other person acting on behalf of the Company shall not effect a waiver or a change in any part of this policy and shall not estop the Company from asserting any right under the terms of the policy. The terms of this policy shall not be waived or changed, except by written endorsement issued to form a part of this policy, and this policy embodies all agreements existing between the Insureds and the Company or any of its agents relating to this insurance.

G. **Assignment of Interest:** Assignment of interest under this policy shall not bind the Company unless its consent is endorsed hereon.

H. **Subrogation:** In the event of any payment under this policy, the Company shall be subrogated to the right of recovery of all Insureds to the extent of such payment. The Insured shall execute and deliver instruments and papers and do whatever else is necessary to secure such rights. The Insured shall do nothing after the Claim to prejudice such rights.

The Company shall not exercise any such rights against any person, firms or corporations included in the definition of Insured. Notwithstanding the foregoing, however, the Company reserves the right to exercise any rights of subrogation against an Insured in respect of any Claim brought about or contributed to by the intentional, dishonest, fraudulent, criminal or malicious act or omission of such Insured.

Any amount so recovered shall be apportioned as follows:

Any recovery shall first be used for the repayment of expenses incurred toward subrogation; second, to any loss and expense payment by the Insured in excess of any Deductible(s); third, to any loss and expense payments by any excess

carrier on behalf of the Insured; fourth, to any loss and expense payments by any primary carrier on behalf of the Insured; and, last, to repayment of the Insured's Deductible.

I. **Premium and Audit:** Upon expiration of this policy, the Named Insured shall furnish to, the Company or its underwriting manager, on behalf of the Company, a statement of the Named Insured's actual Gross Receipts or other premium base as stated in Item 8. of the Declarations for the Policy Period. The actual earned premium shall be computed thereon at the premium rate stated in Item 8. of the Declarations. If the actual earned premium is more than the deposit premium stated in Item 9. of the Declarations, the Named Insured shall pay the difference to the Company; if less, the Company shall refund the difference to the Named Insured except that the Company shall be entitled to the minimum premium as stated in Item 9. of the Declarations. The Company or its underwriting manager, on behalf of the Company shall have the right to require of the Named Insured, at any time within the said Policy Period or one year thereafter, a sworn statement of the entire amount (or number) of such Gross Receipts or other premium base during the whole or any specified part of the said period, and the Named Insured shall furnish said statement within ten (10) days after request. The statement referred to shall be subject to verification and audit by a duly authorized representative of the Company, who shall have the right and opportunity to examine the books and records of the Named Insured as respects such Gross Receipts or other premium base, and such examination may be made at any time during the said period and within three (3) years thereafter. The rendering of any estimate or statement or the making of any previous settlement shall not bar the examination herein provided for, nor the Company's right to additional premium.

J. **Inspection:** Any of the Company's authorized representatives shall have the right and opportunity, whenever the Company so desires, to inspect at any reasonable time the Insured's products, goods, operations and premises, but the Company assumes no responsibility or duty by reason of such inspection or the omission thereof. The Insured agrees to provide appropriate personnel to assist the Company's representatives during such inspection without cost to the Company.

K. **Action Against the Company:** No action shall lie against the Company unless, as a condition precedent thereto, the Insured shall have fully complied with all the terms of this policy, nor until the amount of the Insured's obligation to pay shall have been fully and finally determined either by judgment against the Insured after actual trial or by written agreement of the Insured, the claimant and the Company.

Nothing contained in this policy shall give any person or organization any right to join the Company as a co-defendant in any action against the Insured to determine the Insured's liability. Bankruptcy or insolvency of the Insured or of the Insured's estate shall not relieve the Company of any of its obligations hereunder.

L. **Authorization:** By acceptance of this policy, the first person or organization named in Item 1. of the Declarations shall act on behalf of all Insureds with respect to the giving and receiving of all notices to and from the Company as provided herein: the exercising of the Extended Reporting Period; the cancellation of this policy in whole or part; the payment of premiums and Deductibles when due; the receiving of any return premiums that may become due under this policy; and the Insureds agree that such person or organization shall act on their behalf.

M. **Reporting of Changes in Products, Goods, Operations and Premises:** The premium charged for this policy is based on those products, goods, operations and premises identified in the underwriting information submitted to the Company on behalf of the Insured at the time of policy inception. The Insured shall report promptly to the Company any changes in those products, goods, operations or premises as described below, and the Company shall have the right to adjust the premium and/or Deductible(s) for such changes, based on its sole assessment of the additional exposure(s) presented.

Changes to report:

1. any changes to manufacturing or servicing premises requiring structural alterations, or acquisition of additional manufacturing or servicing premises;

2. any changes in manufacturing or servicing operations which is likely to result in an annual increase in payrolls of twenty-five percent (25%) or more;

3. any change in operations which are not accurately described by the description as specified in Item 6. of the Declarations.

This policy shall apply to only those products, goods, operations and premises specified in Item 6. of the Declarations, irrespective of any changes reported.

N. **Service of Suit:** Except with respect to any policy issued in any state in which the Company is licensed as an admitted insurer to transact business, it is agreed that in the event of the failure of the Company to pay any amount claimed to be due hereunder, the Company, at the request of the Named Insured, will submit to the jurisdiction of a court of competent

**PRODUCTS INTERLINE**

jurisdiction within the United States and will comply with all requirements necessary to give such court jurisdiction and all matters arising hereunder shall be determined in accordance with the law and practice of such court. Nothing in this clause constitutes or should be understood to constitute a waiver of the Company's rights to commence an action in any court of competent jurisdiction in the United States, to remove an action to a United States District Court, or to seek a transfer of a case to another court as permitted by the laws of the United States or of any state in the United States. It is further agreed that service of process in such suit may be made upon Secretary, Legal Department, Markel Service, Incorporated, Ten Parkway North, Deerfield, Illinois 60015 and that in any suit instituted against the Company upon this policy, the Company will abide by the final decision of such court or of any appellate court in the event of an appeal.

Further, pursuant to any statute of any state, territory, or district of the United States which makes provision therefor, the Company hereby designates the Superintendent, Commissioner, or Director of Insurance or other official specified for that purpose in the statute, or his/her successor or successors in office, as its true and lawful attorney upon whom may be served any lawful process in any action, suit or proceeding instituted by or on behalf of the Named Insured or any beneficiary hereunder arising out of this policy, and hereby designates the above-named as the person to whom the said officer is authorized to mail such process or a true copy thereof.

# NUCLEAR ENERGY LIABILITY
# EXCLUSION (BROAD FORM)

This exclusion modifies the provisions of this policy.

It is agreed that:

1. **This policy does not apply:**

    A. Under any Liability Coverage, to bodily injury or property damage

    (1) with respect to which an Insured under this policy is also an Insured under a nuclear energy liability policy issued by Nuclear Energy Liability Insurance Association, Mutual Atomic Energy Liability Underwriters or Nuclear Insurance Association of Canada, or would be an Insured under any such policy but for its termination upon exhaustion of its limit of liability; or

    (2) resulting from the hazardous properties of nuclear material and with respect to which (a) any person or organization is required to maintain financial protection pursuant to the Atomic Energy Act of 1954, or any law amendatory thereof, or (b) the Insured is, or had this policy not been issued would be, entitled to indemnity from the United States of America, or any agency thereof, under any agreement entered into by the United States of America, or any agency thereof, with any person or organization.

    B. Under any Medical Payments Coverage, or any Supplementary Payments provision relating to first aid, to expenses incurred with respect to bodily injury resulting from the hazardous properties of nuclear material and arising out of the operation of a nuclear facility by any person or organization.

    C. Under any Liability Coverage, to bodily injury or property damage resulting from the hazardous properties of nuclear material, if

    (1) the nuclear material (a) is at any nuclear facility owned by, or operated by or on behalf of, an Insured or (b) has been discharged or dispersed therefrom;

    (2) the nuclear material is contained in spent fuel or waste at any time possessed, handled, used, processed, stored, transported or disposed of by or on behalf of an Insured; or

    (3) the bodily injury or property damage arises out of the furnishing by an Insured of services, materials, parts or equipment in connection with the planning, construction, maintenance, operation or use of any nuclear facility, but if such facility is located within the United States of America, its territories or possessions or Canada, this exclusion (3) applies only to property damage to such nuclear facility and any property thereat.

2. **As used in this exclusion:**

    "hazardous properties" include radioactive, toxic or explosive properties;

    "nuclear material" means source material, special nuclear material or by-product material;

    "source material", "special nuclear material", and "by-product material" have the meanings given them in the Atomic Energy Act of 1954 or in any law amendatory thereof;

    "spent fuel" means any fuel element or fuel component, solid or liquid, which has been used or exposed to radiation in a nuclear reactor;

    "waste" means any waste material (1) containing by-product material and (2) resulting from the operation by any person or organization of any nuclear facility within the definition of nuclear facility under paragraph (a) or (b) thereof;

    "nuclear facility" means

    (a) any nuclear reactor,

    (b) any equipment or device designed or used for (1) separating the isotopes of uranium or plutonium, (2) processing or utilizing spent fuel, or (3) handling, processing or packaging waste,

    (c) any equipment or device used for the processing, fabricating or alloying of special nuclear material if at any time the total amount of such material in the custody of the Insured at the premises where such equipment or device is located consists of or contains more than 25 grams of plutonium or uranium 233 or any combination thereof, or more than 250 grams of uranium 235.

    (d) any structure, basin, excavation, premises or place prepared or used for the storage or disposal of waste.

**PRODUCTS INTERLINE**

and includes the site on which any of the foregoing is located, all operations conducted on such site and all premises used for such operations;

"nuclear reactor" means any apparatus designed or used to sustain nuclear fission in a self-supporting chain reaction or to contain a critical mass of fissionable material;

"property damage" includes all forms of radioactive contamination of property.

INTERLINE
POLICY NUMBER: SP884506



# EVANSTON INSURANCE COMPANY

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

## AMENDMENT OF TERRITORY – WORLDWIDE COVERAGE

This endorsement modifies insurance provided under the following:

GENERAL LIABILITY (INCLUDING PRODUCTS AND COMPLETED OPERATIONS LIABILITY) INSURANCE POLICY
SPECIFIED PRODUCTS AND COMPLETED OPERATIONS INSURANCE POLICY
MANUFACTURER'S PRODUCT ENGINEERING OR DESIGN ERRORS & OMISSIONS INSURANCE POLICY

In consideration of the premium paid, it is hereby understood and agreed that Section TERRITORY is deleted and replaced with the following:

**TERRITORY**

The insurance afforded by this policy applies worldwide other than any nation without diplomatic relation with the United States of America, provided the Claim is made in the United States of America, its territories or possessions, Puerto Rico or Canada.

With respect to any Claim made outside the United States of America, its territories or possessions, Puerto Rico or Canada:

1.  The Insured shall have the duty to defend, investigate and settle such Claim. The Company will indemnify the Insured for: (1) Claim Expenses incurred by the Insured in the defense of that portion of any Claim for which coverage is afforded under this policy; and (2) Damages for which coverage is afforded under this policy. The Insured shall keep the Company advised of all claimed Damages, potential liability, proceedings and actions, including progress of any litigation, any settlement demands, and any investigation developments that materially affect the Claim.

    The Company shall have the right, but not the duty, to associate in the investigation, defense or settlement of any Claim that appears reasonably likely to involve the Company. The Company shall have the right, but not the obligation, to make any investigation it deems appropriate with respect to a Claim.

2.  All payments or reimbursements the Company makes for Claim Expenses and Damages will be made in U.S. currency at the prevailing exchange rate at the time the Insured became legally obligated to pay such sums.

3.  Any action against the Company must be filed in the courts of the United States of America, its territories or possessions, Puerto Rico or Canada.

All other terms and conditions remain unchanged.

EIC 3022-01 3 04

Page 1 of 1

**INTERLINE**



# EVANSTON INSURANCE COMPANY

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY**

## 25% MINIMUM EARNED PREMIUM ENDORSEMENT

In consideration of the premium paid, it is hereby understood and agreed that in the event that this policy is cancelled by the Named Insured, the policy premium is subject to a minimum earned premium of twenty-five percent (25%) of the total premium.

All other terms and conditions remain unchanged.

**EIC 4115-01 2 03**



# EVANSTON INSURANCE COMPANY

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

## EXCLUSION OF KNOWN CLAIMS /INCIDENTS

In consideration of the premium paid, it is hereby understood and agreed that this policy shall not apply to any Claim made against any Insured based upon, arising out of, or in any way involving any fact, circumstance, situation, incident, loss, claim or suit referred to in answer to any question of the application attached to this policy, or if this policy is a renewal or replacement of any policy issued by the Company or any of its affiliated companies, the application attached to the initial policy.

All other terms and conditions remain unchanged.

**EIC 4568 01 06**                                                                                              **Page 1 of 1**

**INTERLINE**

**MARKEL**®

# EVANSTON INSURANCE COMPANY

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

## ASBESTOS EXCLUSION

In consideration of the premium paid, it is hereby understood and agreed that the insurance provided by this policy shall not apply to any Claim, loss or expense caused by, resulting from or arising out of asbestos, asbestos fibers or any product or material containing asbestos in any form, under any theory of liability whatsoever.

It is further agreed that the Company shall have no duty to defend or to pay or reimburse for any fees, costs or expenses in the investigation or defense of any Claim excluded herein.

All other terms and conditions remain unchanged.

EIC 832-01 10 02                                                                                    Page 1 of 1



# EVANSTON INSURANCE COMPANY

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# EXCLUSION – UNMANNED AIRCRAFT

This endorsement modifies insurance provided under the following:

GENERAL LIABILITY (INCLUDING PRODUCTS AND COMPLETED OPERATIONS LIABILITY) INSURANCE POLICY

In consideration of the premium paid, it is understood and agreed that the policy is amended as follows:

1. Section Definitions C., Aircraft Products, is deleted and replaced as follows:

   C. **Aircraft Products** means any aircraft whether or not heavier than air, including manned and Unmanned Aircraft, spacecraft and missiles, and any ground support, guidance, control or communications equipment used in connection therewith, and also includes parts, supplies, or equipment installed in or on or used in connection with aircraft, including tools, training aids, instructions, manuals, blueprints and other data, engineering and other advice, services and labor used in the operation, maintenance or manufacture of aircraft products.

2. Section Definitions is amended by the addition of the following:

   **Unmanned Aircraft** means an aircraft that is not designed, manufactured, or modified after manufacture, to be controlled directly by a person from within or on the aircraft.

3. Section The Exclusions A. is amended by the addition of the following:

   With respect to all Coverages, this policy does not apply to:

   any Claim based upon or arising out of Bodily Injury, Property Damage, Personal Injury or Advertising Injury arising out of the ownership, maintenance, use or entrustment to others of any aircraft that is an Unmanned Aircraft. Solely for purposes of this exclusion, "use" includes operation of or exercise of any control over an Unmanned Aircraft; and the Insured's authorization, direction or acquiescence in the operation or control of Unmanned Aircraft by any person or entity; and loading or unloading of any such Unmanned Aircraft. This exclusion applies even if any such Claim alleges negligence or other wrongdoing in the supervision, hiring, employment, training or monitoring of others by the Insured, if the Occurrence which caused the Bodily Injury or Property Damage or the offense which caused the Personal Injury or Advertising Injury involved the ownership, maintenance, use or entrustment to others of any aircraft that is an Unmanned Aircraft.

4. Section The Exclusions B.6. is deleted and replaced as follows:

   6. any Claim based upon or arising out of Bodily Injury or Property Damage arising out of ownership, maintenance, operation, use or entrustment to others or loading or unloading of:

      (i) any Automobile, aircraft other than an Unmanned Aircraft or watercraft owned or operated by or rented or loaned to any Insured; or

      (ii) any other Automobile, aircraft other than an Unmanned Aircraft or watercraft operated by any person in the course of his/her employment by the Named Insured;

      This exclusion applies even if any such Claim alleges negligence or other wrongdoing in the supervision, hiring, employment, training or monitoring of others by the Insured, if the Occurrence which caused the Bodily Injury or Property Damage involved the ownership, maintenance, use or entrustment to others of any aircraft other than Unmanned Aircraft, Automobile or watercraft that is owned or operated by or rented or loaned to any Insured;

however, this exclusion shall not apply to:

(a) the parking of an Automobile on premises owned by, rented to or controlled by the Named Insured or on ways next to such premises, if such Automobile is not owned by or rented or loaned to any Insured;

(b) a watercraft while ashore on premises owned by, rented to or controlled by the Named Insured; or

(c) a watercraft that is less than twenty-six (26) feet in length, that is not owned by the Named Insured and that is not being used to carry persons or property for a charge;

All other terms and conditions remain unchanged.

COMMERCIAL GENERAL LIABILITY



# EVANSTON INSURANCE COMPANY

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

## ELITE NUTRA ENHANCEMENT

This endorsement modifies insurance provided under the following:

GENERAL LIABILITY (INCLUDING PRODUCTS AND COMPLETED OPERATIONS LIABILITY) INSURANCE POLICY

The following coverages and extensions are added to this policy as detailed below. As respects any coverage provided by this endorsement, if higher limits are provided on any other schedule, declarations or endorsement attached to this policy, then the limits and coverage provided by this endorsement would not apply for that coverage.

### SCHEDULE

| | |
|---|---|
| Incidental Human Clinical Trial, Medical Monitoring Expenses and Incidental Errors or Omissions Coverages | Included |
| Additional Insured – Vendors Broad Form | Included |
| Additional Insured as Required by Written Contract | Included |
| Additional Insured – Trade Show Sponsor as Required by Written Contract | Included |
| Limited Civil Penalty Reimbursement Coverage (California Proposition 65) | $25,000 Each Violation/$25,000 Aggregate |
| Medical Payments Coverage | $5,000 Each Person/$250,000 Aggregate |
| Batch Clause | Included |
| Worldwide Coverage | Included |
| Aggregate Deductible | Included |
| Amended Extended Reporting Period | Included |
| Primary and Non-Contributory | Included |
| Waiver of Subrogation | Included |
| Premium and Audit Waiver | Included |

**A.  Incidental Human Clinical Trial, Medical Monitoring Expenses and Incidental Errors or Omissions Coverages**

    **1.**  Section THE INSURED is amended by the addition of the following:

        Solely with respect to Bodily Injury or Property Damage as covered hereunder, any Clinical Trial Contractor, Medical Sales Consultant and Product Service Contractor of the Named Insured which the Named Insured has agreed by written contract, agreement or permit to add as an additional Insured pursuant to a written contract, agreement or permit which the Named Insured entered into prior to the Bodily Injury, Property Damage or Occurrence; provided, however, that coverage afforded to such Insureds does not apply to:

           **1.**  any express warranty unauthorized by the Named Insured;

**MEGL 2204 10 17**

2.  any physical or chemical change in a product or good specified in Item 6. of the Declarations which is manufactured, sold, handled or distributed by the Named Insured, which change was made intentionally by such person or organization without the Named Insured's consent; or

3.  such person's or organization's rendering of or failure to render advice unless the Bodily Injury or Property Damage arises directly out of the use of a product or good specified in Item 6. of the Declarations which is manufactured, sold, handled or distributed by the Named Insured.

**2.**  Section INSURING AGREEMENTS, Paragraph A. Coverage A. – Bodily Injury and Property Damage Liability, is amended by the addition of the following Coverages:

**Incidental Human Clinical Trial Coverage:** The coverage afforded under Coverage A. of this policy is amended to include coverage for Claims first made against the Insured during the Policy Period or during the Extended Reporting Period, if exercised, and reported to the Company pursuant to Section CLAIMS, Paragraph A. Claim Reporting Provision, based upon or arising out of the vicarious liability of the Named Insured by reason of the Named Insured's sponsorship of an Approved Human Clinical Trial, provided:

1.  the product being tested is a product or good specified in Item 6. of the Declarations which is manufactured, sold, handled or distributed by the Named Insured;

2.  exposure to such product, upon or within human beings during such trial, happens during the Policy Period or on or after the Retroactive Date stated in Item 7. of the Declarations and prior to the expiration of the Policy Period; and

3.  with respect to such Approved Human Clinical Trial, this insurance applies only if the Insured has not recklessly or willfully violated or consented to any violation of any agreement, contract, law, procedure, protocol or regulation with regard to the conduct of such Approved Human Clinical Trial.

**Medical Monitoring Expenses Coverage:** The coverage afforded under Coverage A. of this policy is amended to include coverage for Claims first made against the Insured during the Policy Period or during the Extended Reporting Period, if exercised, and reported to the Company pursuant to Section CLAIMS, Paragraph A. Claim Reporting Provision for Medical Monitoring Expenses caused by or directly resulting from participation in an Approved Human Clinical Trial which has been suspended, provided:

1.  the product being tested is a product or good specified in Item 6. of the Declarations which is manufactured, sold, handled or distributed by the Named Insured;

2.  the product being tested is the subject of a Product Recall;

3.  the claimant's first exposure to such recalled product happens during the Policy Period or on or after the Retroactive Date stated in Item 7. of the Declarations and prior to the expiration of the Policy Period; and

4.  prior to the effective date of this policy, the Insured had no knowledge of such Product Recall or any fact, circumstance, situation or incident which may have led a reasonable person in the Insured's position to conclude that a Claim for Medical Monitoring Expenses or a Product Recall was likely.

**Incidental Errors or Omissions Coverage:** The coverage afforded under Coverage A. of this policy is amended to include coverage for Claims first made against the Insured during the Policy Period or during the Extended Reporting Period, if exercised, and reported to the Company pursuant to Section CLAIMS, Paragraph A. Claim Reporting Provision by reason of an act, error or omission in the performance of Professional Services rendered or that should have been rendered by the Insured or by any person or organization for whose act, error or omission the Insured is legally responsible, provided:

1.  the entirety of such act, error or omission happens during the Policy Period or on or after the Retroactive Date stated in Item 7. of the Declarations and prior to the expiration of the Policy Period; and

2.  prior to the effective date of this policy, no Insured had any knowledge of such act, error or omission or any fact, circumstance, situation or incident which may have led a reasonable person in the Insured's position to conclude that a Claim was likely.

**3.**  With respect to Incidental Human Clinical Trial, Medical Monitoring Expenses and Incidental Errors or Omissions Coverages, Section DEFINITIONS is amended by the addition of the following:

**Approved Human Clinical Trial** means a clinical trial performed upon or within human beings, provided that the sponsor of the clinical trial makes all filings that are required to be made under all applicable laws and regulations and has received all necessary authorization in connection herewith, including approval of the applicable institutional review board, ethics committee and/or similar body.

**Clinical Trial Contractor** means (1) an individual other than a principal, officer or employee of the Named Insured; or (2) an organization other than a subsidiary of the Named Insured; engaged to provide service, advice or instruction in connection with: (a) clinical, laboratory or research testing activities within the scope of and in accordance with the applicable written protocol; or (b) the planning, monitoring or review; of an Approved Human Clinical Trial.

**Medical Monitoring Expenses** means those expenses incurred to conduct medical testing on or medical monitoring of a claimant in the absence of physical injury, illness or disease: (1) necessitated by a substantially increased risk that the claimant will sustain Bodily Injury in the future; and (2) ongoing medical testing or monitoring are medically warranted because the prospect of early diagnosis of such Bodily Injury will improve the chance of beneficial medical intervention; and (3) the expenses provide no other material benefit to the claimant.

**Medical Sales Consultant** means (1) an individual other than a principal, officer or employee of the Named Insured; or (2) an organization other than a subsidiary of the Named Insured; providing advice or demonstrating procedures in connection with the manufacture, sale, loan, lease or delivery of a product or good specified in Item 6. of the Declarations which is manufactured, sold, handled or distributed by the Named Insured, provided such consultant does not provide any direct patient care.

**Product Recall** means the recall of a product or good of the Named Insured specified in Item 6. of the Declarations taken voluntary by or on behalf of the Insured or required by a government entity acting in accordance with applicable federal, state, regional or local law or the U.S. Food and Drug Administration when the sole reason, expressed in writing is that human subjects are or would be exposed to an unreasonable and significant risk of illness or injury if the Approved Human Clinical Trial were continued.

**Product Service Contractor** means (1) an individual other than a principal, officer or employee of the Named Insured; or (2) an organization other than a subsidiary of the Named Insured such as a scientific advisory board; to whom or to which the Named Insured is obligated by virtue of a written contract, agreement or permit to provide such insurance as afforded by this policy.

**Professional Services** means any act, error or omission by the Insured or by any agent or representative of the Insured in connection with the manufacture, sale, loan, lease or delivery of a product or good specified in Item 6. of the Declarations which is manufactured, sold, handled or distributed by the Named Insured, including but not limited to rendering or failing to render advice or instructions to physicians on the proper selection, sizing and application of any such product or good so long as such advice or instruction is not knowingly contrary to any written advice or instructions given by the manufacturer to the Insured.

4. With respect to Incidental Human Clinical Trial, Medical Monitoring Expenses and Incidental Errors or Omissions Coverages, Section THE EXCLUSIONS, Paragraph A.2. is replaced by the following:

   2. any Claim based upon or arising out of the rendering of or failure to render Professional Services by the Insured or by any person or organization for whose acts, errors or omissions the Insured is legally responsible; provided, however, this exclusion shall not apply to Incidental Medical Malpractice Injury or to Incidental Errors or Omissions Coverage;

5. With respect to Incidental Human Clinical Trial, Medical Monitoring Expenses and Incidental Errors or Omissions Coverages, Section THE EXCLUSIONS, Paragraph A. is amended by the addition of the following:

   With respect to coverage afforded by this endorsement, this policy does not apply to any Claim based upon or arising out of:

   (i) or in any way involving medical malpractice including patient treatment, consultation with patients or rendering medical opinions in specific treatment of any patient as the consulting medical care provider for a second opinion or primary care; or

   (ii) any dishonest, fraudulent, criminal, malicious or knowingly wrongful acts, errors or omissions intentionally committed by or at the direction of the Insured.

**B. Additional Insured – Vendors Broad Form**

Section THE INSURED is amended to include as an Insured the following:

Any person or organization that is a vendor of the Named Insured (hereinafter referred to as Vendor), but only with respect to the sale of the products or goods specified in Item 6. of the Declarations; provided, however, that coverage afforded to the Vendor shall not apply to any:

1. express warranty, unauthorized by the Named Insured;

2. act of the Vendor which changes the condition of such product or good or causes or contributes to the alleged Bodily Injury or Property Damage;

3. failure to maintain such product or good in merchantable condition;

4. failure to make such inspections, adjustments, tests or servicing as the Vendor has agreed to make or normally undertakes to make in the usual course of business, in connection with the distribution or sale of such product or good ; or

5. such products or goods which, after distribution or sale by the Named Insured, have been labeled or relabeled or used as a container, part or ingredient of any other product or good , thing or substance by or for the Vendor.

The coverage afforded by this provision does not apply to any person or organization, as insured, from whom the Named Insured has acquired such products or goods or any ingredient, part or container, entering into, accompanying or containing such products or goods.

## C. Additional Insured as Required by Written Contract

Section THE INSURED is amended to include as an Insured the following:

Any person or organization the Named Insured is required to include as an additional insured on this policy by a written contract or written agreement in effect during this Policy Period and executed prior to the Bodily Injury or Property Damage and Occurrence, hereinafter referred to as Additional Insured.

Notwithstanding the foregoing, no contract manufacturer of the Named Insured and no ingredient or part supplier of the Named Insured shall be included as an Insured or Additional Insured pursuant to this endorsement.

The insurance provided to the Additional Insured is limited as follows:

1. the person or organization is only an Additional Insured with respect to liability arising solely out of the Products Hazard or Completed Operations Hazard.

2. in the event that the Limits of Liability under this policy exceed the limits of insurance required by the written contract or written agreement, the insurance provided by this endorsement shall be limited to the limits of insurance required by the written contract or written agreement. This endorsement shall not increase the Limits of Liability stated in Item 4. of the Declarations.

3. this insurance does not apply to Bodily Injury or Property Damage arising out of the Products Hazard or Completed Operations Hazard unless the Named Insured is required to provide such coverage by the written contract or written agreement but only for the period of time required by the written contract or written agreement and only for Bodily Injury or Property Damage, the entirety of which happens during the Policy Period or on or after the Retroactive Date stated in Item 7. of the Declarations, caused by an Occurrence, the entirety of which happens during the Policy Period or on or after the Retroactive Date stated in the Item 7. of the Declarations, and any of which arises out of the Products Hazard or Completed Operations Hazard.

4. any coverage provided by this endorsement to an Additional Insured shall be excess over any other valid and collectible insurance available to the Additional Insured whether primary, excess, contingent or on any other basis.

5. where no coverage is afforded under this policy for the Named Insured, no coverage or defense shall be afforded to the Additional Insured.

6. this insurance does not apply to Bodily Injury or Property Damage arising out of the sole negligence of the Additional Insured.

## D. Additional Insured – Trade Show Sponsor as Required by Written Contract

Section THE INSURED is amended to include as an Insured the following:

Any sponsor or operator of a trade show or convention at which the Named Insured operates a booth for the purpose of marketing or selling or displaying those products or goods specified in Item 6. of the Declarations provided such sponsor or operator is required to be included as an additional insured on this policy by a written contract or written agreement in effect during this Policy Period and executed prior to the Bodily Injury or Property Damage and Occurrence, hereinafter referred to as Additional Insured.

Notwithstanding the foregoing, no contract manufacturer of the Named Insured and no ingredient or part supplier of the Named Insured shall be included as an Insured or Additional Insured pursuant to this endorsement.

The insurance provided to the Additional Insured is limited as follows:

1. such sponsor or operator is an Additional Insured solely with respect to liability for Occurrences at, on or upon that portion of the premises of the trade show or convention while occupied by the Named Insured.

2. in the event that the Limits of Liability under this policy exceed the limits of insurance required by the written contract or written agreement, the insurance provided by this endorsement shall be limited to the limits of insurance required by the written contract or written agreement. This endorsement shall not increase the Limits of Liability stated in Item 4. of the Declarations.

3. this insurance does not apply to Bodily Injury or Property Damage arising out of the Products Hazard or Completed Operations Hazard unless the Named Insured is required to provide such coverage by the written contract or written agreement but only for the period of time required by the written contract or written agreement and only for Bodily Injury or Property Damage, the entirety of which happens during the Policy Period or on or after the Retroactive Date stated in Item 7. of the Declarations, caused by an Occurrence, the entirety of which happens during the Policy Period or on or after the Retroactive Date stated in Item 7. of the Declarations, and any of which arises out of the Products Hazard or Completed Operations Hazard.

4. any coverage provided by this endorsement to an Additional Insured shall be excess over any other valid and collectible insurance available to the Additional Insured whether primary, excess, contingent or on any other basis.

5. where no coverage is afforded under this policy for the Named Insured, no coverage or defense shall be afforded to the Additional Insured.

6. this insurance does not apply to Bodily Injury or Property Damage arising out of the sole negligence of the Additional Insured.

**E. Limited Civil Penalty Reimbursement Coverage (California Proposition 65)**

1. Section INSURING AGREEMENTS is amended by the addition of the following:

   **Limited Civil Penalty Reimbursement Coverage:** The Company shall reimburse the Named Insured for that portion of a judgment that orders the Named Insured to pay a civil penalty pursuant to California Safe Drinking Water and Toxic Enforcement Act of 1986 Section 25249.6 and any amendments thereto, in excess of the Deductible amount and subject to the applicable Limits of Liability stated below, provided that:

   1. the Claim giving rise to such penalty is first made against the Named Insured during the Policy Period;

   2. the entirety of the event(s) giving rise to such penalty happens during the Policy Period or on or after the Retroactive Date stated in Item 7. of the Declarations and before the expiration of the Policy Period;

   3. the event(s) giving rise to such penalty happens within the Territory;

   4. the Claim giving rise to such penalty arises out of only those products and goods specified in Item 6. of the Declarations; and

   5. the Claim giving rise to such penalty is brought by an Attorney General, District Attorney, city attorney, city prosecutor or other authorized government entity.

2. With respect to Limited Civil Penalty Reimbursement Coverage, Section DEFINITIONS, Paragraph F. Claim is replaced by the following:

   **Claim** means a notice received by the Named Insured of an intention to hold the Named Insured responsible for a Violation.

3. With respect to Limited Civil Penalty Reimbursement Coverage, Section DEFINITIONS is amended by the addition of the following:

   **Limited Civil Penalty Reimbursement** means the amount the Company will reimburse hereunder after the Named Insured has paid that portion of a judgment in connection with a covered Claim awarding civil penalties under California Safe Drinking Water and Toxic Enforcement Act of 1986 Section 25249.7(b)(1).

   **Violation** means, for purposes of Limited Civil Penalty Reimbursement Coverage only, the failure to comply with California Safe Drinking Water and Toxic Enforcement Act of 1986 Section 25249.6 and any amendments thereto, for failure to warn the presence of chemicals known to cause cancer or reproductive toxicity in connection with your products or goods specified in Item 6. of the Declarations.

4. With respect to Limited Civil Penalty Reimbursement Coverage, Section THE EXCLUSIONS is amended by the addition of the following:

With respect to Limited Civil Penalty Reimbursement Coverage only, this policy does not apply to:

1. any Claim brought under any section or provision of the California Safe Drinking Water and Toxic Enforcement Act of 1986 other than Section 25249.6, or for any award(s) under any sections or provisions other than Section 25249.7(b)(1), and any amendments thereto;

2. any cost, expense, fees, attorney's fees or law costs in connection with any Claim;

3. any award of attorney's fees under California law;

4. any Bodily Injury, Property Damage, Advertising Injury or Personal Injury;

5. any Claim brought by a person in the public interest pursuant to California Safe Drinking Water and Toxic Enforcement Act of 1986 Section 25249.7(d); or

6. any Claim based upon, arising out of, resulting from, caused by, or in any way related, either directly or indirectly, to any actual or alleged criminal, malicious, dishonest or fraudulent act, error, omission, conduct or misconduct of any Insured.

5. With respect to Limited Civil Penalty Reimbursement Coverage, Section LIMITS OF LIABILITY is amended by the addition of the following:

**Limited Civil Penalty Reimbursement Coverage:** The Company's liability for Limited Civil Penalty Reimbursement for civil penalty(ies) incurred by the Named Insured is in excess of the Deductible amount of $2,500 for any one Violation; and then for an amount not exceeding the amount shown in the Schedule of this endorsement as the result of any one Violation.

For the purpose of determining the limit of the Company's liability, all Claims involving allegations of multiple Violations arising from the same product(s) or good(s), or continuous or repeated exposure to the same, related or substantially similar product(s) or good(s), shall be deemed to constitute a single Violation regardless of the number of units of such product(s) or good(s) involved. All such Claims shall be deemed to have been first made on the date on which the earliest Claim arising out of such Violation is made.

Subject to the foregoing provisions, the total limit of the Company's liability because of all amounts paid or payable hereunder for Limited Civil Penalty Reimbursement Coverage to the Named Insured shall not exceed the amount shown in the Schedule of this endorsement in the aggregate.

Any reimbursement to the Named Insured under Limited Civil Penalty Reimbursement shall be part of and not in addition to the Policy Aggregate and shall reduce the Policy Aggregate Limit of Liability stated in Item 4.C. of the Declarations.

If this policy and any other policy issued to the Named Insured by the Company or any of its affiliates apply to the same Claim or Violation, the combined maximum limits of liability under all of the policies shall not exceed the highest applicable limit of liability available under any one policy.

6. With respect to Limited Civil Penalty Reimbursement Coverage, Section EXTENDED REPORTING PERIOD is deleted in its entirety.

**F.  Medical Payments Coverage**

1. Section INSURING AGREEMENTS is amended by the addition of the following Coverage:

**Medical Payments Coverage:** The Company will pay Medical Expenses incurred because of Bodily Injury that is caused by an accident that occurs:

1. on premises the Named Insured owns or rents;

2. on ways next to such premises the Named Insured owns or rents; or

3. because of the Named Insured's covered operations;

provided that:

(i) the Medical Expenses are incurred and reported to the Company within one year of the date of the accident; and

(ii) the accident takes place in the policy territory and during the Policy Period.

2. With respect to Medical Payments Coverage, Section DEFINITIONS is amended by the addition of the following:

**Medical Expenses** means reasonable costs for (1) first aid administered at the time of an accident; (2) necessary medical, surgical, x-ray and dental services, including prosthetic devices; and (3) necessary ambulance, hospital, professional nursing and funeral services.

3.  With respect to Medical Payments Coverage, Section THE EXCLUSIONS is amended by the addition of the following:

    With respect to coverage afforded by this endorsement, this policy does not apply to Medical Expenses for Bodily Injury:

    1   to any Insured;

    2.  to any patient or resident of the Insured;

    3.  to any person hired to do work for or on behalf of any Insured or a tenant of any Insured;

    4.  to any person injured on that part of the premises the Named Insured owns or rents that the person normally occupies;

    5.  to any person, whether or not an employee of any Insured, if benefits for the Bodily Injury are payable or must be provided under a workers' compensation or disability benefits law or a similar law;

    6.  to any person injured while taking part in athletics;

    7.  due to war, whether or not declared, or any act or condition incident to war. War includes civil war, insurrection, rebellion or revolution;

    8.  included within any Completed Operations Hazard or Products Hazard coverage provided by this policy; or

    9.  arising out of the rendering of or failure to render professional services by the Insured or by any person or organization for whose acts or omissions the Insured is legally responsible.

    Further all exclusions pertaining to any General Liability Coverage or Bodily Injury and Property Damage Liability Coverage provided by this policy shall also apply to the Medical Payments Coverage.

4.  With respect to Medical Payments Coverage, Section LIMITS OF LIABILITY is amended by the addition of the following:

    **Medical Payments Coverage:** The Company shall pay covered Medical Expenses, regardless of fault, subject to the following:

    1.  The Each Person limit shown in the Schedule of this endorsement is the most we will pay for each person injured as a result of any one accident, or series of accidents arising from the same event; and

    2.  The Aggregate limit shown in the Schedule of this endorsement is the most we will pay for all persons injured in all accidents.

    No person will be entitled to receive duplicate payments for the same elements of loss under the Medical Payments Coverage and any other coverage of this policy.

5.  With respect to Medical Payments Coverage, Section CLAIMS, Paragraphs A. Claim Reporting Provision and C. Assistance and Cooperation of the Insured are amended by the addition of the following:

    Each person injured, or someone acting on behalf of the person injured, seeking payment by the Company, must provide the Company with:

    1.  written authorization for release to the Company of copies of pertinent medical reports and records; and

    2.  written, sworn proof of Medical Expenses, as soon as practicable and in any event no later than one year after the date of the accident.

    Each person injured must submit to physical examination by a physician selected by the Company when and as often as the Company may require. The Company will pay for the cost of such examination.

G.  **Batch Clause**

1.  Section DEFINITIONS, Paragraph P. Occurrence, and Section LIMITS OF LIABILITY, Paragraph F. Multiple Insureds, Claims and Claimants, are amended by the addition of the following.

    **Batch Clause:** All Claims first made against the Insured during the Policy Period for Bodily Injury or Property Damage arising out of the contamination or adulteration of one Batch, regardless of the number of persons or

organizations who sustain Damages, shall be treated as a single Occurrence and all such Claims shall be deemed to be first made on the date on which the earliest Claim arising out of such Occurrence is made.

2. With respect to this provision, Section DEFINITIONS is amended by the addition of the following:

**Batch** means the amount or quantity of a product or good specified in Item 6. of the Declarations which is manufactured, sold, handled or distributed by the Named Insured, that:

1. is produced in a single continuous operation;

2. can be distinguished by the specific date of production or by the batch, lot, or run number assigned to it; and

3. contains substantially the same error or defect out of which Bodily Injury or Property Damage arises.

## H. Worldwide Coverage

Section TERRITORY is deleted and replaced by the following:

The insurance afforded by this policy applies anywhere in the world with the exception of any country or jurisdiction which is subject to trade or other economic sanctions or embargo by the United States of America, or where coverage is otherwise prohibited by the United States Office of Foreign Assets Control.

With respect to any Claim made outside the United States of America, its territories or possessions, Puerto Rico or Canada:

1. the Company will have the right but not the duty to defend the Claim;

2. the Insured will initiate a defense of a Claim in accordance with the following conditions:

   (i) the Company retains the right to assume and control the investigation, adjustment or defense of any Claim at any time; and

   (ii) in the event the Company does not exercise its right or is prevented from doing so because the Company is not licensed or permitted by law in the applicable jurisdiction to defend the Insured, the Company will reimburse the Insured under Claim Expenses for any reasonable and necessary expenses incurred for the defense of a Claim seeking Damages to which this insurance applies, that the Company would have paid had it been able to exercise it right and duty to defend. No such expenses shall be paid by any Insured without the Company's prior written consent;

3. if the Insured becomes legally obligated to pay sums because of Damages to which this insurance applies outside of the United States of America (including its territory and possessions), Puerto Rico or Canada, and the Company is prevented from paying such sums and associated expenses, if applicable, because the Company is not licensed or permitted by law in the applicable jurisdiction to pay such sums on the Insured's behalf, the Company will reimburse the Insured for such sums to the extent permitted by law;

4. all payments or reimbursements the Company makes for Damages because of judgments or settlements will be made in U.S. currency at the prevailing exchange rate at the time the Insured became legally obligated to pay such sums. All payments or reimbursements the Company makes for expenses under Claim Expenses will be made in U.S. currency at the prevailing exchange rate at the time the expenses were incurred. In no event shall the Company pay more than the Limits of Insurance stated in Item 4. of the Declarations; and

5. any disputes between the Insured and the Company as to whether there is coverage under this policy must be filed in the courts of the United States of America (including its territories and possessions), Puerto Rico or Canada.

## I. Aggregate Deductible

Section LIMITS OF LIABILITY, Paragraph E. Deductible is amended by the addition of the following:

Subject to the foregoing Each Occurrence and Each Person or Organization Deductibles, the total Deductible payments to be paid by the Named Insured shall not exceed an aggregate Deductible of ten (10) times the amount of the Each Occurrence Deductible or Each Person or Organization Deductible, whichever is greater, stated in Item 5. of the Declarations, arising out of all Claims first made during the Policy Period and the Extended Reporting Period, if exercised.

## J. Amendment Extended Reporting Period

Section EXTENDED REPORTING PERIOD, Paragraph A. is replaced by the following:

**EXTENDED REPORTING PERIOD**

A. If the Named Insured nonrenews this policy or cancels this policy pursuant to Section OTHER CONDITIONS, Paragraph A. Cancellation, or if the Company nonrenews this policy or cancels this policy pursuant to Section OTHER CONDITIONS, Paragraph A. Cancellation for reasons other than nonpayment of premium or Deductible or non-compliance with the terms and conditions of this policy, then the Named Insured shall have the right upon payment of an additional premium calculated to extend the coverage granted under this policy, to Claims first made against the Insured during: (1) 12 months; (2) 24 months; (3) 36 months; or (4) 60 months; as elected by the Named Insured, and reported to the Company pursuant to Section CLAIMS, Paragraph A. Claims Reporting Provision following immediately upon the effective date of such cancellation or nonrenewal, for:

1. Bodily Injury or Property Damage which happened on or after the Retroactive Date stated in Item 7. of the Declarations and prior to the effective date of such cancellation or nonrenewal, caused by an Occurrence which happened on or after the Retroactive Date stated in Item 7. of the Declarations and prior to the effective date of such cancellation or nonrenewal and arising from those products, goods, operations or premises specified in Item 6. of the Declarations and which is otherwise covered by this policy; or

2. Personal Injury or Advertising Injury which happened on or after the Retroactive Date stated in Item 7. of the Declarations and prior to the effective date of such cancellation or nonrenewal, caused by an offense which happened on or after the Retroactive Date stated in Item 7. of the Declarations and prior to the effective date of such cancellation or nonrenewal and arising from those products, goods, operations or premises specified in Item 6. of the Declarations and which is otherwise covered by this policy.

This period of months as elected by the Named Insured and described in this paragraph shall be referred to in this policy as the Extended Reporting Period.

The 12 month Extended Reporting Period premium shall be calculated at 100% of the adjusted annual premium but in no event less than the 100% of the Minimum premium and Deposit premium stated in Item 9. of the Declarations. The 24 month Extended Reporting Period premium shall be calculated at 150% of the adjusted annual premium but in no event less than the 100% of the Minimum premium and Deposit premium stated in Item 9. of the Declarations. The 36 month Extended Reporting premium shall be calculated at 200% of the adjusted annual premium but in no event less than the 100% of the Minimum premium and Deposit premium stated in Item 9. of the Declarations. The 60 month Extended Reporting Period premium shall be calculated in accordance with our rules and rates with no maximum amount. In doing so, we may take into account the following:

1. the Insured's exposures;

2. previous types and amounts of insurance;

3. the Limits of Liability available under this policy for future payment of Damages; and

4. other related factors including, but not limited to, Claims history

If, however, this policy is immediately succeeded by similar Claims made insurance coverage on which the Retroactive Date is the same as or earlier than that stated in the Item 7. of the Declarations, the succeeding insurance shall be deemed to be a renewal hereof and, in consequence, the Named Insured shall have no right to purchase an Extended Reporting Period.

The quotation of a different premium, Deductible or Limit of Liability for renewal does not constitute a cancellation or refusal to renew for the purpose of this provision.

**K. Primary and Non-Contributory**

Section OTHER CONDITIONS, Paragraph E. Other Insurance is amended by the addition of the following:

**Primary and Non-Contributory Provision:** Solely with respect to any Claim made against any Additional Insured covered hereunder, the Company agrees to provide primary insurance to such Additional Insured on a non-contributory basis relative to any other insurance carried by the Additional Insured, provided the Named Insured has agreed to provide primary insurance to such Additional Insured on a non-contributory basis, in writing in a contract or agreement that was executed before the date such Claim was made. If however, such Additional Insured has other insurance available as an Additional Insured, this provision shall not apply and this insurance shall apply on an excess basis relative to such other insurance.

**L. Waiver of Subrogation**

Section OTHER CONDITIONS, Paragraph H. Subrogation is amended by the addition of the following:

**Waiver of Subrogation Provision:** Solely with respect to those persons or organizations described in Paragraph **A.1.** of this endorsement or those Additional Insureds required to be included as an additional insured on this policy

by a written contract or written agreement in effect during this Policy Period and executed prior to the Occurrence of the Bodily Injury or Property Damage and with respect to whom the written contract or written agreement requires to have subrogation against them by the Company waived, the Company waives all rights of subrogation against any such Insured.

**M.  Premium and Audit Waiver**

Section OTHER CONDITIONS, Paragraph I. Premium and Audit is amended by the addition of the following:

Provided this policy is not cancelled before its expiration by the Named Insured or the Company:

1.  for the purpose of determining if the Named Insured is due any refund based on the actual earned premium being less than the Deposit Premium, the Minimum Premium will be deemed to be the lesser of:

    (i)  the amount of the Minimum Premium stated in Item 9. of the Declarations; or

    (ii)  90% of the Deposit Premium stated in Item 9. of the Declarations; or

2.  for the purpose of determining any additional premium the Named Insured must pay to the Company, the Company shall reduce any amount due by any amount equal to 5% of the Deposit Premium stated in Item 9. of the Declarations.


All other terms and conditions remain unchanged.



# EVANSTON INSURANCE COMPANY

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

## AMENDMENT OF DEFINITIONS AND EXCLUSIONS – ELECTRONIC DATA AND DISTRIBUTION OF MATERIAL IN VIOLATION OF STATUTES

This endorsement modifies insurance provided under the following:

GENERAL LIABILITY (INCLUDING PRODUCTS AND COMPLETED OPERATIONS LIABILITY) INSURANCE POLICY
SPECIFIED MEDICAL PROFESSIONS GENERAL LIABILITY (INCLUDING PRODUCTS AND COMPLETED OPERATIONS LIABILITY) COVERAGE PART – OCCURRENCE COVERAGE
SPECIFIED MEDICAL PROFESSIONS GENERAL LIABILITY (INCLUDING PRODUCTS AND COMPLETED OPERATIONS LIABILITY) INSURANCE COVERAGE PART – CLAIMS MADE COVERAGE

1.  Section Definitions is amended by the addition of the following:

    **Electronic Data** means information, facts or programs stored as or on, created or used on, or transmitted to or from computer software, including systems and applications software, hard or floppy disks, CD-ROMS, tapes, drives, cells, data processing devices or other media which are used with electronically controlled equipment.

2.  Section Definitions, Property Damage, is deleted and replaced as follows:

    **Property Damage** means:

    1.  physical injury to or destruction of tangible property, including consequential loss of use thereof; or

    2.  loss of use of tangible property which has not been physically injured or destroyed; provided, however, such loss of use is caused by an Occurrence;

        provided, however, tangible property shall not include Electronic Data.

3.  Section The Exclusions A. is amended by the addition of the following:

    any Claim based upon or arising out of any violation of:

    (a)  the Telephone Consumer Protection Act of 1991 (TCPA) and amendments thereto or any similar or related federal or state statute, law, rule, ordinance or regulation;

    (b)  the CAN-SPAM Act of 2003 and amendments thereto or any similar or related federal or state statute, law, rule, ordinance or regulation; or

    (c)  any other statute, law, rule, ordinance or regulation that prohibits or limits the sending, transmitting, communication or distribution of information or other material.

All other terms and conditions remain unchanged.

MEIL 1313 02 12                                                                                                      **Page 1 of 1**



# EVANSTON INSURANCE COMPANY

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

## EXCLUSION - DESIGNATED INGREDIENTS

This endorsement modifies insurance provided under the following:

SPECIFIED PRODUCTS AND COMPLETED OPERATIONS INSURANCE POLICY
GENERAL LIABILITY (INCLUDING PRODUCTS AND COMPLETED OPERATIONS LIABILITY) INSURANCE POLICY
COMMERCIAL GENERAL LIABILITY COVERAGE PART
PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE PART
GENERAL LIABILITY INSURANCE (CLAIMS MADE) COVERAGE PART FOR SPECIFIED PROFESSIONS
EXCESS LIABILITY INSURANCE POLICY

This insurance does not apply to claims arising from the importation, manufacture, distribution, sale, use or ingestion of the following, whether as the primary ingredient or in combination with other ingredients or as a synthetic or cloned version, and whether marketed under the name(s) listed below or any other name:

1. Germander.
2. Lobelia.
3. Yohimbe.
4. Jin Bu haun.
5. Gamma Hydroxy Butrate (GHB); Gamma Butyrate (GBL); 1,4 Butanediol (BD).
6. Ephedra sinica, Ephedra. E. equisetina, Mahuang, Ephedra Alkaloid, Pseudoephedrine, Ephedrine or any other Ephedra derivatives or extracts.
7. Aristolochia spp., Aristolochia, Aristolochic acids, Aristolochia fangchi, Aristolochia spp., Asarum spp., Bragantia spp., Clematis spp., Akebia spp., Cocculus spp., Diploclisia spp., Menispernum spp., Sinomenium spp., Mu Tong, Fang ji, Guang fang ji, Fang Chi, Kan-Mokutsu, Mokutsu and any adulterated botanicals, botanical derivatives or other products that contain aristolochic acid, aristolochic acid derivatives or aristolochic acid extracts.
8. Stephania, Stephania spp, or any adulterated botanicals, botanical derivatives or any other products that contain Stephania, or any Stephania derivatives or extracts.
9. Magnolia, or any adulterated botanicals, botanical derivatives or any other products that contain Magnolia, or any Magnolia derivatives or extracts.
10. Kava, ava, ava pepper, awa, kava root, kava-kava, kawa, Piper methysticum Forst. f., Piper Methysticum G. Forst, rauschpfeffer, intoxicating pepper, kava kava, kava pepper, kawa kawa, kawa-kawa, kew, Piper methysticum, sakau, tonga, wurzelstock, yangona.
11. Glyburide, unlabeled glyburide, Liqiang 4, Liqiang Xiao Ke Ling (Liqiang Thirst Quenching Efficacious).
12. Bismacine, also known as Chromacine.
13. DMAA; dimethylamylamine; AMP Citrate; DMBA; and 4-amino-2-methylpentane citrate.
14. Kratom, Mitragyna speciosa, mitragynine extract, biak-biak, cratom, gratom, ithang, kakuam, katawn, kedemba, ketum, krathom, krton, mambog, madat, Maeng da leaf, nauclea, Nauclea speciosa, thang, either in natural or synthetic form or any of their derivatives, alkaloids or extracts.
15. Cannabidiol (CBD), cannabinoids, and any derivative, extract or constituent of cannabis, natural or synthetic.
16. Natural anabolic steroids; synthetic anabolic steroids.

All other terms and conditions remain unchanged.

**MEIL 1317 01 16**

**Page 1 of 1**



# EVANSTON INSURANCE COMPANY

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

## BANNED SUBSTANCES EXCLUSION

This endorsement modifies insurance provided under the following:

SPECIFIED PRODUCTS AND COMPLETED OPERATIONS INSURANCE POLICY
GENERAL LIABILITY (INCLUDING PRODUCTS AND COMPLETED OPERATIONS LIABILITY) INSURANCE POLICY
COMMERCIAL GENERAL LIABILITY COVERAGE PART
PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE PART
EXCESS LIABILITY INSURANCE POLICY

This insurance does not apply to claims arising from the importation, manufacture, distribution, sale, use or ingestion of the following, whether as the primary ingredient or in combination with other ingredients or as a synthetic or cloned version, and whether marketed under the name(s) listed below or any other name:

1.  Superdrol, methasterone, methyldrostanolone;

2.  Madol, pheraplex, desoxymethyltestosterone, DMT;

3.  Tren, trenbolone;

4.  Androstenedione, 4-androstenedione, 17-ketoestosterone;

5.  Turinabol, chlorodehydromethyltestosterone;

6.  C-4 Extreme;

7.  Jack3d;

8.  Dimethylamylamine, DMAA;

9.  Any natural or synthetic anabolic steroid;

10. Any other substance, ingredient or product that has been the subject of any United States Food and Drug Administration warning letter, ban or recall as of the inception date of this policy that was not disclosed in the application for this insurance;

11. Any other substance, ingredient or product, in any combination, that the United States Food and Drug Administration has determined as of the inception date of this policy is not a dietary ingredient or  a dietary supplement under the Dietary Supplement Health and Education Act of 1994 (DSHEA).

All other terms and conditions remain unchanged.

**MEIL 1321 02 13**



# EVANSTON INSURANCE COMPANY

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

## MOLD EXCLUSION

In consideration of the premium paid, it is hereby understood and agreed that this policy does not apply to any Claim based upon, arising out of, or in any way involving **Mold** or **Mold Event**.

Solely for the purposes of this endorsement:

**Mold** means any permanent or transient fungus, mold, mildew or mycotoxin, or any of the spores, scents or by-products resulting therefrom that exist, emanate from or move anywhere indoors or outdoors, regardless of whether they are proved to cause disease, injury or damage.

**Mold Event** means any actual, alleged or threat of contact with, exposure to, or inhalation, ingestion, absorption, discharge, dispersal, seepage, migration, release, escape, presence, growth or reproduction of **Mold**.

All other terms and conditions remain unchanged.

**ZZ-44002-01**                                                                                                      **Page 1 of 1**



# EVANSTON INSURANCE COMPANY

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

## CERTIFIED ACTS OF TERRORISM EXCLUSION

This endorsement modifies insurance provided under the following:

EXCESS LIABILITY INSURANCE POLICY
GENERAL LIABILITY (INCLUDING PRODUCTS AND COMPLETED OPERATIONS LIABILITY) INSURANCE POLICY
GENERAL LIABILITY INSURANCE (CLAIMS MADE) COVERAGE PART FOR SPECIFIED PROFESSIONS
MANUFACTURER'S PRODUCT ENGINEERING OR DESIGN ERRORS & OMISSIONS INSURANCE POLICY
SPECIFIED PRODUCTS AND COMPLETED OPERATIONS LIABILITY INSURANCE POLICY
EMPLOYMENT PRACTICES AND SALTING LIABILITY INSURANCE POLICY
SALTING LIABILITY INSURANCE POLICY

In consideration of the premium paid, it is hereby understood and agreed that this policy does not apply to any claim or portion thereof based upon, arising out of, or in any way involving any Certified Act of Terrorism.

**Certified Act of Terrorism** means an act that is certified by the Secretary of the Treasury, in consultation with the Secretary of  Homeland Security and the Attorney General of the United States, to be an act of terrorism pursuant to the federal Terrorism Risk Insurance Act. The federal Terrorism Risk Insurance of Act sets forth the following criteria for a Certified Act of Terrorism:

1.  The act resulted in insured losses in excess of $5 million in the aggregate attributable to all types of insurance subject to the Terrorism Risk Insurance Act; and

2.  The act is a violent act or an act that is dangerous to human life, property or infrastructure and is committed by an individual or individuals as part of an effort to coerce the civilian population of the United States or to influence the policy or affect the conduct of the United States Government by coercion.

All other terms and conditions remain unchanged.

ZZ-44003-03 01 15                                                                                        **Page 1 of 1**



☐ **Evanston Insurance Company**
☐ **Essex Insurance Company**

**MARKEL®**

## NutraPLUS Application

**Notice:** If the policy for which application is made is for claims made coverage: coverage applies only to "claims" first made during the "policy period," unless an extended reporting period is exercised.
Please read the policy carefully.
If space is insufficient to answer any question fully, attach a separate sheet. If response is none, state NONE.

### I. APPLICANT INFORMATION

A. Full Name of Applicant: _Vitamin Energy, LLC_

B. Principal business address: _391 Wilmington West Chester Pike, Suite 3, 403_

C. List of names of all predecessor organizations of the applicant: _N/A_

D. Audit Contact Name & Phone: _____

E. Website Address: _VitaminEnergy.com_

F. Years in business: _6 Months_     G. Proposed Effective Dates: _July 19, 2018_ to _indefinite_

H. Applicant is a: [ ] corporation     [ ] partnership     [ ] sole proprietorship     [X] limited liability company (LLC)
[ ] Other: Specify: _____

I. Is any principal, member, shareholder, officer or director of the Applicant associated with any other person, entity or organization that is involved in the manufacture, distribution or sale of dietary supplements?...........................................................................................................Yes [X] No [ ]

1. If Yes, please explain: _Vitamin Energy_

J. Is the Applicant controlled by, owned by, or commonly owned, affiliated or associated with any other organization?.............................................................................................................Yes [ ] No [X]

1. If Yes, provide details: _____

### II. DIETARY SUPPLEMENT DETAILS

A. Total estimated annual gross sales for products listed in Part II., Question B.:

|   | Domestic (USA) | Foreign |
|---|---|---|
| 1. Upcoming Year (Estimate) | $ 500K | $ 50 K |
| 2. Prior Year (Actual) | $0 | |

B. Provide the following information for those products the Applicant wants coverage for. If products below are identified by category, please attach a listing of all products within such category for which you seek coverage. NOTE: Only those products listed below will be considered for coverage.

| Products and Goods | Applicant acts as: | | | | | # of Yrs. | % of Gross Receipts | Products & Goods Sold to: | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|
| | M | W | R | I | MR | | | W | R | C | O |
| Vitamin Energy | X | | | | | | | | | | |
| | | | | | | | | | | | |
| | | | | | | | | | | | |

M: manufacturer  W: wholesaler  R: retailer  I: importer  MR: manufacturer's rep.  C: consumer direct  O: Other

MAGL 2053 05 16

**Markel NutraPLUS Application**

1. Are any of the above listed products marketed for children or for use in pre-natal or post-natal care? ..................................................................................................................... Yes [ ] No [X]

2. If Yes, identify such products: _____

C. Provide the name(s) and description(s) of all product(s) sold by the Applicant that is/are not dietary supplement(s) as defined under the Dietary Supplement Health and Education Act of 1994 (and amendments thereto) or by the FDA:

N/A

_____

NOTE: Any product containing an ingredient listed on endorsement: MEIL 1317 Exclusion - Designated Ingredients will not be covered unless a specific exception stating such ingredient as an exception to the exclusion is included in the policy offered by the Company. This endorsement is attached for review and acknowledgment by the Applicant.

D. Percentage of total estimated gross sales to be generated from the following type products:

Weight Loss _____0_____ %     Body Building & Sports Nutrition _____100_____ %     Sexual Enhancement & Erectile Dysfunction _____0_____ %

If any %, provide details, including product description, form and usage: Vitamin Energy is an energy shot used by athletes

E. Provide details on products the Applicant is seeking coverage for that contain the following ingredients or other ingredients designated on the MEIL 1317:

| Designated Ingredient | Name of the Product Containing the Ingredient | Ingredient Dosage | Estimated % of Sales |
|---|---|---|---|
| Creatine Yes[ ] No[X] | | | |
| Kava Yes[ ] No[X] | | | |
| Magnolia Yes[ ] No[X] | | | |
| Yohimbe Yes[ ] No[X] | | | |
| Identify Other: _____ | | | |

NOTE: Attach similar details for any other product containing any ingredient stated on the MEIL 1317. ALSO provide legible copies of labels for any product containing any of the designated ingredients with this application.

F. Provide a description of all mergers, acquisitions, and divestitures involving the Applicant within the past five (5) years: N/A

_____

_____

1. Is Applicant considering any merger, acquisition or divestiture within the next twelve (12) months? . Yes [ ] No [ ]

G. Provide a description of any recent or planned changes in mix of Applicant's products, including discontinuing any product: N/A

_____

H. Does the Applicant contract the manufacturing of any of its product(s) to others? ............................. Yes [X] No [ ]

1. If Yes, please provide the manufacturer's name and address, and attach a copy of the contract to this application: NVE Pharmaceuticals, 15 Whitehall Rd, Andover, NJ 07821

2. If Yes to II.H., to the best of the Applicant's knowledge has any company listed in question II.H.1. recalled or is it considering recalling a product that the Applicant was involved with? .......... Yes [ ] No [X]

**Markel NutraPLUS Application**

    3. If Yes to II.H.2., please provide details: _____

_____

I. Does the Applicant perform contract manufacturing of products devised, designed, or formulated by others? .................................................................................................Yes [ ] No [X]

    1. If Yes, please provide the names, addresses, and products of all entities for whom Applicant performs contract manufacturing: _____

    2. If Yes to II.I., to the best of the Applicant's knowledge has any company listed in question II.I.1. recalled or is considering recalling a product that the Applicant was involved with? .............Yes [ ] No [X]

    3. If Yes to II.I.2., please provide details: _____

_____

J. If the Applicant is a wholesaler or retailer of domestically sourced products, please list the manufacturers:_____

_____

## III. PROCESSING AND QUALITY CONTROL

A. Is the Applicant a member of the Natural Products Association (NPA) or NSF International? ...........Yes [ ] No [X]

B. Is the Applicant compliant with FDA Current Good Manufacturing Practices? ................................Yes [X] No [ ]

C. Has the Applicant ever been found to be out of compliance with FDA Good Manufacturing Practices? ........Yes [ ] No [X]

D. In the past five years, has the FDA issued a Warning Letter or a Form FDA 483 to the Applicant? ...Yes [ ] No [X]

    1. If Yes, attach a copy of each notification and all relevant documents.

E. Has the Applicant or will the Applicant use ingredients imported from foreign suppliers? ..................Yes [ ] No [X]

    1. If Yes, please list the ingredients and describe the Applicant's Quality Assurance Program and countries of origin:

_____

F. Does the Applicant have a quality control and testing procedure? ..................................................Yes [X] No [ ]

    1. If Yes, how long are quality control and testing records kept? *2 yrs by NVE*

G. Can the Applicant identify its own product(s) from those of competitors by product packaging, design, labeling and formulation? ..........................................................................................................Yes [X] No [ ]

H. Do records indicate to whom the Applicant's product was sold and the date of sale? ..................Yes [X] No [ ]

I. Does the Applicant have a full time employee in charge of quality control and testing? ...............Yes [ ] No [X]

J. Does the Applicant conduct pre-production testing of raw materials? .........................................Yes [X] No [ ]

K. Do the Applicant's records show a specific identification number for each package sold? ..........Yes [X] No [ ]

L. Does the Applicant have a program to withdraw known or suspected defective products from the market? ....................................................................................................................Yes [X] No [ ]

M. Has the Applicant or any other entity ever recalled or is the Applicant or any such entity(ies) considering recalling Applicant's product or an ingredient or component thereof? ...........................Yes [ ] No [X]

    1. If Yes, please provide details: _____

_____

_____

N. Is the Applicant aware of or have knowledge of any fact, incident, circumstance, situation, condition, defect or suspected defect which may lead to a recall? ................................................................Yes [ ] No [X]

    1. If Yes, please provide details: _____

_____

_____

**Markel NutraPLUS Application**

O. Have any of the Applicant's products or ingredients or components thereof, ever been the subject of any investigation, enforcement action, or notice of violation of any kind by any governmental, quasi-governmental, administrative, regulatory or oversight body? ...........................................Yes [ ] No [X]

   1. If Yes, please provide details: _____

P. Are imported products, materials and ingredients tested for contamination and verification that they conform to what was ordered? ...............................................................................................Yes [X] No [ ]

Q. Are the Applicant's formulas and designs reviewed, tested or verified by outside labs? .................Yes [X] No [ ]

## IV. LABELS

A. Are the Applicant's labels fully compliant with all applicable FDA and FTC Regulations? .................Yes [X] No [ ]

B. Does the Applicant use outside legal counsel to review and approve labeling? .............................Yes [X] No [ ]

C. Have the Applicant's labels ever been found to be non-compliant with FDA or FTC Regulations? .....Yes [ ] No [X]

   1. If Yes, please provide details: _____

D. Do any of the Applicant's labels make health claims for specific diseases or health-related conditions? ...........................................................................................................................Yes [ ] No [X]

E. Do all the Applicant's labels include a disclaimer that the FDA has not evaluated the claims on its labels and that its products are not intended to diagnose, treat, cure or prevent any disease? ...............Yes [X] No [ ]

F. Do all the Applicant's labels include specific dosage directions and warnings? ...........................Yes [X] No [ ]

## V. ADVERTISING

A. Is the Applicant's advertising fully compliant with all applicable FDA and FTC Regulations? .............Yes [X] No [ ]

B. Does the Applicant use outside legal counsel to review the Applicant's advertising and confirm it is in compliance with FDA and FTC Regulations? ...............................................................................Yes [X] No [ ]

C. Has the FDA or FTC ever contacted the Applicant about the Applicant's advertising? .....................Yes [ ] No [X]

   1. If Yes, please provide details: _____

## VI. LOSS HISTORY

A. Has any claim for Product or General Liability been made against any person(s) or organization(s) proposed for this insurance during the last five (5) years? ...............................................................Yes [ ] No [X]

   1. If Yes, provide five (5) year hard copy, currently valued, carrier produced loss runs for all claims, including those against any predecessor.

   2. Attach a detailed description for any loss exceeding $10,000.

B. Is (are) any person(s) or organization(s) proposed for this insurance aware of any fact, incident, circumstance, situation, condition, defect or suspected defect which may result in a Product or General Liability claim such as would fall under the proposed insurance? .........................................Yes [ ] No [X]

   1. If Yes, provide details: _____

## VII. INSURANCE INFORMATION

A. Requested Coverage*:

   1. Limits of Liability Requested: $ 2 M _____ / $ _____

   2. Deductible Requested: $ 10,000 _____

   *The Company does not guarantee to offer a quote nor does it guarantee requested limits or attachment.

B. Current Coverage:

   1. Current Carrier: N/A      2. Limits of Liability: N/A

   3. Deductible or SIR: N/A      4. Premium: N/A

**Markel NutraPLUS Application**

5. Expiration Date: _N/A_    6. Retroactive / Prior Acts Date(s): _N/A_

7. Is the current carrier offering renewal? ........................................................... Yes [ ] No [ ] _N/A_

C. Has any insurer declined, canceled, or nonrenewed any Product Liability Insurance or any similar insurance on behalf of any person(s) or organization(s) proposed for this insurance? ....................... Yes [ ] No [X]

    1. If Yes, provide details. _____

---

## NOTICE TO THE APPLICANT - PLEASE READ CAREFULLY

No fact, incident, circumstance, situation, condition, defect or suspected defect indicating the probability of a claim or action for which coverage may be afforded by the proposed insurance is now known by any person(s) or organization(s) proposed for this insurance other than that which is disclosed in this application. It is agreed by all concerned that if there is knowledge of any such fact, incident, circumstance, situation, condition, defect or suspected defect any claim subsequently emanating therefrom shall be excluded from coverage under the proposed insurance.

This application, information submitted with this application and all previous applications related hereto and material changes to any of the foregoing of which the underwriting manager, Company and/or affiliates thereof receives notice is on file with the underwriting manager, Company and/or affiliates thereof and is considered physically attached to and part of the policy if issued. The underwriting manager, Company and/or affiliates thereof will have relied upon this application and all such attachments in issuing the policy.

For the purpose of this application, the undersigned authorized agent of the person(s) and organization(s) proposed for this insurance declares that to the best of his/her knowledge and belief, after reasonable inquiry, the statements in this application and in any attachments, are true and complete. The underwriting manager, Company and/or affiliates thereof are authorized to make any inquiry in connection with this application. Signing this application does not bind the Company to provide or the Applicant to purchase the insurance.

If the information in this application and any attachment materially changes between the date this application is signed and the effective date of the policy, the Applicant will promptly notify the underwriting manager, Company and/or affiliates thereof, who may modify or withdraw any outstanding quotation or agreement to bind coverage.

If the policy for which application is made is for claims made coverage, the undersigned declares that the person(s) and organization(s) proposed for this insurance understand that coverage for which this application is made applies:

(i)    Only to "claims" first made during the "policy period"; unless an extended reporting period is exercised. If an extended reporting period is exercised, the policy shall also apply to "claims" first made during the extended reporting period; and

(ii)    Unless amended by endorsement, the limits of liability contained in the policy shall be reduced, and may be completely exhausted by "claim expenses" and, in such event, the Company will not be liable for "claim expenses" or the amount of any judgment or settlement to the extent that such costs exceed the limits of liability in the policy and unless amended by endorsement, "claim expenses" shall be applied against the "deductible".

## WARRANTY

I/We warrant to the Company, that I/We understand and accept the notice stated above and that the information contained herein is true and that it shall be the basis of the policy and deemed incorporated therein, should the Company evidence its acceptance of this application by issuance of a policy. I/We authorize the release of claim information from any prior insurer to the underwriting manager, Company and/or affiliates thereof. The Applicant has a continuing duty to supplement, correct and update the information in this Application up to the time a binder is issued.

Note: This application is signed by undersigned authorized agent of the Applicant(s) on behalf of the Applicant(s) and its owners, principals, partners, directors, officers and employees.

Must be signed by the owner, principal, partner, executive officer or equivalent within 60 days of the proposed effective date.

_Rich Gorman on behalf of Vitamin Energy, LLC_    _Manager_
Name of Applicant    Title

_[signature]_    _7/19/18_
Signature of Applicant    Date

**Notice to Applicants:** Any person who knowingly and with intent to defraud any insurance company or other person files an application for insurance or statement of claim containing any materially false information or conceals for the purpose of misleading, information concerning any fact material thereto, commits a fraudulent insurance act, which is a crime and subjects the person to criminal and civil penalties.

MAGL 2053 05 16

B

AO 440 (Rev. 06/12) Summons in a Civil Action

# UNITED STATES DISTRICT COURT
### for the
### Eastern District of Michigan

International IP Holdings, LLC, et al.,

*Plaintiff,*

v.

Vitamin Energy, LLC,

*Defendant.*

Case No. 2:19–cv–11716–DPH–MKM
Hon. Denise Page Hood

### SUMMONS IN A CIVIL ACTION

To:  Vitamin Energy, LLC

A lawsuit has been filed against you.

Within 21 days after service of this summons on you (not counting the day you received it) - or 60 days if you are the United States or a United States agency, or an officer or employee of the United States described in Fed. R. Civ. P. 12 (a)(2) or (3) - you must serve on the plaintiff an answer to the attached complaint or a motion under Rule 12 of the Federal Rules of Civil Procedure.  The answer or motion must be served on the plaintiff or plaintiff s attorney, whose name and address are:

Marc Lorelli
1000 Town Center
22nd Floor
Southfield, MI
48075

If you fail to respond, judgment by default may be entered against you for the relief demanded in the complaint.  You also must file your answer or motion with the court.

*DAVID J. WEAVER, CLERK OF COURT*

By:  s/ S Krause _____
    *Signature of Clerk or Deputy Clerk*



Date of Issuance:  June 10, 2019

████████████████████████████████████████████████████

AO 440 (Rev. 06/12) Summons in a Civil Action

## PROOF OF SERVICE

*(This section should not be filed with the Court unless required by Fed. R. Civ. P. 4(l))*

Case No. 2:19–cv–11716–DPH–MKM

This summons for *(name of individual and title, if any)* _____

was received by me on *(date)* _____

[  ]  I personally served the summons on the individual at *(place)* _____

_____ on *(date)*_____ ; or

[  ]  I left the summons at the individual's residence or usual place of abode with *(name)* _____

_____ a person of suitable age and discretion who resides there,

on *(date)* _____ , and mailed a copy to the individual's last known address; or

[  ]  I served the summons on *(name of individual)* _____ , who is

designated by law to accept service of process on behalf of *(name of organization)* _____

_____ on (date) _____ ; or

[  ]  I returned the summons unexecuted because _____ ; or

[  ]  Other: *(specify)*: _____

My fees are $ _____ for travel and $ _____ for services, for a total of $ _____ .

I declare under the penalty of perjury that this information is true.

Date: _____

_____
*Server's Signature*

_____
*Printed Name and Title*

_____
*Server's address*

Additional information regarding attempted service, etc.:

████████████████████████████████████████████████████

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN

| | |
|---|---|
| **INTERNATIONAL IP HOLDINGS, LLC,** a Michigan limited liability company, **and INNOVATION VENTURES, LLC,** a Michigan limited liability company, | |
| | Case No. _____ |
| *Plaintiffs,* | |
| | *INJUNCTIVE RELIEF REQUESTED* |
| **v.** | |
| | *JURY TRIAL DEMANDED* |
| **VITAMIN ENERGY, LLC,** a Delaware limited liability company, | |
| *Defendant.* | |

## PLAINTIFFS INTERNATIONAL IP HOLDINGS, LLC AND INNOVATION VENTURES, LLC'S COMPLAINT



## I.  PARTIES

1.  Plaintiff International IP Holdings, LLC ("IIPH") is a Michigan limited liability company located in Bloomfield Hills, Michigan. IIPH is the owner of the intellectual property asserted against Defendant in this action.

2.  Plaintiff Innovation Ventures, LLC ("Innovation Ventures") (IIPH and Innovation Ventures collectively "Plaintiffs") is a Michigan limited liability company with its principal place of business in Farmington Hills, Michigan. Innovation Ventures is the exclusive licensee of the intellectual property rights asserted against Defendant in this action.

3.  Upon information and belief, Defendant Vitamin Energy, LLC ("VE" OR "Defendant") is a Delaware limited liability company, having its principle office in New York, New York.

## II.  JURISDICTION AND VENUE

4.  This Complaint includes the following claims under federal law: (1) trademark infringement under 15 U.S.C. § 1114, (2) false and misleading descriptions and designations of affiliation, connection, association, origin, sponsorship, and approval under 15 U.S.C. § 1125(a)(1)(A); (3) false advertising under § 1125(a)(1)(B); (4) common law trademark infringement, (5) indirect trademark infringement; and (6) dilution under 15 U.S.C. § 1125(c).



1

5.  This Complaint includes the following claim under Michigan law: unfair competition under MCL § 445.903.

6.  This Court has federal question subject matter jurisdiction over the federal claims pursuant to 28 U.S.C. § 1331, 28 U.S.C. § 1338, and 15 U.S.C. § 1121.

7.  This Court has supplementary subject matter jurisdiction over the state law claims pursuant to 28 U.S.C. § 1367, as the claims are so related to the federal claims that they form part of the same case and controversy under Article III of the United States Constitution.

8.  This Court has specific personal jurisdiction over Defendant, because, as described more thoroughly herein, it purposefully availed itself to, and enjoys the benefits of, the laws of Michigan, it had sufficient minimum contacts with the State of Michigan and this District, this action arises out of these contacts, and exercising jurisdiction over Defendant would be reasonable and comport with the requirements of due process.

9.  Exercise of jurisdiction over Defendant is proper under MCL § 600.705 as it: (a) transacts business within Michigan, (b) has done and caused an act to be done and consequence to occur in Michigan in an action for tort; and (c) owns, uses, and possesses personal property within Michigan.

10. Venue is proper under 28 U.S.C. § 1391.



2

### III.  FACTS COMMON TO ALL COUNTS

**A.  Asserted Intellectual Property**

11.  Plaintiffs own and possess full legal rights to enforce a family of trademarks (hereinafter "5-HOUR ENERGY Trademarks") that are used in connection with the marketing and sale of 5-HOUR ENERGY® branded products. Many of the 5-HOUR ENERGY Trademarks have received federal registration, including, but not limited to, the following registrations (copies of the Certificates of Registration are attached hereto as Exhibits A-F):

| Mark | Registration No. | Registration Date | Class of Goods |
|---|---|---|---|
| 5-HOUR ENERGY | 4,004,225 | Aug. 2, 2011 | (Class 5) Dietary supplements; <br><br>(Class 32) energy shots, namely, energy drinks |
| *5-hour ENERGY* | 4,104,670 | Feb. 28, 2012 | (Class 5) Dietary supplements; <br><br>(Class 32) Non-alcoholic drinks, namely, energy drinks |
| *5-hour ENERGY* | 4,134,079 | May 1, 2012 | (Class 5) Dietary supplements; <br><br>(Class 32) (Non-alcoholic drinks, namely, energy shots |
| | 4,120,360 | Apr. 3, 2012 | (Class 5) Dietary supplements; <br><br>(Class 32) Non-alcoholic drinks, namely, energy shots |



3

| | | | |
|---|---|---|---|
| | 4,116,951 | Mar. 27, 2012 | (Class 5) Dietary supplements; (Class 32) Non-alcoholic drinks, namely, energy shots |
| | 4,120,361 | Apr. 3, 2012 | (Class 5) Dietary supplements; (Class 32) Non-alcoholic drinks, namely, energy shots |

12.   The foregoing trademark registrations are all current, in full force and effect, and related to trademarks that are inherently distinctive or have become distinctive through acquisition of secondary meaning. Additionally, the foregoing trademarks are famous marks as contemplated by 15 U.S.C. § 1125(c).

13.   As previously explained by the United States Circuit Court for the Sixth Circuit in *Innovation Ventures, LLC v. N.V.E., Inc.*, 694 F.3d 723, 730 (6th Cir. 2012), 5-HOUR ENERGY® is a suggestive mark.

14.   The 5-HOUR ENERGY Trademarks are incontestable and conclusively valid.

15.   Plaintiffs use the 5-HOUR ENERGY Trademarks in connection with advertising, distribution, and sale of various products including, 5-HOUR ENERGY® branded dietary supplements that are commonly categorized as "liquid energy shots" ("5-HOUR ENERGY Products").



4

16. Plaintiffs have devoted significant time, effort, and resources to create consumer recognition by developing, advertising, and promoting their 5-HOUR ENERGY Products.

17. The 5-HOUR ENERGY Products are extensively and widely advertised through various media outlets, including network and cable television, radio, the internet, and traditional print. Since their introduction, the 5-HOUR ENERGY Products have received extensive news coverage by national, regional, and local print and broadcast media. Indeed, in 2009, Advertising Age Magazine recognized 5-HOUR ENERGY as one of *America's Hottest Brands*.

18. As a result of Plaintiffs' efforts, the 5-HOUR ENERGY Products have defined the liquid energy shot market and are known within the industry for being of the highest quality. As the best-known liquid energy shot on the market, 5-HOUR ENERGY Products are sold in over 100,000 locations throughout the United States. Moreover, since the first sale in 2004, billions of 5-HOUR ENERGY Products have been sold in the United States.

19. As a result of Plaintiffs' efforts, they have accumulated considerable goodwill in their distinctive and famous 5-HOUR ENERGY Trademarks.

20. As a result of continuous use, ubiquitous promotion, and extensive sales, Plaintiffs' 5-HOUR ENERGY Trademarks enjoy substantial recognition, fame, and



5

notoriety throughout the United States and are recognized by the general and consuming public as emanating from Plaintiffs.

21.  Plaintiffs have consistently used their registered Trademarks in conjunction with the letter R enclosed by a circle and/or other indicia sufficient to provide notice of registration.

22.  Examples of Plaintiffs' 5-HOUR ENERGY Products are shown below:



## B.  Defendant's Infringing Products and Activities

23.  Defendant markets, manufactures, distributes, offers for sale, sells, advertises, and promotes liquid energy shots and in commerce ("Defendant's Products").

24.  In connection with Defendant's Products, Defendant uses words, terms, names, symbols, devices, and/or combinations, including 7 HOURS of ENERGY, that infringe upon and are confusingly similar to Plaintiffs' 5-HOUR ENERGY Trademarks.



6

25.    On information and belief, Defendant has also induced others to market, manufacture, distribute, offer for sale, sell, advertise, and promote liquid energy shots in commerce in connection with products and/or containers thereof that infringe upon and are confusingly similar to Plaintiffs' 5-HOUR ENERGY Trademarks.

26.    Defendant's activities constitute false designation of origin, false or misleading description of fact, and/or false or misleading representations of fact.

27.    In a number of cases, courts and juries have consistently found that similar marks infringed Plaintiffs' Trademarks: (1) "6 HOUR ENERGY" and "up to 7 HOURS of ENERGY," *Innovation Ventures, LLC v. N2G Distrib.*, Case No. 08-CV-10983 (E.D. Mich.); and (2) "6 HOUR POWER", *Innovation Ventures, LLC v. N.V.E., Inc.*, Case No. 08-11867 (E.D. Mich.).

28.    Examples of Defendant's infringing and misleading uses of confusingly similar marks are shown below:





7



29.    On information and belief, Defendant are aware of Plaintiffs' 5-HOUR ENERGY Products and Trademarks.

30.    On information and belief, Defendant engaged in its infringing and misleading activities with actual knowledge and notice of Plaintiffs' 5-HOUR ENERGY Trademarks with the willful intent to cause confusion, cause mistake, and to deceive the public, consumers, and businesses as to the affiliation, connection, or association between Defendant's Products and Plaintiffs.

31.    Defendant does not have, and never had, consent, license, approval or other authorization to use Plaintiffs' 5-HOUR ENERGY Trademarks in any manner.

32.    Defendant also advertises its product with a series of misleading and false statements, including false and misleading comparative advertising and claims that Defendant's products provide steroid-like athletic performance enhancement. Examples are shown below:



8

# PERFORM+
**Energy On Call**

Many factors influence performance. VitaminEnergy® contains performance-enhancing supplements like Vitamin B12 that help in the production of red blood cells, caffeine to provide energy and CBD as an anti-inflammatory. The synergy provided by these nutrients allow VitaminEnergy® to deliver improved performance without the use of harmful steroids or steroid-like compounds.

**SHOP**



**FORMULATED FOR ATHLETES**

The synergy provided by these nutrients allow **VitaminEnergy®** to deliver improved performance without the use of harmful steroids or steroid-like compounds.

## Professional Athletes

VitaminEnergy® was originally designed as the energy shot of choice for professional athletes. If you compete at the highest levels in sports, VitaminEnergy® gives you a healthier, better for you shot of energy to maximize your performance.





## IV.  CLAIMS FOR RELIEF

### A.  Count I: Trademark Infringement under 15 U.S.C. § 1114

33.    Plaintiffs repeat and re-allege the allegations of paragraphs 1–32 as if fully set forth herein.

34.    Plaintiffs own and possess full legal right to enforce the 5-HOUR ENERGY trademark with U.S. Registration No. 4,004,225, which is valid, registered, and uncontestable.

35.    Defendant's infringing activities, including those described herein, constitute willful infringement of Plaintiffs' exclusive rights in the 5-HOUR ENERGY trademark with U.S. Registration No. 4,004,225 in violation of federal trademark laws, including 15 U.S.C. § 1114.

36.    As willfully intended, Defendant's use of copies, reproductions, and colorable imitations of the 5-HOUR ENERGY trademark with U.S. Registration No. 4,004,225 is likely to cause, has caused, and continues to cause confusion, mistake, and deception concerning the source, sponsorship, or approval of Defendant's goods and services.

37.    Defendant's infringing activities will continue unless restrained and enjoined.

38.    Defendant's infringing activities have directly and proximately caused and continue to cause irreparable and economic injury to Plaintiffs, including loss of good



10

will, reputational harms, loss of business, loss of sales, loss of revenues, and loss of profits.

39.    Plaintiffs are entitled to compensatory damages, including expectation and consequential, non-pecuniary damages, pecuniary damages, exemplary damages, aggravated damages, restitutionary damages, nominal damages, Defendant's profits, and Plaintiffs' lost profits.

40.    Monetary damages and other remedies at law are insufficient to fully compensate Plaintiffs for their injuries, and Plaintiffs are entitled to equitable relief, including preliminary and permanent injunctive relief.

41.    Plaintiffs are entitled to have all of Defendant's infringing products and all related materials likely to cause confusion, mistake, and/or deception delivered up and destroyed.

## B.    Count II: False and Misleading Descriptions and Designations of Affiliation, Connection, Association, Source, Sponsorship, and Approval under 15 U.S.C. § 1125(a)(1)(A)

42.    Plaintiffs repeat and re-allege the allegations of paragraphs 1–41 as if fully set forth herein.

43.    As willfully intended, Defendant's false, misleading, confusing, and deceptive activities, including those described herein, constitute misleading descriptions that are likely to cause, have caused, and continue to cause confusion, mistake, and



deception as to the affiliation, connection, association, source, sponsorship, and approval of Defendant's goods or commercial activities.

44.    Defendant's false, misleading, confusing, and deceptive activities will likely continue unless restrained and enjoined.

45.    Defendant's false, misleading, confusing, and deceptive activities have directly and proximately caused and continue to cause irreparable and economic injury to Plaintiffs, including loss of good will, reputational harms, loss of business, loss of sales, loss of revenues, and loss of profits.

46.    Plaintiffs are entitled to compensatory damages, including expectation and consequential, non-pecuniary damages, pecuniary damages, exemplary damages, aggravated damages, restitutionary damages, nominal damages, Defendant's profits, and Plaintiffs' lost profits.

47.    Monetary damages and other remedies at law are insufficient to fully compensate Plaintiffs for their injuries, and Plaintiffs are entitled to equitable relief, including preliminary and permanent injunctive relief.

48.    Plaintiffs are entitled to have Defendant's infringing products and all related false, misleading, confusing, and/or deceptive materials delivered up and destroyed.



### C. Count III: False Advertising under 15 U.S.C. § 1125(a)(1)(B)

49.    Plaintiffs repeat and re-allege the allegations of paragraphs 1–48 as if fully set forth herein.

50.    As willfully intended, Defendant's false and misleading commercial advertising, including that which is described herein, misrepresents the nature, characteristics, and qualities of Defendant's Products and commercial activities.

51.    Defendant's false and misleading commercial advertising will likely continue unless restrained and enjoined.

52.    Defendant's false and misleading commercial advertising have directly and proximately caused and continue to cause irreparable and economic injury to Plaintiffs, including loss of good will, reputational harms, loss of business, loss of sales, loss of revenues, and loss of profits.

53.    Plaintiffs are entitled to compensatory damages, including expectation and consequential, non-pecuniary damages, pecuniary damages, exemplary damages, aggravated damages, restitutionary damages, nominal damages, Defendant's profits, and Plaintiffs' lost profits.

54.    Monetary damages and other remedies at law are insufficient to fully compensate Plaintiffs for their injuries, and Plaintiffs are entitled to equitable relief, including preliminary and permanent injunctive relief.



13

55.    Plaintiffs are entitled to have Defendant's false and misleading commercial advertising delivered up and destroyed.

### D.  Count IV: Common Law Trademark Infringement

56.    Plaintiffs repeat and re-allege the allegations of paragraphs 1–55 as if fully set forth herein.

57.    Plaintiffs were the first to use their 5-HOUR ENERGY Trademarks on a 2-ounce liquid shot product in commerce.

58.    Plaintiffs have continuously used their Trademarks in commerce since their respective first uses.

59.    As a result of continuous and notorious use, Plaintiffs' Trademarks have become widely known and recognized by the public mind as a source identifier of Plaintiffs' products, have acquired immense good will, and are strongly associated with a reputation for quality and performance.

60.    As willfully intended, Defendant's use of copies, reproductions, and colorable imitations of the 5-HOUR ENERGY Trademarks are likely to cause, have caused, and continue to cause confusion, mistake, and deception concerning the source, sponsorship, and approval of Defendant's products and services.

61.    Defendant's infringing activities will likely continue unless restrained and enjoined.



14

62.    Defendant's infringing activities have directly and proximately caused and continue to cause irreparable and economic injury to Plaintiffs, including loss of good will, reputational harms, loss of business, loss of sales, loss of revenues, and loss of profits.

63.    Plaintiffs are entitled to compensatory damages, including expectation and consequential, non-pecuniary damages, pecuniary damages, exemplary damages, aggravated damages, restitutionary damages, nominal damages, Defendant's profits, and Plaintiffs' lost profits.

64.    Monetary damages and other remedies at law are insufficient to fully compensate Plaintiffs for their injuries, and Plaintiffs are entitled to equitable relief, including preliminary and permanent injunctive relief.

65.    Plaintiffs are entitled to have Defendant's infringing products and all related materials likely to cause confusion, mistake, and/or deception delivered up and destroyed.

## E.  Count V: Indirect Trademark Infringement

66.    Plaintiffs repeat and re-allege the allegations of paragraphs 1–65 as if fully set forth herein.

67.    Defendant has induced others to use, contributed to others' use of, and directed others under Defendant's control to use words, terms, names, symbols, devices, and/or combinations thereof in connection with goods and containers for goods in



15

commerce that are likely to cause, have caused, and continue to cause confusion, mistake, and deception as to the affiliation, connection, association, source, sponsorship, and approval of Defendant's goods and commercial activities.

68.    As willfully intended, Defendant's actions sufficiently and necessarily caused and continuing to cause others to directly infringe Plaintiffs' 5-HOUR ENERGY Trademarks.

69.    Defendant's indirect infringement is likely to continue unless restrained and enjoined.

70.    Defendant's indirect infringement has directly and proximately caused and continues to cause irreparable injury and economic injury to Plaintiffs, including loss of good will, reputational harms, loss of business, loss of sales, loss of revenues, and loss of profits.

71.    Plaintiffs are entitled to compensatory damages, including expectation and consequential, non-pecuniary damages, pecuniary damages, exemplary damages, aggravated damages, restitutionary damages, nominal damages, Defendant's profits, and Plaintiffs' lost profits.

72.    Monetary damages and other remedies at law are insufficient to fully compensate Plaintiffs for their injuries, and Plaintiffs are entitled to equitable relief, including preliminary and permanent injunctive relief.



73.    Plaintiffs are entitled to have Defendant's infringing products and all related materials likely to cause confusion, mistake, and/or deception delivered up and destroyed.

### F.    Count VI: Dilution under 15 U.S.C. § 1125(c)

74.    Plaintiffs repeat and re-allege the allegations of paragraphs 1–73 as if fully set forth herein.

75.    As willfully intended, Defendant's activities are likely to dilute, have diluted, and continue to dilute Plaintiffs' 5-HOUR ENERGY Trademarks by "blurring", as Defendant's activities are likely to cause, have caused, and continue to cause an association arising from the similarity between Defendant's Products and marks with Plaintiffs' 5-HOUR ENERGY Products and Trademarks, which impairs the 5-HOUR ENERGY Trademarks' distinctiveness and notoriety.

76.    As willfully intended, Defendant's activities are likely to dilute, have diluted, and continue to dilute Plaintiffs' 5-HOUR ENERGY Trademarks by "tarnishment", as Defendant activities are likely to cause, have caused, and are causing an association between Defendant's Products and Plaintiffs' 5-HOUR ENERGY Trademarks, which harms and tarnishes the 5-HOUR ENERGY Trademarks, including the 5-HOUR ENERGY trademark with U.S. Registration No. 4,004,225.

77.    Defendant's dilutive activities will likely continue unless restrained and enjoined.



17

78.    Defendant's dilutive activities directly and proximately caused and continue to cause irreparable and economic injury to Plaintiffs, including loss of good will, reputational harms, loss of business, loss of sales, loss of revenues, and loss of profits.

79.    Plaintiffs are entitled to compensatory damages, including expectation and consequential, non-pecuniary damages, pecuniary damages, exemplary damages, aggravated damages, restitutionary damages, nominal damages, Defendant's profits, and Plaintiffs' lost profits.

80.    Monetary damages and other remedies at law are insufficient to fully compensate Plaintiffs for their injuries, and Plaintiffs are entitled to equitable relief, including preliminary and permanent injunctive relief. Nevertheless, Plaintiff is entitled to an injunction under 15 U.S.C. § 1125(c)(5).

81.    Plaintiffs are entitled to have Defendant's infringing products and all related materials likely to cause confusion, mistake, and/or deception delivered up and destroyed.

## G.  Count VII: Unfair Competition under MCL § 445.903

82.    Plaintiffs repeat and re-allege the allegations of paragraphs 1–81 as if fully set forth herein.

83.    As willfully intended, Defendant has engaged in unfair, unconscionable, and deceptive acts and practices, including those described herein, in the conduct of trade



18

and commerce that have a probability of confusion and misunderstanding as to the source, sponsorship, approval, and certification of Defendant's Products.

84.  Defendant's unfair, unconscionable, and deceptive acts will continue unless restrained and enjoined.

85.  Plaintiffs are entitled to compensatory damages, including expectation and consequential, non-pecuniary damages, pecuniary damages, exemplary damages, aggravated damages, restitutionary damages, nominal damages, Defendant's profits, and Plaintiffs' lost profits.

86.  Defendant's unfair, unconscionable, and deceptive acts have directly and proximately caused and continue to cause irreparable injury and economic injury to Plaintiffs, including loss of good will, reputational harms, loss of business, loss of sales, loss of revenues, and loss of profits.

87.  Monetary damages and/or other remedies at law are insufficient to fully compensate Plaintiffs for their injuries, and Plaintiffs are entitled to equitable relief, including preliminary and permanent injunctive relief.

## **PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiffs pray for judgment against Defendant as follows:

A.  A determination that Defendant has infringed Plaintiffs' 5-HOUR ENERGY trademark with U.S. Registration No. 4,004,225 in violation of 15 U.S.C. §



19

1114, Defendant's infringement was willful, Plaintiffs have been damaged by infringement, and Defendant are liable to Plaintiffs for such infringement;

B.    A determination that Defendant has violated 15 U.S.C. § 1125(a)(1)(A), Defendant's violation was willful, Plaintiffs have been damaged by such violation, and Defendant is liable to Plaintiffs for such violation;

C.    A determination that Defendant has violated 15 U.S.C. § 1125(a)(1)(B), Defendant's violation was willful, Plaintiffs have been damaged by such violation, and Defendant is liable to Plaintiffs for such violation;

D.    A determination that Defendant has infringed Plaintiffs' 5-HOUR ENERGY Trademarks under common law, Defendant's infringement was willful, Plaintiffs have been damaged by such violation, and Defendant is liable to Plaintiffs for such infringement;

E.    A determination that Defendant has indirectly infringed Plaintiffs' Trademarks by inducing others to infringe, contributing to others' infringement of, and directing others under its control to infringe Plaintiffs' 5-HOUR ENERGY Trademarks, Defendant's indirect infringement was willful, Plaintiffs have been damaged, and Defendant is liable to Plaintiffs for such indirect infringement;

F.    A determination that Defendant has violated 15 U.S.C. § 1125(c), Defendant's violation was willful, Plaintiffs have been damaged by such violation, and Defendant is liable to Plaintiffs for such violation;



20

G.    A determination that Defendant violated MCL § 445.903, Defendant's violation was willful, Plaintiffs have been damages by such violation, and Defendant is liable to Plaintiffs for such violation;

H.    An award of damages sufficient to compensate Plaintiffs for its injuries or, alternatively, an award equal to Defendant's wrongfully obtained profits, whichever is greater;

I.    An award trebling damages or, alternatively, trebling Defendant's wrongfully obtained profits, whichever is greater, plus Plaintiffs' attorneys' fees and costs, pursuant to 15 U.S.C. § 1117;

J.    A declaration that this case is an exceptional case and an award of attorneys' fees;

K.    An award of Plaintiffs' taxable costs of this civil action, including interest;

L.    An award of any additional costs and disbursements incurred as a result of bringing this action;

M.    Under all claims for relief, a preliminary and permanent injunction that enjoins Defendant, its officers, employees, agents, successors and assignees, and all those in active concert and participation with them, and each of them who receives notice directly or otherwise of such injunctions, from:



1.     using, inducing others to use, contributing to others' use of, or directing others to use any simulation, copy, reproduction, or colorable imitation of the 5-HOUR ENERGY Trademarks, including 7-HOUR ENERGY and 7 HOURS of ENERGY, in connection with liquid energy shots without Plaintiffs' express authorization;

2.     importing, manufacturing, producing, distributing, circulating, selling, offering for sale, advertising, promoting, or displaying any product or services using any simulation, copy, reproduction, or colorable imitation of the 5-HOUR ENERGY Trademarks, or inducing others to, contributing to others' doing, or directing others to do the same, without Plaintiffs' express authorization; and

3.     using, inducing others to use, contributing to others' use of, or directing others to use any false designation of origin or false description (including, without limitation, any letters, symbols, or designs infringing or encroaching upon Plaintiffs' Trademarks) or performing any act, which can, or is likely to, lead members of the trade or public to believe that any service or product manufactured, distributed or sold by Defendant are in any manner associated with Plaintiffs or Plaintiffs' 5-HOUR ENERGY Trademarks, or any other product sold, manufactured, licensed, sponsored, approved or authorized by Plaintiffs.

N.    Defendant be ordered to:



22

1.    file with the Court and serve upon the Plaintiffs, within thirty (30) days after the service of the injunction upon Defendant, a report in writing under oath setting forth in detail the manner and form in which the Defendant has complied with the injunction and judgment entered pursuant to this Complaint;

2.    deliver for destruction all products, labels, tags, signs, prints, packages, videos, advertisements, in its possession or under its control, bearing or using 6-HOUR ENERGY and 6-HR ENERGY or any other simulation, reproduction, or colorable imitation of Plaintiffs' marks, and all plates, molds, matrices and other means of making the same, pursuant to 15 U.S.C. § 1118;

3.    file with the Court and provide to Plaintiffs an accounting of all sales and profits realized by Defendant for liquid shot products; and

4.    permit Plaintiffs, and/or auditors employed or contracted by Plaintiffs, to audit and inspect the books, records, and premises of Defendant and related entities for a period of six (6) months after entry of final relief in this matter, to determine the scope of Defendant's past use of Plaintiffs' intellectual property.

O.    Any such other, further, and additional relief that may be considered just and equitable based on the facts and allegations contained herein or appropriate to prevent the trade and public from deriving the erroneous impression that any service or product manufactured, sold or otherwise circulated or promoted by Defendant is



23

manufactured, distributed, authorized, sponsored, approved, or associated with Plaintiffs or Plaintiffs' Marks.

## JURY DEMAND

Pursuant to Fed. R. Civ. P. 38(b), Plaintiffs demand a jury trial on all issues triable by a jury.

Respectfully submitted,

**BROOKS KUSHMAN P.C.**

Dated:  June 10, 2019

  /s/ Marc Lorelli
MARC LORELLI (P63156)
ALAN J. GOCHA (P80972)
1000 Town Center, Twenty-Second Floor
Southfield, Michigan 48075
Telephone: (248) 358-4400
Facsimile: (248) 358-3351
Email:  agocha@brookskushman.com

*Attorneys for Plaintiffs*



24

# EXHIBIT A

# United States of America

## United States Patent and Trademark Office

## 5-HOUR ENERGY

**Reg. No. 4,004,225**
**Registered Aug. 2, 2011**

**Int. Cls.: 5 and 32**

**TRADEMARK**

**PRINCIPAL REGISTER**

INNOVATION VENTURES, LLC (MICHIGAN LIMITED LIABILITY COMPANY)
38955 HILLS TECH DRIVE
FARMINGTON HILLS, MI 48331

FOR: DIETARY SUPPLEMENTS, IN CLASS 5 (U.S. CLS. 6, 18, 44, 46, 51 AND 52).

FIRST USE 9-0-2004; IN COMMERCE 9-0-2004.

FOR: ENERGY SHOTS, NAMELY, ENERGY DRINKS, IN CLASS 32 (U.S. CLS. 45, 46 AND 48).

FIRST USE 9-0-2004; IN COMMERCE 9-0-2004.

THE MARK CONSISTS OF STANDARD CHARACTERS WITHOUT CLAIM TO ANY PARTICULAR FONT, STYLE, SIZE, OR COLOR.

NO CLAIM IS MADE TO THE EXCLUSIVE RIGHT TO USE "ENERGY", APART FROM THE MARK AS SHOWN.

SEC. 2(F).

SER. NO. 77-522,602, FILED 7-15-2008.

VERNA BETH RIRIE, EXAMINING ATTORNEY



Director of the United States Patent and Trademark Office

---

**REQUIREMENTS TO MAINTAIN YOUR FEDERAL
TRADEMARK REGISTRATION**

**WARNING: YOUR REGISTRATION WILL BE CANCELLED IF YOU DO NOT FILE THE
DOCUMENTS BELOW DURING THE SPECIFIED TIME PERIODS.**

---

**Requirements in the First Ten Years***
**What and When to File:**

> *First Filing Deadline:* You must file a Declaration of Use (or Excusable Nonuse) between the
> 5th and 6th years after the registration date. *See* 15 U.S.C. §§1058, 1141k. If the declaration is
> accepted, the registration will continue in force for the remainder of the ten-year period, calculated
> from the registration date, unless cancelled by an order of the Commissioner for Trademarks or a
> federal court.

> *Second Filing Deadline:* You must file a Declaration of Use (or Excusable Nonuse) and an
> Application for Renewal between the 9th and 10th years after the registration date.*
> *See* 15 U.S.C. §1059.

**Requirements in Successive Ten-Year Periods***
**What and When to File:**

> You must file a Declaration of Use (or Excusable Nonuse) and an Application for Renewal between
> every 9th and 10th-year period, calculated from the registration date.*

**Grace Period Filings***

The above documents will be accepted as timely if filed within six months after the deadlines listed above
with the payment of an additional fee.

---

**The United States Patent and Trademark Office (USPTO) will NOT send you any future notice or
reminder of these filing requirements.**

---

***ATTENTION MADRID PROTOCOL REGISTRANTS:** The holder of an international registration with
an extension of protection to the United States under the Madrid Protocol must timely file the Declarations
of Use (or Excusable Nonuse) referenced above directly with the USPTO. The time periods for filing are
based on the U.S. registration date (not the international registration date). The deadlines and grace periods
for the Declarations of Use (or Excusable Nonuse) are identical to those for nationally issued registrations.
*See* 15 U.S.C. §§1058, 1141k. However, owners of international registrations do not file renewal applications
at the USPTO. Instead, the holder must file a renewal of the underlying international registration at the
International Bureau of the World Intellectual Property Organization, under Article 7 of the Madrid Protocol,
before the expiration of each ten-year term of protection, calculated from the date of the international
registration. *See* 15 U.S.C. §1141j. For more information and renewal forms for the international registration,
see http://www.wipo.int/madrid/en/.

**NOTE:** Fees and requirements for maintaining registrations are subject to change. Please check the
USPTO website for further information. With the exception of renewal applications for registered
extensions of protection, you can file the registration maintenance documents referenced above online
at http://www.uspto.gov.

Page: 2 / RN # 4,004,225

C

**From:** Carly Alba
**Sent:** Thursday, June 13, 2019 4:51 PM
**To:** newclaims@markelcorp.com
**Subject:** New Notice of Loss - Policy #SP884506 - Vitamin Energy, LLC - GL 6/13/19 International IP Holdings, LLC & Innovation Ventures, LLC

# First Notice of Loss

Name of Insured: Vitamin Energy, LLC
Policy #SP884506
Date of Loss: 6/13/19
Claimant: International IP Holdings, LLC & Innovation Ventures, LLC

Insured Contact: Richard Gorman
Phone: 212-777-6636
Email: Support@VitaminEnergyLLC.com

Please see this FIRST NOTICE OF LOSS. Please forward the claim number and adjuster information upon assignment.

Thank you,

---

**Carly Alba**, Esq.
Property & Casualty Claims Manager

**BOLTON** & COMPANY    *Broader Perspective. Business Solutions.*
PASADENA // SANTA CLARA // ANAHEIM // TORRANCE
Insurance License No. 0008309

Proud Partner of Assurex Global® and Benefit Advisors Network (BAN)

(626) 535-1466 *direct*
(626) 405-2093 *fax*
calba@boltonco.com

**Best Places
to Work 2018**
*Los Angeles Business Journal*

D



**MARKEL**

July 10, 2019

**VIA EMAIL, FIRST CLASS & CERTIFIED MAIL – RETURN RECEIPT REQUESTED**
**support@vitaminenergyllc.com**

**Receipt No. 9207 1901 5421 8700 5415 83**
Rich Gorman
Vitamin Energy, LLC
391 Wilmington West Chester Pike
Suite 3
Glen Mills, PA 19342

**COVERAGE DISCLAIMER**

| | |
|---|---|
| Our Insured: | Vitamin Energy, LLC |
| Issuing Company: | Evanston Insurance Company |
| Claimant: | International IP Holdings |
| Our File Number: | PD400670 |
| Policy Number: | SP884506 |
| Policy Period: | 7/23/18-7/23/19 |

Mr. Gorman:

Markel Service, Incorporated as claim service manager for Evanston Insurance Company ("Evanston") acknowledges receipt of the Complaint filed by International IP Holdings, LLC.  The lawsuit, entitled *International IP Holdings, LLC, a Michigan limited liability company, and Innovation Ventures, LLC, a Michigan limited liability company, Plaintiffs, v. Vitamin Energy, LLC, a Delaware Limited liability company, Defendant*, has been filed in the United States District Court in the Eastern District of Michigan and bears docket number CV-11716.

Based upon a review of the Complaint and the policy, Evanston disclaims coverage for this loss. A detailed explanation for Evanston's disclaimer is set forth below.

**SUMMARY OF FACTUAL BACKGROUND**

According to the lawsuit filed and our discussion, this lawsuit was served upon Vitamin Energy, LLC ("Vitamin Energy") on 6/12/19.  An extension of time for which to respond to the Complaint has been granted.  A Stipulated Order Extending Time to Respond has been provided which confirms that an answer is due on 7/31/19.

Plaintiff, International IP Holdings, alleges to own and possess full legal rights to enforce a family of 5-Hour Energy trademarks used in the marketing and sale of 5-Hour Energy branded products.  Plaintiff states that Vitamin Energy, LLC markets, manufactures, distributes, offers for sale, sells, advertises, and promotes liquid energy shots and uses words and/or terms which infringe upon plaintiff's trademarks.  In addition, plaintiff presents claims for false and misleading representations and uses.  Causes of action against Vitamin

Energy include Trademark Infringement, False and Misleading Descriptions and Designations of Affiliation, Connection, Association, Source, Sponsorship, and Approval, False Advertising, Common Law Trademark Infringement, Indirect Trademark Infringement, Delusion and Unfair Competition.

**Markel - Claims**
**Arizona · California · Illinois · Nebraska · New Jersey · New York · Virginia · Wisconsin**
P.O. Box 2009, Glen Allen, VA 23058-2009  (800) 362-7535  Fax (855) 662-7535  markelclaims@markelcorp.com
California License: Markel West Insurance Services #OD95581
www.markelcorp.com

## EVANSTON INSURANCE COMPANY'S POLICY INFORMATION

Evanston Insurance Company issued Vitamin Energy, LLC a General Liability (Including Products/Completed Operations Liability) Insurance Policy, designated as policy number SP884506, which is a claims made policy ("Evanston Policy"). The Evanston Policy provides coverage for claims made during the period of 7/23/18 to 7/23/19 with limits of liability under Coverage A (Bodily Injury and Property Damage Liability) of $1,000,000 for each Occurrence and $100,000 for Damage to Premises – Any One Premises and under Coverage B. (Personal Injury and Advertising Injury Liability) of $1,000,000 for each Person or Organization. Claims Expenses are included within the limits of liability. The Evanston Policy is subject to an aggregate limit of $2,000,000. The Evanston Policy has a Retroactive Date of 7/23/18.

### AN EXPLANATION OF EVANSTON'S DISCLAIMER OF COVERAGE

Based upon a review of the Complaint and Evanston Policy, Evanston concludes that it has no current obligation to defend or indemnify Vitamin Energy for this loss. Although Evanston is relying upon the policy in its entirety in informing you of this lack of coverage, Evanston refers you to the following specific policy provisions.

Vitamin Energy's policy includes multiple Insuring Agreements. For the purpose of this claim, Evanston specifically refers you to the General Liability (Including Products/Completed Operations Liability) Insurance Policy (form PD-22000-02-06 04) which provides in pertinent part:

### *INSURING AGREEMENTS*

*The Insuring Agreement for Coverage A provides, in relevant part:*

A. **Coverage A. - Bodily Injury and Property Damage Liability:** *The Company shall pay on behalf of the Insured all sums in excess of the Deductible amount stated in Item 5. of the Declarations, which the Insured shall become legally obligated to pay as Damages as a result of Claims first made against the Insured during the Policy Period or during the Extended Reporting Period, if exercised, and reported to the Company pursuant to Section Claims A., Claim Reporting Provision, for Bodily Injury or Property Damage to which this insurance applies caused by an Occurrence, provided:*

  1. *the entirety of such Bodily Injury or Property Damage and Occurrence happens during the Policy Period or on or after the Retroactive Date stated in Item 7. of the Declarations; and*

  2. *such Bodily Injury or Property Damage arises out of only those products, goods, operations or premises specified in Item 6. of the Declarations.*

The policies contains the following relevant definitions:

C. **Claim** *means a notice received by the Insured of an intention to hold the Insured responsible for: (1) a Bodily Injury; (2) a Property Damage; (3) an Advertising Injury; or (4) a Personal Injury; involving this policy and shall include the service of suit or institution of arbitration proceedings against the Insured.*

E. **Bodily Injury** *means bodily injury, sickness or disease sustained by a person, including death resulting from any of these at any time.*
*Bodily Injury shall also mean Incidental Medical Malpractice Injury, provided that the Named Insured is not engaged in the business or occupation of providing professional health care services.*

I. **Damages** *means the monetary portion of any judgment, award or settlement; provided, however, that Damages shall not include: (1) multiplied portions of damages in excess of actual damages, including trebling of damages; (2) taxes, criminal or civil fines, or penalties imposed*

*by law; (3) sanctions; (4) matters which are uninsurable under the law pursuant to which this policy shall be construed; or (5) the return of or restitution of fees, profits or charges for services rendered.*

P.  **Occurrence** *means an accident, including continuous or repeated exposure to substantially the same general harmful conditions.*

R.  **Policy Period** *means the period from the inception date of this policy to the policy expiration date as stated in Item 3. of the Declarations, or its earlier cancellation or termination date.*

T.  **Property Damage** *means:*

  *1.  physical injury to or destruction of tangible property, including consequential loss of use thereof; or*

  *2.  loss of use of tangible property which has not been physically injured or destroyed; provided, however, such loss of use is caused by an Occurrence.*

This matter is not covered under Coverage A of the Evanston Policy because there are no allegations of an "occurrence", "bodily injury" or "property damage", as those terms are defined in the policy.   Since the plaintiff has not alleged an "occurrence" or that it has suffered "bodily injury" or "property damage" there is no coverage under Coverage A.   .

We also refer you to the insuring agreement under Coverage B which provides in relevant part:

B.  **Coverage B. - Personal Injury and Advertising Injury Liability:** *The Company shall pay on behalf of the Insured all sums in excess of the Deductible amount stated in Item 5. of the Declarations, which the Insured shall become legally obligated to pay as Damages as a result of Claims first made against the Insured during the Policy Period or during the Extended Reporting Period, if exercised, and reported to the Company pursuant to Section Claims A., Claim Reporting Provision, for Personal Injury or Advertising Injury to which this insurance applies caused by an offense, provided:*

  *1.  the entirety of such Personal Injury or Advertising Injury and offense happens during the Policy Period or on or after the Retroactive Date stated in Item 7. of the Declarations; and*

  *2.  such Personal Injury or Adverting Injury arises out of only those products, goods, operations or premises specified in Item 6. of the Declarations.*

*   *   *

The policy contains the following relevant definitions as to Coverage B:

B.  **Advertising Injury** *means injury, including consequential Bodily Injury, arising out of oral or written publication of material that libels or slanders a person or organization or a person's or organization's products, goods or operations or other defamatory or disparaging material, occurring in the course of the Named Insured's Advertisement*

E.  **Bodily Injury** *means bodily injury, sickness or disease sustained by a person, including death resulting from any of these at any time.*
  *Bodily Injury shall also mean Incidental Medical Malpractice Injury, provided that the Named Insured is not engaged in the business or occupation of providing professional health care services.*

F.  **Claim** *means a notice received by the Insured of an intention to hold the Insured responsible for: (1) a Bodily Injury; (2) a Property Damage; (3) an Advertising Injury; or (4) a Personal Injury; involving this policy and shall include the service of suit or institution of arbitration proceedings against the Insured.*

I.  **Damages** *means the monetary portion of any judgment, award or settlement; provided, however, that Damages shall not include: (1) multiplied portions of damages in excess of*

*actual damages, including trebling of damages; (2) taxes, criminal or civil fines, or penalties imposed by law; (3) sanctions; (4) matters which are uninsurable under the law pursuant to which this policy shall be construed; or (5) the return of or restitution of fees, profits or charges for services rendered.*

P.  **Occurrence** *means an accident, including continuous or repeated exposure to substantially the same general harmful conditions.*

Q.  **Personal Injury** *means injury, including consequential Bodily Injury, arising out of one or more of the following offenses:*

    *1.  false arrest, detention or imprisonment or malicious prosecution;*

    *2.  wrongful eviction from, wrongful entry into, or invasion of the right of private occupancy of a room, dwelling or premises that a person occupies, committed by or on behalf of its owner, landlord, or  lessor; or*

    *3.  oral or written publication of material that violates a person's right of privacy.*

T.  **Property Damage** *means:*

    *1.  physical injury to or destruction of tangible property, including consequential loss of use thereof; or*

    *2.  loss of use of tangible property which has not been physically injured or destroyed; provided,   however, such loss of use is caused by an Occurrence.*

\*     \*     \*

Based upon the current Complaint, Evanston advises that no coverage exists under Coverage B of the Evanston Policy as there are no allegations of "personal injury" or "advertising injury" as those terms are defined in the Evanston Policy.  In this matter, the damages sought by plaintiffs do not meet the definition of "personal injury" or "advertising injury" and are, therefore, not covered under this policy of insurance.

The Evanston Policy also contains the following exclusions, which provide in relevant part:

**THE EXCLUSIONS**

C.  *With respect to Coverage B., this policy does not apply to:*

    *2.  any Claim based upon or arising out of Personal Injury or Advertising Injury arising out of the oral or written publication of material, if done by or at the direction of the Insured with the knowledge of its falsity;*

    *5.  any Claim based upon or arising out of Advertising Injury arising out of a mistake in advertised price or incorrect description of any product, good or operation;*

    *7.  any Claim based upon or arising out of Personal Injury or Advertising Injury arising out of piracy, unfair competition, the infringement of copyright, title, trade dress, slogan, service mark, service name or trademark, trade name, patent, trade secret or other intellectual property right;*

    *11. any Claim based upon or arising out of the failure of products, goods or services to conform with any statement of quality or performance made in the Named Insured's Advertisement.*

\*     \*     \*

To the extent that there is "advertising injury", which there is not, coverage would be barred by exclusion 7 noted above, as all of the claims arise out of an infringement of an intellectual property right or unfair competition.

In addition, Count II: False and Misleading Descriptions and Designations of Affiliation, Connection, Association, Source, Sponsorship, and Approval and Count III: False Advertising are not covered based upon exclusions 5 and 11. Such exclusions bar coverage for claims arising out of Advertising Injury arising out of a mistake in an advertised price or description of any product as well as claims based upon or arising out of the failure to conform as noted in detail above.

Finally, any claim which arises out of the publication of material with the knowledge of its falsity would be barred from coverage by exclusion 2.

## CONCLUSION

Based on all of the foregoing, Evanston disclaims coverage to Vitamin Energy for this loss and will not be handling this claim on its behalf. The Evanston Policy would not cover damages incurred by plaintiff in this matter per the above explanation.

Please be advised that Evanston's coverage position is based upon the facts and information available at this time and is subject to the availability and review of additional information. Evanston may revise its position and raise any other coverage issues or coverage defenses without prejudice, waiver or estoppel. Furthermore, this letter does not constitute a waiver of any policy provisions or defenses available to Evanston. All rights are expressly reserved.

This letter quotes the policy in part. However, please refer back to the policy for the complete and precise language of the policy. The language cited herein is not meant to change, supplement, add or subtract from the policy terms. The language in the policy itself is controlling.

Please be advised that Evanston reserves its rights and may file a declaratory judgment lawsuit or motion to intervene in any underlying lawsuit to determine its rights and obligations under the Policy.

If any of the factual information relied upon by us in this letter is materially incorrect, or if you possess any additional information which you believe impacts the coverage position taken herein, please immediately contact the undersigned at 732-391-8806.

In addition, if an Amended Complaint is filed, please provide us with a copy of the pleading so that we may evaluate it further for coverage.

Please reference our File Number PD400670 on all future correspondence.

Sincerely,

*Sharon Dombrowski*

Sharon Dombrowski, SCLA
Senior Claims Examiner
MARKEL SERVICE, INCORPORATED

CC:    Susan Strand
       Worldwide Facilities, LLC
       sstrand@wwfi.com

       Carly Alba
       Bolton & Company
       calba@boltonco.com

E



**MARKEL**

July 19, 2019

**VIA EMAIL**
np@obermayer.com

Nicholas Poduslenko
Obermayer Rebmann Maxwell & Hippel LLP
Centre Square West
1500 Market Street, Suite 3400
Philadelphia, PA 19102-2101

|  |  |
|---|---|
| Our Insured: | Vitamin Energy, LLC |
| Issuing Company: | Evanston Insurance Company |
| Claimant: | International IP Holdings |
|  |  |
| Our File Number: | PD400670 |
| Policy Number: | SP884506 |
| Policy Period: | 7/23/18-7/23/19 |

Mr. Poduslenko:

Markel Service, Incorporated as claim service manager for Evanston Insurance Company ("Evanston") writes to supplement its 7/10/19 letter issued to Vitamin Energy, LLC in which Evanston disclaimed coverage for this matter. The purpose of the supplement is to identify an endorsement that amends the limits of liability set forth in the declarations of the policy at issue. Additionally, this letter will also serve to respond to your July 15, 2019 email.

In the 7/10/19 letter, Evanston indicated that the Company issued Vitamin Energy, LLC a General Liability (Including Products/Completed Operations Liability) Insurance Policy, designated as policy number SP884506, which is a claims made policy ("Evanston Policy") and which provides coverage for claims made during the period of 7/23/18 to 7/23/19 with limits of liability under Coverage A (Bodily Injury and Property Damage Liability) of $1,000,000 for each Occurrence and $100,000 for Damage to Premises – Any One Premises and under Coverage B. (Personal Injury and Advertising Injury Liability) of $1,000,000 for each Person or Organization. The letter stated Claims Expenses are included within the limits of liability. The letter also stated that the Evanston Policy is subject to an aggregate limit of $2,000,000. In addition, the Evanston Policy has a Retroactive Date of 7/23/18.

After the letter was issued, an endorsement was provided that is titled Amendment of Limits of Liability, and is effective 10/8/18, which with respect to the Evanston Policy amends the limits of liability per the provisions of the endorsement. The endorsement provides in part:

### *AMENDMENT OF LIMITS OF LIABILITY*

*This endorsement modifies insurance provided under the following:*

**Markel - Claims**
**Arizona · California · Illinois · Nebraska · New Jersey · New York · Virginia · Wisconsin**
P.O. Box 2009, Glen Allen, VA 23058-2009  (800) 362-7535  Fax (855) 662-7535  markelclaims@markelcorp.com
California License: Markel West Insurance Services #OD95581
www.markelcorp.com

Page 2

1.   Item 4. Of the Declarations, LIMITS OF LIABILITY, is deleted and replaced with the following:

    4. LIMITS OF LIABILITY:

    A.  For Coverage A (Bodily Injury and Property Damage Liability):
        (i)        Each Occurrence:                                $5,000,000
        (ii)       Damage to Premises – Any One Premises:     $  100,000

    B.  For Coverage B (Personal Injury and Advertising Injury Liability):
        Each Person or Organization:                       $5,000,000
    C.  Policy Aggregate:                                   $5,000,000

2.   Solely for the purposes of this endorsement, the following definition shall apply:

Endorsement Period means the period from the effective date of this endorsement to the policy expiration date as stated in Item 3. Of the Declarations, or its earlier cancellation or termination date.

3.   The Limits of Liability stated in Item 1. Above shall apply only to Claims first made against the Insured on or after the effective date of this endorsement and reported to the Company pursuant to Section Claims A., Claim Reporting Provision, for Bodily Injury or Property Damage to which this insurance applies caused by an Occurrence or for Personal Injury or Advertising Injury caused by an offense, provided that the Occurrence or offense happens:

    (i)        During the Endorsement Period; or
    (ii)       prior to the Endorsement Period and on or after the Retroactive Date stated in Item 7. Of the Declarations provided that as of the effective date of this endorsement the Insured had no knowledge of such Occurrence or offense;

and the Limits of Liability stated in the Declarations or any other amendment thereto shall be part of and not in addition to the Limits of Liability stated above.

This letter is intended to supplement Evanston's 7/10/19 letter for the sole purpose of identifying the Amendment of Limits of Liability endorsement.

This letter is also intended to respond to your 7/15/19 email requesting reconsideration of Evanston's coverage position. Please be advised that Evanston maintains its coverage position as set forth in its 7/10/19 letter. As to the substance of your 7/15/19 email, the allegations in paragraph 32 of the complaint do not meet the definition of "advertising injury" in the policy. Even if the allegations did qualify as "advertising injury", which they do not, the exclusions contained in the policy operate to exclude coverage for the claims in the complaint. We refer you to the discussion of the policy's exclusions that is contained in Evanston's 7/10/19 letter.

For the reasons set forth in Evanston's 7/10/19 letter, Evanston disclaims coverage for the lawsuit and will not be providing Vitamin Energy a defense or indemnity with respect to the lawsuit. If you possess any additional information which you believe impacts Evanston's coverage position, please contact the undersigned at 732-391-8806.

Page 3

As previously communicated, please be advised that Evanston's coverage position is based upon the facts and information available at this time and is subject to the availability and review of additional information. Evanston may revise its position and raise any other coverage issues or coverage defenses without prejudice, waiver or estoppel. Furthermore, this letter does not constitute a waiver of any policy provisions or defenses available to Evanston. All rights are expressly reserved.

In addition, if an Amended Complaint is filed, please provide us with a copy of the pleading so that we may evaluate it further as to coverage.

Please reference our File Number PD400670 on all future correspondence.


Sincerely,


*Sharon Dombrowski*


Sharon Dombrowski, SCLA
Senior Claims Examiner
MARKEL SERVICE, INCORPORATED

**<u>CERTIFICATE OF SERVICE</u>**

I hereby certify that on this 2nd day of October, 2019, I served the foregoing Amended

Complaint, along with all accompanying documents, via first class mail and email upon:

Elaine Whiteman Klinger, Esquire
Gavin Fung, Esquire
1600 Market Street
Suite 1410
Philadelphia, PA 19103

_____
Matthew S. Olesh