**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **VITAMIN ENERGY, LLC,** | : | **CIVIL ACTION NO.**: |
| | : | **2:19-cv-03672-JHS** |
| Plaintiff, | : | |
| | : | |
| v. | : | |
| | : | |
| **EVANSTON INSURANCE COMPANY,** | : | |
| | : | |
| Defendant. | : | |

## SECOND AMENDED COMPLAINT

Plaintiff, Vitamin Energy, LLC ("Vitamin Energy"), by and through its undersigned counsel, Ippoliti Law Group, hereby demands judgment against Defendant, Evanston Insurance Company ("Evanston"), for the reasons and in the amounts set forth below, and in support thereof avers as follows:

### I.       Parties

1.       Vitamin Energy is a limited liability company with a business address at 391 Wilmington West Chester Pike, Unit 3, #403, Glen Mills, Pennsylvania.

2.       Vitamin Energy makes beverage products that provide consumers with increased energy and other health benefits.

3.       Vitamin Energy regularly conducts business in Philadelphia County.

4.       Evanston is an Illinois domiciled insurance company with its principal place of business at Ten Parkway North, Deerfield, Illinois 60015.

5.       Upon information and belief, Evanston regularly conducts business in Philadelphia County.

## II.  The Insurance Policy

6.       Vitamin Energy is the Named Insured to a General Liability Insurance Policy issued by Evanston with a policy period of July 23, 2018 to July 23, 2019 (the "Policy Period"). A copy of this policy (hereinafter the "Policy"), which is incorporated in its entirety, is attached as Exhibit A.

7.       The Policy provides coverage for "Advertising Injury," stating that "[t]he Company shall pay on behalf of the Insured all sums in excess of the Deductible amount stated in Item 5. of the Declarations, which the Insured shall become legally obligated to pay as Damages as a result of Claims first made against the Insured during the Policy Period or during the Extended Reporting Period, if exercised, and reported to the Company pursuant to Section Claims A., Claim Reporting Provision, for Personal Injury or Advertising Injury to which this insurance applies caused by an offense, provided: (1) the entirety of such Personal Injury or Advertising Injury and offense happens during the Policy Period or on or after the Retroactive Date stated in Item 7. of the Declarations; and (2) such Personal Injury or Adverting Injury arises out of only those products, goods, operations or premises specified  in  Item  6. of the Declarations." *See* Policy, Insuring Agreements, Subpart B, pp. 2-3 of 16.

8.       Advertising Injury is defined in the Policy as "injury, including consequential Bodily Injury, arising out of oral or written publication of material that libels or slanders a person or organization or a person's or organization's products, good or operations ***or other defamatory or disparaging material***, occurring in the course of the Named Insured's Advertisement." *See* Policy, Definitions, Subpart B, p. 3 of 16. (emphasis added).

2

9.      The Policy provides that the definition of Advertisement is "a commercial communication, including communications that are published material placed on the Internet or on similar electronic means of communication, that is broadcast or published about the products, goods or operations of the Named Insured for the purpose of promoting the sale or use of such products, goods or operations; provided, however, only that part of a website that is about the products, goods or operations of the Named Insured for the purposes of promoting such products, goods or operations is considered an Advertisement." *See* Policy, Definitions, Subpart A, p. 3 of 16.

10.     Claim is defined by the policy as "a notice received by the Insured of an intention to hold the Insured responsible for: (1) a Bodily Injury; (2) a Property Damage; (3) an Advertising Injury; or (4) a Personal Injury; involving this policy and shall include the service of suit or institution of arbitration proceedings against the Insured." *See* Policy, Definitions, Subpart F, p. 3 of 16.

11.     Damages are defined in the policy as "the monetary portion of any judgment, award or settlement; provided, however, that Damages shall not include: ( l) multiplied portions of damages in excess of actual damages, including trebling of damages; (2) taxes, criminal or civil fines, or penalties imposed by law; (3) sanctions; (4) matters which are uninsurable under the law pursuant to which this policy shall be construed; or (5) the return of or restitution of fees, profits or charges for services rendered." *See* Policy, Definitions, Subpart I, p. 4 of 16.

12.     Item 6 of the Declarations to the Policy states that products, goods, operations, and premises covered by the Policy are "[s]upplements; all related premises and operations of the Insured." *See* Policy, Declarations, p. 2 of 2.

13.     The Policy further provides that "[t]he Company shall have the right and duty to defend and investigate any Claim to which coverage under this policy applies." *See* Policy, Defense, Settlement and Claim Expenses, p. 10 of 16.

14.     Coverage for Advertising Injury is provided under the Policy in an amount of up to $1,000,000 per person or organization, or up to $2,000,000 in the aggregate, with no deductible. *See* Policy, Declarations, p. I of 2. As noted herein, however, these amounts were both modified to $5,000,000 pursuant to an endorsement to the policy effective October 8, 2018.

### III.     The Underlying Lawsuit and Evanston's Refusal to Defend/Provide Coverage

15.     On June 10, 2019, Vitamin Energy was sued by International IP Holdings, LLC and Innovation Ventures, LLC (together, the "Michigan Plaintiffs") in the United States District Court for the Eastern District of Michigan (the "Michigan Lawsuit"). A copy of the Complaint filed against Vitamin Energy in the Michigan Lawsuit (the "Michigan Complaint") is attached as Exhibit B.

16.     As a result, on June 13, 2019, Vitamin Energy's insurance broker, Bolton & Company, placed Evanston on notice under the Policy of the Michigan Lawsuit via email. A copy of this email is attached as Exhibit C.

17.     Despite subsequent requests from Vitamin Energy, Evanston did not promptly respond, forcing Vitamin Energy to retain counsel in order to prepare a defense to the Michigan Lawsuit.

18.     Evanston finally responded on July 10, 2019, when it issued a letter disclaiming coverage and stating its position that it "has no current obligation to defend or

indemnify Vitamin Energy for this loss." A copy of this letter is attached as Exhibit D.

19.     Evanston's position is grounded in its erroneous contention that "there are no allegations of ... 'advertising injury'" as defined by the Policy. *See* Exhibit D.

20.     Evanston also claims that even if there were advertising injury, coverage would be barred based on a Policy exclusion "as all of the claims arise out of an infringement of an intellectual property right or unfair competition." *See id*.

21.     Evanston further contends that coverage is barred pursuant to exclusions in the Policy "for claims arising out of Advertising Injury arising out of a mistake in an advertised price or description of any product as well as claims based upon or arising out of the failure to conform." *See id.*

22.     Evanston's positions were and remain clearly wrong under the plain language of the Policy.

23.     While the Michigan Complaint does contain allegations and claims relating to both intellectual property (trademark) and unfair competition, it *also* contains separate and independent allegations regarding false and misleading comparative advertising that purportedly disparaged the Michigan Plaintiffs' product, as detailed below.

24.     Moreover, these allegations have nothing to do with a mistake in any product's advertised price or description, nor do they relate to or allege a purported failure of Vitamin Energy to conform with any statement of quality or performance made in its advertisements.

25.     Rather, coverage is invoked due to the allegations, detailed below, that Vitamin Energy harmed the Michigan Plaintiffs via purportedly false and misleading

advertising that compared Vitamin Energy's product to the Michigan Plaintiff's product in a manner that disparaged, and thus harmed, their product.

26.     Following receipt of Evanston's July 10, 2019 letter, Vitamin Energy's prior counsel engaged in both an oral discussion and email correspondence with Evanston regarding Vitamin Energy's position that Evanston was improperly disclaiming coverage under the Policy.

27.     Despite those discussions, Evanston still refused to provide coverage, sending a letter July 1 9, 2019 confirming this to be the case (and clarifying the limits of liability under the Policy via the aforementioned endorsement). A copy of this letter is attached as Exhibit E.

28.     Accordingly, Vitamin Energy initiated this lawsuit.

29.     After receiving leave of Court to do so, the Michigan Plaintiff's filed an Amended Complaint (the "Amended Michigan Complaint") in the Michigan Lawsuit on April 15, 2020. A copy of the Amended Michigan Complaint is attached as Exhibit F and incorporated herein.

30.     Among other claims, the Amended Michigan Complaint alleges that Vitamin Energy engaged in false and misleading advertising that ultimately ***disparaged*** the Michigan Plaintiffs' products, commonly known as 5-Hour Energy "liquid energy shots" through comparative advertising that directly compares Vitamin Energy's product to its own.

31.      For example, the Amended Michigan Complaint specifically alleges that Vitamin Energy "advertises its product with a series of misleading and false statements, including false and  misleading *comparative advertising* and claims that [Vitamin Energy's]

products provide steroid-like athletic performance enhancement." *See* Amended Michigan Complaint, ¶ 40 (emphasis added).

32.    In this averment, the Michigan Plaintiffs make two distinct allegations about Vitamin Energy's advertisements, each of which is sufficient to trigger coverage by Evanston, in addition to insinuating that their allegations include other misleading and false advertisements not specifically identified or discussed in the Amended Michigan Complaint.

33.    First, the Michigan Plaintiffs allege that Vitamin Energy uses false and misleading comparative advertising.

34.    Specifically, the Michigan Plaintiffs allege that Vitamin Energy compare its product to theirs in a false and misleading way that is derogatory and/or disparaging to 5-Hour Energy.

35.    To that end, the Michigan Complaint includes the following comparison chart, which the Michigan Plaintiffs allege that Vitamin Energy used in its advertising:



36.     In doing so, the Michigan Plaintiffs specifically allege that Vitamin Energy is using comparative advertising to disparage 5-Hour Energy.

37.     The comparison chart is central to the Michigan Plaintiffs' claims, as it is alleged to have been used by Vitamin Energy to disparage 5-Hour Energy by stating and/or insinuating that (a) 5-Hour Energy is an inferior product to Vitamin Energy and (b) 5-Hour Energy does not contain certain essential nutrients that are in Vitamin Energy.

38.     The fact that this chart is placed immediately after the Michigan Plaintiffs' allegations about comparative advertising can only support an interpretation that the Amended Michigan Complaint contains claims that Vitamin Energy is disparaging 5-Hour Energy via

comparative advertising, such as that shown in the chart.

39.     The Michigan Plaintiffs reference Vitamin Energy's alleged comparative advertising elsewhere, averring that Vitamin Energy's advertisements include claims of "7 hours of energy" in a manner that can only be construed as disparaging to 5-Hour Energy due to the inherent comparison drawn from such advertising.

40.     For instance, the Amended Michigan Complaint alleges:

Defendant's statement that 'VitaminEnergy® gives you a healthier, better for you shot of energy to maximize your performance' is intended to leave, and does leave, the false or misleading impression that, among other things, Defendant's Products possess performance enhancing compounds and that ***Defendant's Products contain healthier ingredients than other products in the market, including Plaintiff's products***.

*See* Amended Michigan Complaint at ¶ 45. (emphasis added).

41.     The Michigan Plaintiffs are alleging that Vitamin Energy's advertising creates the impression that 5-Hour Energy is less healthy than Vitamin Energy's product, thus disparaging 5-Hour Energy.

42.     In another instance, the Amended Michigan Complaint alleges:

Defendant's representation that its products contain 1000 MG of Vitamin C and 100% Daily Value of Vitamin B is intended to leave, and does leave, the false and/or misleading impression that, among other things, all of Defendant's Products have 1000 MG of Vitamin C and more Vitamin B Vitamins than Plaintiffs' Products ***and that Defendant's Products are superior to other products in the market, including Plaintiff's Products.***

*See* Amended Michigan Complaint at ¶ 48. (emphasis added).

43.     The Michigan Plaintiffs are alleging that Vitamin Energy's advertising creates the impression that its products are superior to 5-Hour Energy, and that 5-Hour Energy is an inferior product, thus disparaging 5-Hour Energy.

9

44.     Based on these averments in the Amended Michigan Complaint, the comparative advertising alleged to be undertaken by Vitamin Energy can only be interpreted to be disparaging towards the Michigan Plaintiffs' product.

45.     Second, and distinct from the above-described allegations regarding comparative advertising, the Michigan Complaint alleges that Vitamin Energy claims that its products provide steroid-like athletic performance enhancement.

46.     The Amended Michigan Complaint alleges that Vitamin Energy claims that it was originally designed as the "shot of choice" and that its product "deliver[s] improved performance without the use of harmful steroids or steroid like compounds." *See* Amended Michigan Complaint, ¶ 42.

47.     In addition to making claims about Vitamin Energy's own product, inherent in these averments is the allegation that Vitamin Energy is insinuating that the Michigan Plaintiffs' own product either (a) contains steroids and/or (b) is just as harmful as steroids.

48.     The Michigan Plaintiffs further aver that Vitamin Energy's allegedly false, misleading, confusing, and deceptive advertising has caused them to suffer both economic and irreparable injury. *See* Michigan Complaint, ¶¶ 65, 74.

49.     All of these allegations, both separately and taken together, place claims brought in the Michigan Lawsuit squarely within the coverage provided by the Policy.

50.     The somewhat vague nature of the Michigan Plaintiffs' allegations in the Amended Michigan Complaint is most certainly intentional.

51.     The Michigan Plaintiffs have a reputation for securing market dominance, not based on the superiority of their product, but through aggressively waging litigation attrition

campaigns against competitors, such as Vitamin Energy.

52.     The Michigan Plaintiffs pled their claims in such a manner to create this very coverage dispute to ensure Vitamin Energy would hemorrhage funds on litigation expenses.

## COUNT I – DELCARATORY JUDGMENT

53.     Vitamin Energy restates and incorporates the averments set forth in the forgoing paragraphs as if stated fully herein.

54.     An actual controversy exists between Vitamin Energy and Evanston regarding Evanston's obligation to provide insurance coverage to Vitamin Energy under the Policy.

55.     Vitamin Energy placed Evanston on notice of the Michigan Lawsuit within the Policy Period of the Policy.

56.     Conduct alleged in the Michigan Lawsuit falls within the Policy's coverage for "Advertising Injury" and is not subject to any exclusion.

57.     Notwithstanding this, Evanston has taken the position that it has no obligation to defend and provide coverage.

58.     The parties disagree about whether Evanston has the obligation to defend and provide coverage for claims in the Michigan Lawsuit under the terms of the Policy.

59.     Vitamin Energy is entitled to have the Court determine and declare that, under the terms and conditions of the Policy, Evanston is obligated to defend and provide coverage to Vitamin Energy for claims in the Michigan Lawsuit.

WHEREFORE, Vitamin Energy demands judgment against Evanston, and respectfully requests that the Court determine and declare that:

a.     The Michigan Lawsuit alleges "Advertising Injury" as defined under the

11

Policy;

b.      The "Advertising Injury" alleged in the Michigan Lawsuit is not subject to any exclusions under the Policy;

c.      Evanston is obligated to reimburse Vitamin Energy for all costs it has already incurred to defend against the Michigan Lawsuit;

d.      Evanston is obligated to defend against the claims in the Michigan Lawsuit alleging "Advertising Injury" going forward; and

e.      Evanston is obligated to pay all losses incurred by Vitamin Energy resulting from the claims in the Michigan Lawsuit alleging "Advertising Injury."

Vitamin Energy also respectfully requests that the Court grant such other relief as it deems appropriate.

## COUNT II – BREACH OF CONTRACT

60.     Vitamin Energy restates and incorporates the averments set forth in the forgoing paragraphs as if stated fully herein.

61.     The Policy is an enforceable contract between Vitamin Energy and Evanston.

62.     Subject to the terms and conditions of the Policy, Evanston is obligated to defend and provide coverage to Vitamin Energy for the claims alleging "Advertising Injury" in the Michigan Lawsuit.

63.     Vitamin Energy has fully complied with its obligations under the Policy, including paying its premium and providing timely notice of the Michigan Lawsuit to Evanston within the Policy Period.

64.     In breach of its obligations under the Policy, Evanston has refused to defend

and provide coverage to Vitamin Energy for the claims alleging "Advertising Injury" in the Michigan Lawsuit.

65.     As a direct result of Evanston's breach of the policies, Vitamin Energy has suffered damages.

WHEREFORE Vitamin Energy demands judgment against Evanston, and respectfully requests that the Court enter an order awarding Vitamin Energy compensatory damages in excess of $50,000, pre- and post-judgment interest, and such other relief as the Court deems appropriate

## COUNT III – BAD FAITH/VIOLATION OF 42 Pa.C.S. § 8371

66.     Vitamin Energy restates and incorporates the averments set forth in the forgoing paragraphs as if stated fully herein.

67.     42 Pa.C.S. § 8371 provides for statutory remedies, including an award of punitive damages and attorneys' fees, if the Court finds that an insurer has acted in bad faith toward an insured.

68.     A refusal to provide coverage to an insured with no good cause when a policy provides for coverage violates the statute.

69.     Likewise, an insurance carrier's failure to timely correspond with its insured violates the statute.

70.     Vitamin Energy submitted a claim for insurance coverage to Evanston under the Policy in connection with the claims brought against it in the Michigan Lawsuit.

71.     Evanston violated the bad faith statute in its handling of Vitamin Energy's claim under the Policy, effectively and actually denying coverage without a reasonable or legitimate basis.

13

72.     Evanston acted in bad faith through its arbitrary and unreasonable refusal to provide coverage pursuant to the terms and conditions of the Policy.

73.     Evanston acted in bad faith by interpreting the Policy provisions in such a way to avoid any duty to provide coverage to Vitamin Energy.

74.     Evanston acted in bad faith by taking the position that claims in the Michigan Lawsuit do not allege "Advertising Injury" as defined by the Policy.

75.     Evanston acted in bad faith by delaying its coverage determination despite requests from Vitamin Energy.

76.     Evanston's coverage determination is contradicted by the plain language of the Policy.

77.     Evanston acted with knowledge or reckless disregard of its lack of reasonable basis for denying coverage to Vitamin Energy.

78.     Evanston's conduct is sufficiently outrageous that an award of punitive damages is appropriate.

WHEREFORE, Vitamin Energy demands judgment against Evanston, and respectfully requests that the Court grant it the following relief:

a.      Compensatory damages;

b.      Interest;

c.      Punitive Damages;

d.      Costs;

e.      Reasonable attorneys' fees; and

f.      Such other relief as the Court deems appropriate.

Respectfully Submitted,

**IPPOLITI LAW GROUP**

*/s/ Patrick K. Gibson*
**PATRICK K. GIBSON, ESQ.**
Attorney I.D. No. 315863
1225 N. King Street, Suite 900
Wilmington, DE 19801
Ph.: (302) 428-1400
Fax: (302) 428-9664
patrick@ippolitilawgroup.com
*Attorneys for Vitamin Energy, LLC*

Date: May 1, 2020

15