IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

VITAMIN ENERGY, LLC,

                          Plaintiff,

      v.

EVANSTON INSURANCE COMPANY,

                        Defendant.

CIVIL ACTION
NO. 19-3672

## OPINION

**Slomsky, J.**                                                   **November 23, 2020**

## I.    INTRODUCTION

Advertising Injury is a term of art used in an insurance policy that invokes coverage for "injury . . . arising out of oral or written publication of material that libels or slanders a person or organization or a person's or organization's products, goods or operations or other defamatory or disparaging material, occurring in the course of the . . . Advertisement."[1] "Disparaging material" includes commercially disparaging statements, which are statements that cast doubt upon the quality of another's goods such that it reduces their marketability.  In Pennsylvania, whether Advertising Injury has occurred depends upon the factual allegations set forth within the four corners of a complaint filed against an insured.  A claim of Advertising Injury based on implicit disparagement has not yet been sanctioned by Pennsylvania courts.

Here, Defendant Evanston Insurance Company ("Defendant") argues that because the allegations in a complaint filed in federal court in Michigan against its insured, Plaintiff Vitamin Energy, LLC ("Plaintiff"),[2] do not allege disparagement by Plaintiff, but only that Plaintiff made

---

[1]    (Doc. No. 33-1 at 14.)

[2]    Plaintiff Vitamin Energy, LLC is the defendant in the Michigan case.

false statements about its own products, there is no Advertising Injury and therefore no coverage under Defendant's insurance policy. The Court agrees, and for this reason, Defendant has no duty to defend or indemnify Plaintiff in the lawsuit filed against it in federal court in Michigan.

## II.   BACKGROUND

### A.  The Insurance Policy

On July 23, 2018, Plaintiff Vitamin Energy, LLC and Defendant Evanston Insurance Company entered into a General Liability Insurance Policy Agreement ("the Policy").[3]  (See Doc. No. 33-1.)  The Policy affords Plaintiff coverage from July 23, 2018 through July 23, 2019.  (Id. at 8.)  Under "Coverage B" of the Policy, Defendant is to defend and indemnify Plaintiff for "[d]amages as a result of Claims first made against [Plaintiff] . . . for Personal Injury or Advertising Injury. . . ."  (Id. at 13.)  "Advertising Injury" is defined in the Policy as:

> [I]njury, including consequential Bodily Injury, arising out of oral or written publication of material that libels or slanders a person or organization or a person's or organization's products, goods or operations or other defamatory or disparaging material, occurring in the course of the Named Insured's Advertisement.

(Id. at 14.)  The Policy also lists a number of "Coverage B" exclusions that bar coverage.[4]

---

[3]   The General Liability Insurance Policy is a duty to defend policy.  (See Doc. No. 33-1 at 8.)

[4]   The pertinent exclusions bar coverage for claims "based upon or arising out of" Advertising Injury (1) "caused by or at the direction of the Insured with the knowledge that the act would violate the rights of another," (2) "arising out of the oral or written publication of material, if done by or at the direction of the Insured with the knowledge of its falsity," (3) "arising out of a mistake in advertised price or incorrect description of any product, good or operation," (4) "arising out of piracy, unfair competition, the infringement of copyright, title, trade dress, slogan, service mark, service name or trademark, trade name, patent, trade secret or other intellectual property right," and for (5) "any Claim based upon or arising out of the failure of products, goods or services to conform with any statement of quality or performance made in the Named Insured's Advertisement."  (Doc. No. 33-1 at 20.)

**B.  The Michigan Lawsuit**

On June 10, 2019, International IP Holdings, LLC and Innovation Ventures, LLC ("Michigan claimants") sued Plaintiff in federal court in Michigan.  (See Doc. No. 33-2.)  On April 17, 2020, the Michigan claimants filed an amended complaint (hereinafter the "Underlying Complaint").  (See Doc. No. 33-6.)  The Underlying Complaint alleges claims for: (1) Trademark Infringement under 15 U.S.C. § 1114 (Lanham Act);[5] (2) False and Misleading Descriptions and Designations of Affiliation, Connection, Association, Source, Sponsorship, and Approval under 15 U.S.C. § 1125(a)(1)(A) (Lanham Act); (3) False Advertising under 15 U.S.C. § 1125(a)(1)(B) (Lanham Act); (4) Common Law Trademark Infringement; (5) Indirect Trademark Infringement; (6) Dilution under 15 U.S.C. § 1125(c) (Lanham Act); and (7) Unfair Competition under Michigan Compiled Laws § 445.903.  (Id. at 15, 17-18, 20, 22-23, 25.)  The Michigan claimants are owners of 5-Hour Energy trademarks and are responsible for developing, advertising, and promoting 5-Hour Energy branded products "that are commonly categorized as 'liquid energy shots.'"  (Id. ¶¶ 11, 15.)  Plaintiff's company manufactures, markets, and sells liquid energy shots called "Vitamin Energy."  (Id. ¶ 23.)

In the statement of facts in the Underlying Complaint, the Michigan claimants allege that "[Vitamin Energy] . . . advertises its products with a series of misleading and false statements in commerce, including false and misleading comparative advertising and claims that [Vitamin Energy's] Products provide steroid-like athletic performance enhancement."  (Id. ¶ 40.)  The following advertisements by Plaintiff are provided as examples in the Underlying Complaint:

---

[5]     The Lanham Act, also known as the Trademark Act of 1946, was enacted to provide federal protection for trademarks and is codified at 15 U.S.C. § 1051 et seq.  The Act sets forth multiple ways in which it may be violated.

## PERFORM+

### Energy On Call

Many factors influence performance. **VitaminEnergy**® contains performance-enhancing supplements like Vitamin B12 that help in the production of red blood cells, caffeine to provide energy and CBD as an anti-inflammatory. The synergy provided by these nutrients allow **VitaminEnergy**® to deliver improved performance without the use of harmful steroids or steroid-like compounds.

**SHOP**



**FORMULATED FOR ATHLETES**

The synergy provided by these nutrients allow **VitaminEnergy**® to deliver improved performance without the use of harmful steroids or steroid-like compounds.

## Professional Athletes

**VitaminEnergy**® was originally designed as the energy shot of choice for professional athletes. If you compete at the highest levels in sports, **VitaminEnergy**® gives you a healthier, better for you shot of energy to maximize your performance.



(Id.)  Additionally, the Underlying Complaint alleges:

41. [Vitamin Energy's] statement that "[t]he synergy provided by these nutrients allow VitaminEnergy® to deliver improved performance without the use of harmful steroids or steroid-like compounds" is literally false and/or misleading, has a tendency to deceive a substantial portion of consumers, the intended audience, and actual audience, and has deceived a substantial portion of consumers, the intended audience, and the actual audience.

42. [Vitamin Energy's] statement that "[t]he synergy provided by these nutrients allow VitaminEnergy® to deliver improved performance without the use of harmful steroids or steroid-like compounds" is intended to leave, and does leave, the false and/or misleading impression that, among other things, [Vitamin Energy's] Products possess steroid-like qualities or properties.

43. [Vitamin Energy's] statement that "VitaminEnergy® was originally designed as the energy shot of choices [sic] for professional athletes" is intended to leave, and does leave, the false and/or misleading impression that, among other things, [Vitamin Energy's] Products possess performance enhancing compounds.

44. [Vitamin Energy's] statement that "VitaminEnergy® gives you a healthier, better for you shot of energy to maximize your performance" is literally false and/or misleading, has a tendency to deceive a substantial portion of consumers, the intended audience, and actual audience, and has deceived a substantial portion of consumers, the intended audience, and the actual audience.

45. On information and belief, [Vitamin Energy's] statement that "VitaminEnergy® gives you a healthier, better for you shot of energy to maximize your performance" is intended to leave, and does leave, the false and/or misleading impression that, among other things, [Vitamin Energy's] Products possess performance enhancing compounds and that [Vitamin Energy's] Products contain healthier ingredients than other products in the market, including [the Michigan claimants'] Products.

46. [Vitamin Energy's] representation that its products contain 1000 MG of Vitamin C and 100% Daily Value of Vitamin B is literally false and/or misleading, has a tendency to deceive a substantial portion of consumers, the intended audience, and actual audience, and has deceived a substantial portion of consumers, the intended audience, and the actual audience.

47. On information and belief, the majority of [Vitamin Energy's] Products do not contain 1000 MG of Vitamin C and/or any Vitamin C at all.

48. [Vitamin Energy's] representation that its products contain 1000 MG of Vitamin C and 100% Daily Value of Vitamin B is intended to leave, and does leave, the false and/or misleading impression that, among other things, all of [Vitamin Energy's] Products have 1000 MG of Vitamin C and more Vitamin B Vitamins

5

than [the Michigan claimants'] Products and that [Vitamin Energy's] Products are superior to other products in the market, including [the Michigan claimants'] Products.

(Id. ¶¶ 41-48.)

The Michigan claimants aver that as a result of Plaintiff's "false, misleading, confusing, and deceptive activities" and "false and misleading commercial advertising," they have suffered "irreparable and economic injury . . . including loss of good will, reputational harms, loss of business, loss of sales, loss of revenues, and loss of profits." (Id. ¶¶ 65, 74.) The claimants' seek as relief an award of damages, treble damages, attorney fees and costs, and a preliminary and permanent injunction to enjoin Plaintiff from, among other things, "using, inducing others to use, contributing to others' use of, or directing others to use any false designation of origin or false description . . . or performing any act, which can, or is likely to, lead members of the trade or public to believe that any service or product manufactured, distributed or sold by [Vitamin Energy] are in any manner associated with [the Michigan claimants'] . . . 5-HOUR ENERGY Trademarks. . . ." (Id. at 31 ¶ M(3).)

### C. Plaintiff's Suit Against Defendant

On June 13, 2019, after the Michigan claimants filed suit against Plaintiff, Plaintiff informed Defendant of the Michigan lawsuit via email to put them on notice of their duty to defend under the Policy. (Doc. No. 33 ¶ 16; Doc. No. 33-3 at 2.) On July 10, 2019, Defendant Evanston responded, stating that the claims in the initial Michigan complaint did not trigger coverage under the Policy, and Defendant therefore did not have a duty to defend or indemnify Plaintiff. (Doc. No. 33 ¶ 18; Doc. No. 33-4 at 3.) Because of this response, Plaintiff filed suit against Defendant in the Philadelphia County Court of Common Pleas seeking a declaratory judgment to compel Defendant to provide a defense in the Michigan lawsuit, and adding claims for breach of contract and bad faith in violation of 42 Pa.C.S. § 8371. (Doc. No. 1, Ex. B.) On August 14, 2019,

6

Defendant removed the case to this Court.  (Doc. No. 1.)  The parties then filed a series of pleadings and motions.  (See Doc Nos. 6-9, 11, 13, 15-16, 21-24, 27-28.)

On May 1, 2020, after the Michigan claimants filed the Underlying Complaint, Plaintiff filed in this case a Second Amended Complaint ("SAC") against Defendant, again seeking a declaratory judgment requiring Defendant to provide a defense in the Michigan lawsuit, and again with claims for breach of contract and bad faith.  (See Doc. No. 33.)  In the SAC, Plaintiff argues that Defendant is required to defend them because the Underlying Complaint alleges "Advertising Injury" through "separate and independent allegations regarding false and misleading comparative advertising that purportedly disparaged the Michigan [claimants'] product. . . ."  (Id. ¶¶ 23, 56, 59.)

To support this assertion, Plaintiff first points to the allegation in the Underlying Complaint that Plaintiff "advertises its product with a series of misleading and false statements, including false and misleading comparative advertising and claims that [Plaintiff's] Products provide steroid-like athletic performance enhancement."  (Id. ¶ 31; Doc. No. 33-6 ¶ 40.)  By including a comparison chart that Plaintiff uses in its advertising, Plaintiff argues that the Michigan claimants "specifically allege that [Plaintiff] is using comparative advertising to disparage 5-Hour Energy[]" by "stating and/or insinuating that (a) 5-Hour Energy is an inferior product to Vitamin Energy and (b) 5-Hour Energy does not contain certain essential nutrients that are in Vitamin Energy."  (Doc. No. 33 ¶¶ 35-37.)  The chart is once again reproduced below.



(Id. ¶ 35; Doc. No. 33-6 at 12.)

Second, Plaintiff notes that the Michigan claimants "make two distinct allegations about [Plaintiff's] advertisements" which both suffice to trigger coverage under the Policy, "in addition to insinuating that their allegations include other misleading and false advertisements not specifically identified or discussed in the [Underlying Complaint]." (Doc. No. 33 ¶ 32.) The two distinct allegations Plaintiff references are contained in paragraphs 45 and 48, which read as noted supra:

> 45. On information and belief, [Vitamin Energy's] statement that "VitaminEnergy® gives you a healthier, better for you shot of energy to maximize your performance" is intended to leave, and does leave, the false and/or misleading impression that, among other things, [Vitamin Energy's] Products possess performance enhancing compounds and that [Vitamin Energy's] Products contain healthier ingredients than other products in the market, including [the Michigan claimants'] Products.
>
> . . .

8

> 48. [Vitamin Energy's] representation that its products contain 1000 MG of Vitamin C and 100% Daily Value of Vitamin B is intended to leave, and does leave, the false and/or misleading impression that, among other things, all of [Vitamin Energy's] Products have 1000 MG of Vitamin C and more Vitamin B Vitamins than [the Michigan claimants'] Products and that [Vitamin Energy's] Products are superior to other products in the market, including [the Michigan claimants'] Products.

(Id. ¶¶ 40, 42; Doc. No. 33-6 ¶¶ 45, 48.)  These two allegations of comparative advertising, Plaintiff argues, "can only be interpreted to be disparaging towards the Michigan [claimants'] product." (Doc. No. 33 ¶ 44.)

Third, Plaintiff points to the allegations in paragraphs 42 and 43 of the Underlying Complaint that Plaintiff "claims that [its product] was originally designed as the 'shot of choice' and that its product 'deliver[s] improved performance without the use of harmful steroids or steroid like compounds,'" arguing that "inherent in these averments is the allegation that [Plaintiff] is insinuating that the Michigan [claimants'] own product either (a) contains steroids and/or (b) is just as harmful as steroids."  (Id. ¶¶ 46-47; Doc. No. 33-6 ¶¶ 42-43.)  Lastly, Plaintiff notes that the Michigan claimants allege "economic and irreparable injury" as a result of Plaintiff's "allegedly false, misleading, confusing, and deceptive advertising."  (Doc. No. 33 ¶ 48; Doc. No. 33-6 ¶¶ 65, 74.)  In toto, Plaintiff contends that these allegations in the Underlying Complaint trigger coverage under the Policy for "Advertising Injury" and are not subject to any Policy exclusions.  (Doc. No. 33 ¶¶ 49, 56.)

## D.  The Instant Cross-Motions for Judgment on the Pleadings

On May 12, 2019, Defendant filed an Answer to the SAC disputing Plaintiff's interpretation of the Policy, (Doc. No. 34), and on May 20, 2019, Defendant filed the instant Cross-Motion for Judgment on the Pleadings (Doc. No. 36-1).  In the Motion, Defendant argues that they have no duty to defend Plaintiff in the Michigan lawsuit because allegations in the Underlying Complaint do not constitute "Advertising Injury" under the Policy.  (Doc. No. 36-1 at 7.)

9

While the Underlying Complaint accuses Plaintiff of making "false statements about its own products in comparative advertising," Defendant asserts that this "is not disparagement of 5-Hour Energy." (Id. at 7-8.)  "Allegations that Vitamin Energy falsely claimed that its own products are superior as compared to other products in the market place is not disparagement of the [Michigan claimants,]" and if it were, Defendant argues it "would subject any advertisement extolling the superior quality of a company or its products to litigation." (Id. at 30.)  Above all, Defendant states that if the Underlying Complaint does allege Advertising Injury, it still need not defend Plaintiff because Policy exclusions bar coverage "for claims of intellectual property infringement, unfair competition, the incorrect description of products, and the failure for the product to conform to statement of performance." (Id. at 8.)

On June 3, 2020, Plaintiff filed a Memorandum of Law in Opposition to Defendant's Motion for Judgment on the Pleadings (Doc. No. 38), and its Cross-Motion for Partial Judgment on the Pleadings (Doc. No. 39).  In the Memorandum, Plaintiff contends that the "plain language of and allegations" in the Underlying Complaint "specifically allege acts of disparagement, through comparative advertising, which trigger [Defendant's] duty to defend." (Doc. No. 38 at 1.) Plaintiff also argues that the Underlying Complaint "infers or insinuates" that its "comparative advertising disparages the Michigan [claimants'] products." (Id. at 11.)

Plaintiff specifically focuses on paragraphs 40-48 of the Underlying Complaint and argues that they accuse Plaintiff of "engag[ing] in false and misleading advertising that ultimately ***disparaged*** the Michigan [claimants'] products . . . through comparative advertising that directly compares Vitamin Energy's products to its own[,]" which falls "squarely within the coverage provided by the Policy." (Id. at 5) (emphasis in original).  Plaintiff then readdresses the comparative advertising chart, claiming that its placement "immediately after the Michigan [claimants'] allegations about comparative advertising can only support an interpretation that the

10

[Underlying] Complaint contains claims that Vitamin Energy is disparaging 5-Hour Energy via comparative advertising. . . ." (Id. at 11.)  Additionally, Plaintiff warns that the "somewhat vague nature of the Michigan [claimants'] allegations in the [Underlying] Complaint" were pled "in such a manner to create this very coverage dispute," and that "Pennsylvania courts are cognizant of such behavior." (Id. at 7-8.)

On June 15, 2020, Defendant filed a Reply in Support of its Motion for Judgment on the Pleadings and in Opposition to Plaintiff's Cross-Motion for Partial Judgment on the Pleadings. (Doc. No. 42.)  In its Reply, Defendant accuses Plaintiff of "ask[ing] this Court to find coverage through implication, interpretation and imagination." (Id. at 2.)  It further avers that comparative advertising is not disparagement "unless there are explicitly false statements about the competitor's product(s)," and Plaintiff has failed to show that the Underlying Complaint contains any allegations of disparagement against the Michigan claimants' products. (Id. at 3-4.)

On July 14, 2020, the Court held a hearing on the motions, during which the parties argued their respective positions. (Doc. No. 37.)  The Cross-Motions are now ripe for disposition.

## III.   STANDARDS OF REVIEW

### A.  Judgment on the Pleadings

"After the pleadings are closed—but early enough not to delay trial—a party may move for judgment on the pleadings." Fed. R. Civ. P. 12(c).  In deciding a motion for judgment on the pleadings, a court must consider only those documents contained in the pleadings. See Moco Invs., Inc. v. United States, 362 F. App'x 305, 307 n.4 (3d Cir. 2010) (explaining that the district court's consideration of documents outside the pleadings converted the motion for judgment on the pleadings into a motion for summary judgment).

A motion for judgment on the pleadings is analyzed under the same standard as a motion to dismiss under Fed. R. Civ. P. 12(b)(6). See Spruill v. Gillis, 372 F.3d 218, 223 n.2 (3d Cir.

2004) (explaining that "there is no material difference in the applicable legal standards" for Rule 12(b)(6) and Rule 12(c) motions). Like a motion to dismiss, under Rule 12(c), "the trial court must view the facts in the pleadings in the light most favorable to plaintiff and must grant the motion only if the moving party establishes that no material issues of fact remain[] and that it is entitled to judgment as a matter of law." Shelly v. Johns-Manville Corp., 798 F.2d 93, 97 n.4 (3d Cir. 1986); see also Rosenau v. Unifund Corp., 539 F.3d 218, 221 (3d Cir. 2008) (quoting Jablonski v. Pan Am. World Airways, Inc., 863 F.2d 289, 290 (3d Cir. 1988)). A motion for judgment on the pleadings is only granted where "the plaintiffs would not be entitled to relief under any set of facts that could be proved." Green v. Fund Asset Mgmt., L.P., 245 F.3d 214, 220 (3d Cir. 2001).

## B. Insurance Policy Interpretation

In a diversity action, "the choice of law rules of the forum state [determine] which state's law will be applied." Shuder v. McDonald's Corp., 859 F.2d 266, 269 (3d Cir. 1988). "Pennsylvania applies a 'flexible rule which permits analysis of the policies and interests underlying the particular issue before the court' and directs courts to apply the law of the state with the 'most interest in the problem.'" Specialty Surfaces Int'l, Inc. v. Cont'l Cas. Co., 609 F.3d 223, 229 (3d Cir. 2010) (quoting Hammersmith v. TIG Ins. Co., 480 F.3d 220, 227 (3d Cir. 2007)). The parties do not dispute that Pennsylvania law governs the interpretation of Defendant Evanston's General Liability Insurance Policy.

In Pennsylvania, if the language of an insurance policy is "clear and unambiguous, a court is required to give effect to that language." Prudential Prop. & Cas. Ins. Co. v. Sartno, 903 A.2d 1170, 1174 (Pa. 2006) (quoting Gene & Harvey Builders, Inc. v. Pa. Mfrs. Ass'n Ins. Co., 517 A.2d 910, 913 (Pa. 1986)). But "[w]here a provision of a policy is ambiguous, the policy provision is to be construed in favor of the insured and against the insurer, the drafter of the agreement." Id. (quoting Standard Venetian Blind Co. v. Am. Empire Ins. Co., 469 A.2d 563, 566 (Pa. 1983)).

"Contractual terms are ambiguous if they are subject to more than one reasonable interpretation when applied to a particular set of facts."  Id.

### C.  Insurer's Duty to Defend

In determining whether an insurer has a duty to defend its insured, Pennsylvania follows the "four corners" rule, which requires that courts compare "the four corners of the insurance contract to the four corners of the complaint."  Lupu v. Loan City, LLC, 903 F.3d 382, 389 (3d Cir. 2018) (quoting Am. & Foreign Ins. Co. v. Jerry's Sports Ctr., Inc., 2 A.3d 526, 541 (Pa. 2010)).  "[T]he factual allegations of the underlying complaint against the insured are to be taken as true and liberally construed in favor of the insured," and a court must "look to the facts alleged in the underlying complaint, not the cause of action pled."  Post v. St. Paul Travelers Ins. Co., 691 F.3d 500, 517 (3d Cir. 2012) (quoting Frog, Switch & Mfg. Co. Inc. v. Travelers Ins. Co., 193 F.3d 742, 746 (3d Cir. 1999) (emphasis omitted)); QBE Ins. Corp. v. M & S Landis Corp., 915 A.2d 1222, 1225 (Pa. Super. 2007)) (internal quotations omitted).  Therefore, "if the factual allegations of the complaint on its face encompass an injury that is actually or potentially within the scope of the policy," the insurer has a duty to defend.  Id. (quoting Am. & Foreign Ins. Co., 2 A.3d at 541).

## IV.    ANALYSIS

### A.  Defendant Does Not Have a Duty to Defend Plaintiff in the Michigan Lawsuit

Plaintiff's Second Amended Complaint contains three claims: 1) declaratory judgment, 2) breach of contract, and 3) bad faith in violation of 42 Pa.C.S. § 8371.  (See Doc. No. 33.)  Focusing on the request for a declaratory judgment, Plaintiff asks this Court to find that allegations in the Underlying Complaint constitute "Advertising Injury" as defined under the Policy, thus triggering coverage and requiring Defendant to defend it in the Michigan lawsuit.  (See id. ¶¶ 56, 59.)  As noted earlier, "Advertising Injury" is defined in the Policy as:

[I]njury, including consequential Bodily Injury, arising out of oral or written publication of material that libels or slanders a person or organization or a person's or organization's products, goods or operations or other defamatory or disparaging material, occurring in the course of the Named Insured's Advertisement.

(Doc. No. 33-1 at 14.)

The main issue raised in the parties' Cross-Motions for Judgment on the Pleadings is whether allegations in the Underlying Complaint constitute disparagement of the 5-Hour Energy product developed by the Michigan claimants, and therefore Advertising Injury. Plaintiff argues that the Underlying Complaint, specifically the allegations in paragraphs 40-48, accuse Plaintiff of engaging in "false and misleading advertising that ultimately ***disparaged*** the Michigan [claimants'] products, commonly known as 5-Hour Energy 'liquid energy shots' through comparative advertising that directly compares [Plaintiff's] product to its own." (Doc. No. 38 at 5) (emphasis in original). Paragraph 40 includes the examples of Plaintiff's advertisements as noted above:





(See Doc. No. 33-6 ¶ 40.)  Defendant argues to the contrary that a reading of these advertisements

and the allegations in paragraphs 40-48 of the Underlying Complaint do not show that Advertising

Injury exists because "[a]llegations that [Plaintiff] made false statements about its own products

in comparative advertising . . . is not disparagement of 5-Hour Energy."  (Doc. No. 36-1 at 7-8.)

And Defendant submits that if courts were to find such advertising is disparaging, it "would subject

any advertisement extolling the superior quality of a company or its products to litigation."  (Id. at

30.)

 In Pennsylvania, commercial disparagement is an actionable claim where the statement in

question attacks the quality of the claimant's goods such that it reduces their marketability.  See

U.S. Healthcare, Inc. v. Blue Cross of Greater Philadelphia, 898 F.2d 914, 924 (3d Cir. 1990).  To

make out a claim of commercial disparagement, a claimant must show "1) that the disparaging statement of fact is untrue or that the disparaging statement of opinion is incorrect; 2) that no privilege attaches to the statement; and 3) that the plaintiff suffered a direct pecuniary loss as the result of the disparagement."  Id.  Similarly, "[t]he tort of trade libel, in Pennsylvania, arises from the publication of a disparaging statement concerning the business of another."  Charter Oak Ins. Co. v. Maglio Fresh Foods, 629 F. App'x 239, 242 n.1 (3d Cir. 2015) (citation omitted).

In cases with a substantially similar or identical "Advertising Injury" insurance policy clause, courts have held that allegations accusing the insured of making false statements about its own products is not disparagement and does not constitute Advertising Injury.  See e.g. Albion Eng'g Co.v. Hartford Fire Ins. Co., 779 F. App'x 85, 88 (3d Cir. 2019) (finding no advertising injury because the underlying claimant alleged that plaintiff lied about its own products, never making claims that plaintiff published false statements about the claimant's products); Charter Oak Ins. Co. v. Maglio Fresh Foods, 979 F. Supp. 2d 581, 594 (E.D. Pa. 2013), aff'd, 629 F. App'x 239 (3d Cir. 2015) (finding that the insured did not meet its burden of proving advertising injury to grant coverage by the insurer, as the evidence showed that the insured "merely misrepresented its own product"); Frog, Switch & Mfg. Co., Inc. v. Travelers Ins. Co., 193 F.3d 742, 748 (3d Cir. 1999) (explaining that, unlike a similar case that stated a claim for disparagement where the "insured made derogatory statements about the underlying plaintiff's own products," the underlying complaint did not allege that plaintiff made disparaging remarks about the underlying claimant's products).

The Albion case is particularly analogous to this one.  In Albion, the plaintiff was issued an insurance policy that required the defendant insurance company to defend plaintiff in a suit seeking damages for advertising injury, defined in the policy as "oral, written or electronic publication of material that slanders or libels a person or organization or disparages a person's or

16

organization's goods, products or services." Albion Engineering Co., 779 F. App'x at 86. Plaintiff's competitor, who believed plaintiff made false statements "claim[ing] its products were made in the United States when they were really made in Taiwan," sued plaintiff alleging a Lanham Act violation under 15 U.S.C. § 1125(a), and tortious unfair competition "through false statements and material omissions" under New Jersey law. Id. at 87. After defendant determined that the suit "did not meet the terms of the policy" and refused to defend, plaintiff filed suit against defendant to enforce coverage. Id. at 86. Both parties filed motions for summary judgment, the district court entered judgment for defendant, and the Third Circuit affirmed. Id. at 87, 90.

In affirming, the Third Circuit held that plaintiff did not prove the competitor's claims constituted disparagement or defamation, and therefore defendant had no duty to defend. Id. at 90. The competitor alleged that plaintiff "made 'false statements of facts, misrepresentations, and material omissions of facts of the geographic origin of the subject merchandise and the commercial activity of [plaintiff] in violation of . . . the Lanham Act'" and also "made materially similar allegations for its claim of unfair competition." Id. at 88. But because trade libel, product disparagement, and defamation all "require publication of a false statement concerning the other" under New Jersey law, the competitor's suit did not trigger coverage under the insurance policy as they "never claim[ed] that [plaintiff] published false statements about [the competitor's] products." Id.[6]

Here, the Underlying Complaint contains seven claims: four claims under the Lanham Act, common law trademark infringement, indirect trademark infringement, and unfair competition

---

[6]   Even though Albion was decided under New Jersey law, the Third Circuit's rationale holds true here because commercial disparagement and trade libel in Pennsylvania similarly require the alleged false statement be about the claimant's products. See Charter Oak Ins. Co. v. Maglio Fresh Foods, 629 F. App'x 239, 242 n.1 (3d Cir. 2015); U.S. Healthcare, Inc. v. Blue Cross of Greater Philadelphia, 898 F.2d 914, 924 (3d Cir. 1990).

under Michigan law.  (See Doc. No. 33-6.)  The allegations at issue are incorporated by reference

into all claims, (see id. ¶¶ 49, 61, 69, 78, 88, 96, 104), and like in Albion, the allegations accuse

Plaintiff of making false statements about its own products in its advertising.  (See id. ¶¶ 40-48.)

No allegations in the Underlying Complaint accuse Plaintiff of making false statements about 5-

Hour Energy.

Despite this impediment to coverage under the Policy, Plaintiff asks this Court to find

disparagement by implication in the Underlying Complaint because it "infers or insinuates that

[Plaintiff's] comparative advertising disparages the Michigan [claimants'] products, while not

bringing actual causes of action for defamation." (Doc. No. 38 at 11.)[7]  Plaintiff further speculates

---

[7]   Plaintiff sporadically argues defamation in addition to disparagement in their Memorandum of
Law in Opposition to Defendant's Motion for Judgment on the Pleadings.  (See Doc. No. 38.)
It is worth noting that, in Pennsylvania, defamation is often used to describe commercial
disparagement:

> Disparagement of title, variously labeled slander of title, defamation of title, or in
> other contexts, slander of goods, trade libel or injurious falsehood, is the false and
> malicious representation of the title or quality of another's interest in goods or
> property.

Pro Golf Mfg., Inc. v. Tribune Review Newspaper Co., 809 A.2d 243, 247 (Pa. 2002) (citations
omitted). The main difference between defamation and disparagement concerns damages;
defamation "protects against damage to one's reputation," whereas commercial disparagement
"protects one's economic interests against pecuniary loss." Id. at 245.  Therefore, this Court
need not address defamation separately.

Additionally, Plaintiff cites Titan Indem. Co. v. Cameron, 77 F. App'x 91 (3d Cir. 2003), to
show how "federal and state courts in Pennsylvania regularly rely on inferences in the
underlying pleading." (Doc. No. 38 at 12.)  Titan involved an insurer's duty to defend a police
officer, where coverage under the insurance policy turned on whether the officer's actions in
inflicting bodily harm were "intentional."  Titan Indem. Co., 77 F. App'x at 92-93.  The court
utilized the principle of "inferred intent" to clarify an ambiguous insurance policy exclusion
that "exclude[d] coverage for harm the insured expects or intends. . . ." Id. at 95 (emphasis
added).  The policy exclusion for "harm" referred to bodily harm, and in justifying its use of
"inferred intent," the court pointed only to cases that dealt with intent to cause bodily harm.
Id. at 95-97.  Because neither bodily harm nor an exclusion regarding an expectation or intent
to inflict bodily harm is at issue in this case, Titan is not persuasive here.  Moreover, there is
no comparable ambiguous provision in the Policy in question in this case that would allow for

that the Underlying Complaint was "carefully pled," the "somewhat vague nature" of the allegations "is most certainly intentional," and courts in Pennsylvania are "cognizant of such behavior." (<u>Id.</u> at 7-8.)  But under the four corners rule, this Court is bound by the factual allegations in the Underlying Complaint, <u>see</u> <u>Post</u>, 691 F.3d at 517, and Pennsylvania has not yet sanctioned claims for implicit disparagement.[8]  In fact, the Third Circuit in <u>Albion</u> rejected adopting and applying a theory of implicit disparagement, albeit in a case involving New Jersey law:

> Albion argues that, in any event, Albion's statements about its own products "implicitly" defame Newborn, and thus give rise to a duty to defend.  Under this theory, Albion disparaged Newborn by making false statements about Albion's own products.
>
> New Jersey law, however, does not recognize a claim for implicit disparagement or defamation.  To plead disparagement or defamation, a plaintiff must allege the defendant published false statements about the plaintiff's product.  Albion points to no New Jersey case that suggests otherwise.
>
> Albion urges the Court to adopt California law instead, on the theory that New Jersey would follow California in modifying its law to accept theories of implicit defamation and disparagement.  But New Jersey courts themselves have the privilege of upending or overturning their legal precedents.  We do not predict what New Jersey's law will be, we merely apply what it is.  And in New Jersey, a plaintiff can only make out a disparagement or defamation claim by alleging the publication of a false statement about another.  Albion has not shown that such is the case here.

_____

a principal of "inferred" or "implicit" disparagement.

As stated <u>supra</u>, the parties do not dispute that Pennsylvania law governs interpretation of the Policy in this diversity action.  Because Pennsylvania's four corners rule binds the Court to the factual allegations in the Underlying Complaint, <u>see</u> <u>Post v. St. Paul Travelers Ins. Co.</u>, 691 F.3d 500, 517 (3d Cir. 2012), and because the Court must give effect to the unambiguous language in the Policy, <u>see</u> <u>Prudential Prop. & Cas. Ins. Co. v. Sartno</u>, 903 A.2d 1170, 1174 (Pa. 2006), disparagement cannot be inferred or implied from the Underlying Complaint when there is no language in the Policy covering claims of implicit disparagement.

[8]  Plaintiff's counsel in effect asks the Court to second guess the motive of Michigan claimants' counsel in the manner in which it designed the Underlying Complaint.  Because this Court is bound by factual allegations within the four corners of the Underlying Complaint, the Court will not do so.

Albion Engineering Co., 779 F. App'x at 89-90.  Likewise, this Court finds it inappropriate to recognize a claim of implicit disparagement when Pennsylvania state courts have not yet recognized it themselves.   As previously noted, Pennsylvania law recognizes claims for commercial disparagement and trade libel, both of which require making a false statement about another's products.  See Charter Oak Ins. Co., 629 F. App'x at 242 n.1; U.S. Healthcare, Inc., 898 F.2d at 924.  The Underlying Complaint does not allege that Plaintiff made false statements about 5-Hour Energy.

Furthermore, the weight Plaintiff places on "comparative advertising," which was alleged once in the Underlying Complaint,[9] does not lead this Court to find disparagement.  Comparative advertising is actionable under § 1125(a) of the Lanham Act where the accused "allegedly made misrepresentations about *both* their own goods and those of competitors. . . ."  Gordon & Breach Science Publishers S.A. v. Am. Inst. of Physics, 859 F. Supp. 1521, 1531 (S.D.N.Y. 1994) (emphasis in original).  Under the Lanham Act, comparative advertising is distinct from product disparagement and trade libel, but all claims require that the accused make misrepresentations about the claimant's products.[10]  See id. at 1530-31.

---

[9]   (See Doc. No. 33-6 ¶ 40.)

[10]   The court in Gordon explained:

> Under the 1988 amendments to Section 43(a), trade libel and product disparagement claims became actionable. This was accomplished by rephrasing the statute so that it includes not only misrepresentations about the nature of the defendant's goods or services, but also misrepresentations about "*another person's* goods, services, or commercial activities." Section 43(a), 15 U.S.C. § 1125(a).

Gordon & Breach Science Publishers S.A. v. Am. Inst. of Physics, 859 F. Supp. 1521, 1530 (S.D.N.Y. 1994) (emphasis in original).  Section 1125(a) of the Lanham Act, like Pennsylvania state law, only recognizes claims of disparagement where there the accused made false statements about another's products.  Here, the Underlying Complaint includes two claims under § 1125(a): false and misleading descriptions and designations of affiliation, connection, association, source, sponsorship, and approval under subsection (a)(1)(A), and false

20

Here, even though paragraph 40 of the Underlying Complaint includes the advertised graphic of Plaintiff comparing its product to four others, one being 5-Hour Energy, the Michigan claimants do not accuse Plaintiff of making false statements about 5-Hour Energy in that advertisement.  (See Doc. No. 33-6 ¶ 40.)  Rather, they allege that Plaintiff made false statements about the contents of its own product in the advertisement.  (See id. ¶¶ 40-48.)

Accordingly, because there are no allegations in the Underlying Complaint that accuse Plaintiff of making false statements about the Michigan claimants' products, under Pennsylvania law there is no claim of disparagement that is actually or potentially within the scope of the Policy to trigger a duty to defend.  See Am. & Foreign Ins. Co., 2 A.3d at 541.  Therefore, the Underlying Complaint does not allege "Advertising Injury" as defined under the Policy, and Defendant has no duty to defend Plaintiff in the Michigan lawsuit.[11]

**B.  Plaintiff's Breach of Contract and Bad Faith Claims will be Dismissed**

Finally, this Court will dismiss Plaintiff's breach of contract and bad faith claims because Defendant has no duty to defend Plaintiff in the Michigan lawsuit.  See e.g. Frog, Switch & Mfg. Co., Inc., 193 F.3d at 751 n.9 (rejecting the bad faith claim because "bad faith claims cannot survive a determination that there was no duty to defend. . . ."); Continental Casualty Co. v. Westfield Ins. Co., No. 16-5299, 2017 WL 1477136, at *10 (E.D. Pa. Apr. 24, 2017) (dismissing the breach of contract claim because the underlying complaint did not trigger a duty to defend); Everest Indem. Ins. Co. v. Valley Forge, Inc., 140 F. Supp. 3d 421, 432 (E.D. Pa. 2015) ("There

---

advertising under subsection (a)(1)(B).  (See Doc. No. 33-6 at 19-20.)  But since the Underlying Complaint does not allege that Plaintiff made false statements about 5-Hour Energy, there is no actionable claim of disparagement under § 1125(a) of the Lanham Act.

[11]  Because Defendant does not have a duty to defend Plaintiff in the Michigan lawsuit, this Court need not discuss whether the relevant exclusions in the Policy, see supra note 4, apply to bar coverage.

can be no breach of contract or bad faith claim since [Defendant] has neither a duty to defend nor indemnify [Plaintiff] in the underlying action.").

**V.      CONCLUSION**

For the foregoing reasons, Defendant's Motion for Judgment on the Pleadings (Doc. No. 36-1) will be granted, and Plaintiff's Motion for Partial Judgment on the Pleadings (Doc. No. 39) will be denied.  An appropriate Order follows.