1

```
                    UNITED STATES DISTRICT COURT
                  EASTERN DISTRICT OF PENNSYLVANIA

VITAMIN ENERGY, LLC,        .    CA NO. 2:19-cv-03672-JHS
                            .
            Plaintiff,      .
                            .    U.S. Courthouse
      v.                    .    601 Market Street
                            .    Philadelphia, PA 19106
EVANSTON INSURANCE,         .
et al.,                     .    December 21, 2022
                            .    4:42 p.m.
            Defendants.     .
                            .
. . . . . . . . . . . . . ..

      TRANSCRIPT OF STATUS CONFERENCE HELD VIA TELECONFERENCE
              BEFORE HONORABLE JOEL H. SLOMSKY
                 UNITED STATES DISTRICT JUDGE

APPEARANCES:

For Vitamin Energy, LLC:  REID A. WINTHROP
                          WINTHROP LAW GROUP, P.C.
                          120 Newport Center Drive
                          Newport Beach, CA 92660

                          GEORGE T. SCHOOFF
                          LEGAL SERVICES GROUP, PLLC
                          1247 Woodward Avenue, Suite 312
                          Detroit, MI 48226

For Evanston Insurance     APRIL T. VILLAVERDE
Company:                   HINSHAW & CULBERTSON LLP
                           343 Thornall Street, Suite 640
                           Evanston, NJ 08837

                           JASON R. SCHULZE
                           HINSHAW & CULBERTSON LLP
                           151 North Franklin Street, Suite 2500
                           Chicago, IL 60606

For BRJ Holdings III,      LEE A. STIVALE
LLC                        STIVALE LAW OFFICES PLLC
                           Mills of Victoria
                           1489 Baltimore Pike, Suite 108
                           Springfield, PA 19064

Audio Operator:            MATTHEW HIGGINS
```

2

Transcriber:                UBIQUS REPORTING, INC.
                            61 Broadway, Suite 1400
                            New York, NY 10006
                            212-346-6666
                            Email: infousa@ubiqus.com


          Proceedings recorded by electronic sound
   recording, transcript produced by transcription service.

THE COURT: Counsel, this is Judge Slomsky on the line. This is the case of Vitamin Energy, Inc. versus Evanston Insurance Company, civil action number 19-3672.

And who is on the line for the plaintiff, Vitamin Energy? Hello?

MR. REID WINTHROP: Sorry. Good afternoon, Your Honor. I was on mute. This is Reid Winthrop on behalf of plaintiff, Vitamin Energy.

THE COURT: All right. Welcome.

And who is on the line for Evanston Insurance Company?

MR. JASON SCHULZE: Good afternoon, Your Honor. Jason Schulze from Hinshaw Culbertson on behalf of Evanston Insurance Company.

MS. APRIL VILLAVERDE: And April Villaverde as well, Your Honor.

THE COURT: I'm sorry. Say your name again.

MS. VILLAVERDE: April Villaverde.

THE COURT: Okay. Welcome, everyone. We are on the record, and I listed this matter for a phone conference because of two outstanding matters. One dealt with rescheduling the deposition of a 30(b)(b) corporate designee of the third party, BRJ Holdings. And the other matter dealt with Evanston Insurance Company's motion for clarification of the Court's

order of October 31, 2022.  That's document number 151 in the record and the response from the plaintiff is 163.  And the reply is document number 168.  I have read those documents.

The order I entered granting a protective order to 30(b)(6) corporate designee of BRJ Holdings is document 155 in the record.  So the issue becomes, when does fact discovery close in this case?

Mr. Schooff, maybe you can tell us, if you have that in front of you?

MR. WINTHROP:  Well, Your Honor, this is Reid Winthrop.  Fact discovery closed on December 19th.

THE COURT:  December 19th?  Oh, I knew that.  I apologize.

MR. WINTHROP:  Okay.  Well, I think more time is warranted.

THE COURT:  In view of what?

MR. WINTHROP:  What is going on in this case. There's so many -- the number of open motions that are going to be referred to a Special Master that can go to a point, and I think probably a 90 day continuance is warranted.  I know that there was some pressure by one of the parties not to grant continuances, but I just don't see how it can be not granted in the case of this, what's turning out to be complexity, especially in terms of discovery disputes.

MR. SCHULZE:  Your Honor, may I be heard on that point?  This is Jason Schulze for Evanston.

THE COURT:  Yes, Mr. Schulze?

MR. SCHULZE:  Specifically, on the issue of discovery dates, and I suppose, the remaining dates in the scheduling order, which is something that I certainly thought we were going to address today as well.  I think from Evanston's perspective, I think what we think would be warranted would be an extension of the dates in the scheduling order, particularly some of them, including expert dates, as early as the middle of January.  And certainly there are a number of discovery disputes, that's unquestioned, and there's some discovery that's outstanding, such as the deposition to which you're referring.  And there's also some discovery and depositions that have been requested of Evanston by Vitamin Energy.

And, obviously, there will be some time that will be needed to resolve those discovery disputes, and whatever will happen will have to take place thereafter.  So from our perspective, 90 or 120 days extension of all of those deadlines makes sense, with the exception of all the pending discovery and all the identified discovery disputes will need to be concluded and resolved.

I think from Evanston's perspective, the idea of the parties could just now serve brand new discovery requests

because we have another 90 or 120 days is not what Evanston would contemplate, because we think that this needs to be obviously headed in the direction of wrapping things up.  And we all worked, and I think on both sides worked very hard to try to get it to be done by December 19th.  There obviously are some hiccups and some disagreements on issues and some scheduling problems, and there's a number of reasons why ultimately we were unsuccessful.

But from our perspective, we think that the position based on discovery should be everything that is out and got in by the time of December 19th, including the identification of issues on disputes, needs to be resolved and worked out.  And if there's any follow up discovery that obviously flows directly from those resolutions, that makes sense, but we just shouldn't start from scratch or be allowed to start serving new discovery.

MR. WINTHROP:  Well, and Your Honor --

THE COURT:  Go ahead, Mr. Winthrop.

MR. WINTHROP:  Yes, that's right, Mr. Winthrop.  I generally would agree with Mr. Schulze that reopening discovery completely would not be appropriate under the circumstances.  I don't think that there are only very few limited disputes, a few motions to compel on certain documents that just simply need to be resolved.  And I think there's maybe two or three

depositions that need to be completed.  I think a narrow reopening under a very constrained time frame.  I'm thinking 30 days, not 90, would be more appropriate and something that would not affect the other dates in this case.  Maybe the expert, if needed.  I'm not so sure that's even necessary, but certainly not the trial date or anything else, which people probably actually, I know, have started planning for at this point.

THE COURT:  But I just want to see the scheduling order in place in this case.  It's, let me see, because you are stating the same thing, at least that's what I'm hearing.  The scheduling order is -- there's a Fourth Amended Scheduling Order dated 11/15/22, document 139 in the record.  Is that the --

MR. WINTHROP:  That is, Your Honor.

THE COURT:  All right.  Let me get a copy of that.  It's 139.  And I just want to see what's in there.

All right.  This is going to be in my answer, but, I have a feeling.  Now, Mr. Winthrop, I'm looking at the scheduling order.  Just tell me how you would like this modified.

MR. WINTHROP:  Well, Your Honor, I didn't think it needed to be modified at all, other than to resolve a few of the outstanding or the outstanding discovery disputes.  The

motions that I think that are pending were filed by Evanston, and they were all filed pre-deadline, such that we don't need to actually reopen any dates. They can just resolve the motions, and however those are ruled upon, there'll be compliance with the orders, and that'll be that.

THE COURT: Well, I have to give the Special Master time to resolve the motions. But the motion, I think it was Evanston that scheduled a 30(b)(6) deposition. You have to get that rescheduled.

MR. SCHULZE: Your Honor, may I be heard? Jason Schulze for Evanston.

THE COURT: Yes.

MR. SCHULZE: On this issue? Yeah. Your Honor, I thought 90 days -- I thought 90 to 120 days made sense, except for the obviously the fact discovery closure date. I mean, we have, I'm sure you know, if you have it in front of you by now, the first deadline is January 16th to provide expert reports. It seems very unlikely that, and I guess I don't know how fast the Special Master will be working and will get resolution of these pending issues, but I doubt it will even be heard, let alone resolved, and any of the flowing discovery be resolved within a month or two of that date.

And so according to Mr. Winthrop, if that were date were to hold, we're having experts that are coming out while

discovery is still ongoing, and then you're going to have supplemental reports, and then we have summary judgment motions, that Your Honor will see in page -- in paragraph 4, you know, straight thereafter on March 13th. While it's very likely that there's a lot of pending discovery that's either not resolved or is just concluding.

I think the idea of leaving the dates or only moving 30 days is just manifestly unworkable under the circumstances and with the workload that the Special Master would have just to get through all of the paperwork. As Your Honor noted in your order, that one of the motions has over 600 pages of supporting materials just on the moving brief. So the idea that this can be done in any way without moving the dates, at a minimum, I think all back 90 days. I think Mr. Winthrop and I agree that we shouldn't be starting fresh with new discovery. It's going to take some time to resolve these issues.

THE COURT: All right.

MR. WINTHROP: Your Honor, our concern is --

THE COURT: Yes, go ahead.

MR. WINTHROP: Yes, this motion, this large motion that was filed is 200 pages, it was filed essentially on the last day of completion of fact discovery. You know, it seems to me that that's just a -- I mean, we'll read the motion, its got a lot of stuff in it. But there's very little on a lot of

pages, because, essentially, they didn't get all the documents that we asked for and our response is, "Yes, you did."

And now that they filed this motion on the very last day, and are asking for a 90 or 120 day extension, it seems disingenuous. And we've been -- Your Honor asked which party was trying to keep the trial date, it's been the plaintiff, Vitamin Energy, who has an ongoing interest in keeping the trial date, it has now moved a few times. And to the extent that there needs to be further documents exchanged, I mean, there really aren't any additional documents.

There are, I think, there are only three pending motions. There's one, that I would kind of like to get clarified, that's an omnibus motion asking for more documents. And two motions to compel deposition. I think that's it. And we have a deposition that we're seeking to take. So it's a matter of setting three depositions sometime in January and completing them. And being done and having the Special Master rule on this omnibus motion. It's not as intricate or sensitive as I think it seems.

We've been engaged in discovery for quite some time. I think Evanston has served a total, I have it here somewhere, 32 subpoenas for documents and depositions. They've taken 20 depositions. Even the omnibus, massive, 600 page motion, is directed solely to damages. It's not really about coverage

issues or otherwise.  I mean, that's really what all these discovery disputes have been about is damages.  How much more time is the Court going to allow Evanston Insurance Company, for our insured, to continue to kind of pound the insured with further discovery.  There's got to be an end to it.

MR. SCHULZE:  And Your Honor, just, if I may, this is Jason Schulze again.  Sorry.  I'm just going to -- I think that was a mischaracterization or a misstatement of what I was referring to.  The 150 page motion that I was referring to was actually in the footnote of Your Honor's order of referral to the Special Master, in a footnote.  And it's plaintiff's motion to compel, document 136.  So the characterization of it being padded, or populated, or whatever it was for that particular motion, that's actually Vitamin Energy's motion that Your Honor cited as being 668 pages long.

Also in that footnote, Your Honor notes that there are 13 filings that have come in, that was of December 13th, that Your Honor was trying to deal with, and, obviously, referred some to the Special Master.  Since that time, there have been additional motions filed, including the motion for financial discovery that Vitamin Energy has filed.  So there is a plethora of issues that need to be sorted out and to suggest that, first of all, that they're all one-sided and they're coming solely from Evanston, is simply not the case.

And number two, that they can be kind of just easily disposed of, and have the current dates remain, is just a recipe for disaster.  And likely will just lead to us being back here, you know, in the middle of January on another phone call, after Your Honor sorts out yet more of these complications.

THE COURT:  Let me speak now.  I've given both sides the opportunity to tell me their views.  And I'm looking at the order of December 13th, 2022.  And I did not enter that lightly.  Document 156.  I mean, I see both sides in that footnote in submitting motions, letters, on the new discovery. And I do note that it was plaintiff's motion to compel that was 668 pages long, document number 136.

We looked at all of these motions, and I just can't see how you can resolve it that quickly.  Mr. Winthrop, unfortunately, given all these discovery matters that have opened in this case, and I just made a decision, I'm going to have a Special Master make a report and recommendation for me on these things.  I will extend the -- I'm going to issue a new scheduling order.  It will be a Fifth Amended Scheduling Order. I'm going to extend all the dates 90 days.  This will afford the Special Master the time necessary in order to review all this and make a recommendation to me on resolving all these disputes.

I want to get this case concluded as quickly, and efficiently, and as fairly as the parties feel, that Mr. Winthrop is expressing.  But these requests are becoming endless.  Every time I thought I had resolved one matter, new letters, new filings came in.  Obviously, this case is not in the posture yet where we are done now.  During this 90 days, this extension, and it will be 90 days from today, which is December 21, it's going to look backwards on what was to be completed under the Fourth Amended Scheduling Order of December 19.  And we -- all the dates will be continued.  I don't see how the parties can prepare a case without all the dates in the scheduling order being continued.

Also, this week I will -- I'm pretty sure it will be this week, that I will be entering the order appointing the Special Master.  So Mr. Rone and his associate will contact you, hopefully, quickly and get moving on this and get this case resolved.  Or get the disputes resolved.  Not the case, but all these discovery matters that are open, I'm referring them all to him.

So I had no objection because Mr. Rone is a very experienced lawyer.  So he will be officially appointed this week, and, hopefully, we can get all these disputes resolved as quickly as we can.  Because it just can't be done within the time frame that -- discovery, but the Fourth Amended Scheduling

Order, without overlapping on all the other dates.  So I will continue it 90 days and hopefully that will give the parties sufficient time to resolve all the discovery disputes.

And I'm not going to preclude any further discovery taking place during that period of time.  I think the parties have said to me that they are just about done with all the discovery they need.  But if there are one or two more things you need, I'm not going to limit it.  And certainly, I do that during this period of discovery, and this will be the final continuance.  I'm not going to continue it any additional time.  I'm not going to -- I'm trying to accommodate what's in front of me, accommodate this docket, this case, and all the requests that have been made here.

So look for a Fifth Amended Scheduling Order.  And hopefully an order appointing Mr. Rone and I will ask him to contact you forthwith to get this moving.  And so we have that resolved.  That will give you sufficient time to reschedule, Mr. Schulze, the deposition of the corporate designee of BRJ Holding, I assume?

MR. SCHULZE:  Yes, I was hopeful, and I think counsel for BRJ was hopeful that we could have worked something out for a date in January.  And obviously, with 90 extra days, you know, we're all for getting it done in January, and hopefully we can arrange to have that take place.

THE COURT:  All right.

MR. SCHULZE:  And Your Honor, if -- I am going to work with that.  So I have just a follow up question on the appointment of the Special Master.  But we can finish it with the BRJ first.

THE COURT:  Okay.  You've got to state your name. Who's speaking?  Who's speaking?

MR. SCHULZE:  I'm sorry.  This is Jason Schulze.

THE COURT:  Yes, Mr. Schulze?

MR. SCHULZE:  So I didn't know if we're done with the discussion on BRJ.  I'm all for finishing that first, and then I just had a follow up question on the Special Master that --

THE COURT:  Yeah.  No.  You schedule BRJ, work with Mr. Winthrop or Mr. Schooff and get him scheduled.  You have 90 days now, hopefully you can do it in January and it will go smoothly at this point.

MR. SCHULZE:  Okay.

MR. LEE STIVALE:  Good afternoon, Your Honor.  Lee Stivale, counsel for BRJ.

THE COURT:  Well, welcome, Mr. Stivale.

MR. STIVALE:  I've just been sitting here quietly listening to the missives going back.  We filed for the protective order and we very much appreciate the order of December 13th, Your Honor.  I would be remiss that we've been

in the backseat of this bus getting driven around for the last two, three months and quite frankly have not been treated very well.  Unilateral continuances of depositions and then the reissuance of subpoena and demand for deposition the day that they knew, or should I say that the defendant knew that we would not be available.  I have lead counsel in a murder trial. They knew that.  He has a medical procedure in the beginning of January.  We informed them on numerous occasions that we were just not available on December 14.  But then we're facing a subpoena.  All it would do is take a telephone call, a letter to rearrange things.  But they forced BRJ to expend legal fees and time and drag us into this with a motion.

Your Honor, I would be remiss if I did not represent my client and renew our request for the award of counsel fees against the defendant.  We are available January 15th on for the last two weeks.  We just do not appreciate and can't tolerate the type of treatment we've had by Evanston Insurance Company.

THE COURT:  Mr. Stivale, I see also you have your appearance entered for Vitamin Energy?

MR. STIVALE:  It's actually for BRJ, Your Honor. It's not Vitamin Energy.

THE COURT:  You don't represent Vitamin Energy at all?

MR. STIVALE:  No, Your Honor.  When using the electronic system, it was either our error or the only way we could actually get it to work was to use -- insert Vitamin Energy.  But we, in fact, represent BRJ.

THE COURT:  All right.  So you don't represent Vitamin Energy.  There's a mistake on the docket.  It does indicate that --

MR. STIVALE:  Yes.

THE COURT:  -- you do represent Vitamin Energy.

MR. STIVALE:  I seem to recollect we had some difficulty completing electronic filing because BRJ not being a party.

THE COURT:  All right.  Well, it's --

MR. STIVALE:  It's not the way we do things in the Eastern District.  I don't know what the problem was, and now that I'm required to be here, I'm at a loss. Your Honor.

THE COURT:  I understand.  But I think you can sense, Mr. Stivale, that from the magnitude of the case and the number of lawyers involved and the --

MR. STIVALE:  Well, I've seen the filings over the last days.  I've been quite shocked at the tenor.

THE COURT:  Well, but you've got to let me finish speaking.  I think you can sense the magnitude of the case, the number of persons being deposed, which I'm learning about today

and probably the juggling that's going on in order to accommodate a large number of people.  These things, what's happening to your client, quite frankly, from what I see in the federal court is not entirely uncommon.  And I know that it's obvious to me that Mr. Schooff and his law firm, from what I'm hearing, with his fee, he's quite active in litigating the case.

I did enter the order granting your protective order, which I thought is appropriate.

Let me hear from Mr. Schulze.

MR. SCHULZE:  Yes, Your Honor.  This is Jason Schulze for Evanston Insurance Company.  I will be briefly heard, Your Honor, on this point, because I think it can be disposed of rather quickly.  To be honest with you, I'm a little shocked to hear from Mr. Stivale, his comments just now, if we picked up the phone or if we maybe sent a letter asking and trying to resolve the issue.  In the 60 or so pages attached to the Motion for Protective Order, there are a flurry of emails doing exactly what I think he was just describing, attempting, as vigorously as we could, to try to get everybody to agree.  That there was no reason why we couldn't do this deposition outside after the date, the discovery date, which was December 19th, which was we were faced with.  And we didn't want to be precluded from being able to take this deposition.  We wanted

to get everybody to agree to it.

Exhibit 6 to their motion has my email of December 1st expressly saying that we have no problem trying to arrange a deposition for the first couple of weeks in January, so that we're still able to have Mr. Jefferson's deposition testimony for use in our rebuttal expert reports.  Not even our original expert reports, but our rebuttal reports because we were trying to make sure that we were able to have them referred to in the rebuttal reports, which were going to be due at the end of January.  And all we wanted was Vitamin Energy's counsel to agree that by allowing the deposition to take place after the discovery end date, that that wasn't somehow reopening discovery or we weren't precluded from doing anything from that.

And we also wanted to be able to write your letter and just write to Your Honor and say that this is the agreement we had reached.  Vitamin Energy and Evanston and BRJ's counsel said, well, sounds like we just have an agreement to work out and then we'll be fine.  And guess what?  Vitamin Energy didn't agree to that and said you're going to have to -- we're not going to agree to anything.  So we reissued the subpoena and said we're going to have to hold that subpoena date.

So we reached out to them.  We had tried to accommodate.  We did everything we could and Vitamin Energy

20

would not agree to a simple compromise.  By the way, it's the exact same compromise that we ended up giving for one of the depositions of the subpoenaed former employee of Markel Service, Incorporated, William Clackenbach.  We said that without reservation, that -- however, that issue ended up getting resolved.  It's not going to be foreclosing, so we extended the courtesy to them.  We were not afforded the same courtesy from Vitamin Energy.  And the idea that somehow that would lead to the result in BRJ receiving fees and costs associated with this filing is something we do not agree with, Your Honor.

THE COURT:  All right.  Mr. Stivale, I'll give you the last word on what you're saying.

MR. STIVALE:  I think the communications will stand by their own, Your Honor.  We were dragged through a process and we don't believe that counsel for Evanston really acted in good faith to procure any type of agreement from Vitamin Energy.  So the attachments speak for themselves, Your Honor. Requesting recoupment of attorney fees.

THE COURT:  Under what rule are you seeking attorney's fee?

MR. STIVALE:  45, Your Honor.

THE COURT:  35?

MR. STIVALE:  45.

THE COURT:  Which provision?

MR. STIVALE:  I believe, B, Your Honor.

THE COURT:  I'm looking at 45.

MR. STIVALE:  It provides a -- well, under --

THE COURT:  I don't see it.  Let's take a close look at it.

MR. STIVALE:  It provides an affirmative duty of counsel to act to minimize cost to a 30(b) deponent.  And --

THE COURT:  Where do you see that?

MR. STIVALE:  I'd have to pull it up, Your Honor.  I don't have it in front of me.

MR. SCHULZE:  And, Your Honor, just for the record, while I take it Your Honor is perhaps reviewing Rule 45, and so is counsel, the email on Exhibit 6 of the motion of BRJ, dated December 1st, 2022, is a good faith effort by myself to counsel for BRJ to try to resolve the issues as to moving the date that was set prior to December 14th, which was the existing discovery cut-off date.  And it was asking the agreement of both BRJ and Vitamin Energy to figure out a way to reschedule the deposition for a date that would work for all the parties, all three different parties.  And Vitamin Energy would not agree to that procedure.

So that certainly, in our view, was a good faith effort to try to reach a resolution on this particular issue

without the need for anybody to file any motion practice before Your Honor.

THE COURT:  No, I understand what everybody is saying.  But I just don't order a sanction of counsel fees lightly, unless it's warranted under the Federal Rules of Civil Procedure.  And in this situation, under 30(d)(2), it says the Court may impose an appropriate sanction, including reasonable expenses and attorney's fees incurred by any party on a person who impedes, delays, or frustrates the fair examination of his opponent.  And from what has been presented to me, I would be --

MR. STIVALE:  It would be subrule d.

THE COURT:  I'm sorry?  Was that Mr. Stivale speaking?

MR. STIVALE:  Yes, Your Honor.  45(d).

THE COURT:  45(d)?

MR. STIVALE:  D as in David.

THE COURT:  All right.  So it's 45(d)(1).  Avoiding undue burden or expense sanctions.  A party or attorney responsible for issuing and serving a subpoena must take reasonable steps to avoid imposing undue burden or expense on the person subject to the subpoena.  The court for the district where compliance is required must enforce this duty and impose an appropriate sanction, which may include lost earnings and

reasonable attorney's fees on a party or attorney who fails to comply.

But I can't make a finding on this record that Mr. Schulze has imposed an undue burden or expense on the person subject to subpoena. He took reasonable steps to contact counsel and the other side in order to schedule the deposition. Obviously, there was conflicts by counsel, conflicts on dates. And that's not unusual in trying to get these depositions, especially in the case of this magnitude's schedule. So I will not impose any sanctions on Mr. Schulze or his firm.

I want to move on. Hopefully that now that the 30(b)(6) witness can be -- BRJ will be available after January 15th. I'd like that deposition to be taken between January 15th and January 30th.

Mr. Stivale, if that can be arranged, and please try to work that out with counsel for both sides in this litigation.

MR. STIVALE: We will, Your Honor.

THE COURT: All right. I'm not diminishing your expectation of what you feel about counsel in the case, but I think it's obvious here that there have been a lot of issues that counsel for the parties have not agreed upon. And I'm just trying to get resolved as expeditiously as I can, and as fairly as I can, and again, lawyers have a right to represent

24

their clients in a way that I think is most adequate, most professional in the case.

In any event, I think that resolves everything except for the clarification.

MR. SCHULZE:  Your Honor, sorry.

THE COURT:  Yes?

MR. SCHULZE:  I do not mean to cut you off.  And before we go to the motion for clarification, I did want to go back to the Special Master referral.  I just had a couple of clarifying questions on that.

THE COURT:  Yes, yes.

MR. SCHULZE:  Sorry.  This is Jason Schulze for Evanston Insurance Company.  I apologize.  First of all, I take it, and I guess, I don't know if this is something that would come from the Special Master or it would come from you, but the payment of the fees associated with the Special Master, those will be split 50/50 between the parties?

THE COURT:  That is the usual procedure.

MR. SCHULZE:  Okay.  And unfortunately, as you can tell, Your Honor, sometimes the parties are having trouble making sure that they have full agreement on issues, so we just like to make sure that they are set forth.  So we understand, Your Honor.

MR. WINTHROP:  And this is Reid Winthrop.  I'd just

like clarification.  Is that something that the Court is setting, or is that something that the Special Master will set, depending on the breadth of the work that he needs to complete based on the motions that are being filed?

THE COURT:  It will be in the order appointing the Special Master.  You now have his letter setting forth his fees.  And from what I'm seeing, in terms of the outstanding discovery disputes, it seems to me both sides have filed matters that have to be resolved to the Special Master.  And the fair thing to do would be to have both sides split the fee of the Special Master.

MR. SCHULZE:  Okay, Your Honor.  Sorry.  This is Jason Schulze again.  Just a couple of other issues.  Will the referral order, or at least the order with the Special Master, outline the procedure for the adoption, or I guess objections to any recommendations made by the Special Master and the timing of all of that?  And, I guess, page length, if there's any objections, and all of those procedures?

THE COURT:  I haven't looked at an order in a while appointing a Special Master, so I can't answer all of your questions.  The order appointing a Special Master is quite specific, but there obviously is some discretion afforded the Special Master, I would think, in terms of page limits or things like you said.  I wish I could be more specific with

that, with the exact order that will be entered.

MR. SCHULZE:  All right, Your Honor.  And I apologize.  This is the last question, I promise, on this issue.  But we just want to make sure that we fully understand, I guess, the scope of this.  Again, this is Jason Schulze.  The matter is being referred to the Special Master.  We do understand it's all of the pending discovery issues.  And I guess the question that we have is whether the referral is -- what, in addition, if anything, is being referred to the Special Master that is not, per se, a discovery issue?

And off the top of my head, I can think of at least two.  And there may be more that I wouldn't call necessarily a discovery issue.  One is this motion for clarification, which we understand it seems like Your Honor is going to address.  Another issue, I think there's a pending -- we have a motion to strike some exhibits to the Third Amendment Complaint.  I don't think that that would be necessarily a discovery issue.  And I guess we're just wondering if it's sort of all pending motions are being referred or if it's just the discovery motions?

THE COURT:  When I say discovery motions, I'm using it in a very generic fashion.  It's really the pending outstanding motions that I'm going to refer to him.  I know there's a motion to resolve and I'm looking at the order of -- document 156, as well for the defendant.  I think I may have

entered an order that a motion should be filed on that issue, if I'm not mistaken.  Are there any outstanding motions at this point?  These are the kinds of motions that the Special Master is mostly to make a recommendation to the Court on.  So I hope I've answered your questions, Mr. Schulze.

MR. SCHULZE:  You have.  And I guess my only follow up question of that is, those are the pending motions, are we also -- is Your Honor also contemplating all of the motions that are going to be addressed in the scheduling order, such as summary judgment motions, motions in limine, pretrial matters?  Or is it just pending discovery motions to sort of clean up, I guess, the existing issues that the parties have as it is currently?

THE COURT:  Well, the order of -- document 156 says discovery disputes and/or other pretrial motions.  I don't anticipate at all motions for summary judgment or motions in limine or any other motions like that going to the Special Master.  But frankly, given the magnitude of what I'm seeing in this case in terms of disputes, I just want to see what is filed.  I don't want to preclude anything at this point going to the Special Master.  But right now it would not be my intention to do so.

MR. SCHULZE:  Understood, Your Honor.

THE COURT:  All right.  Anything else before we move

on to the clarification motion?  Because it's my intention to resolve that one.

Mr. Winthrop, anything else?

MR. WINTHROP:  Nothing else, Your Honor.

THE COURT:  All right.  Now, the motion for clarification concerns, from what I'm reading, Mr. Winthrop's firm is sending its billing on behalf of Vitamin Energy in the Michigan case only, to Evanston for payment.  And the bills are being sent to, I believe, Mr. Schulze's firm.  And looking at some of the bills they're being objected to and Evanston's motion for clarification of the court order of February 21, 2022, document 151, because the bills, essentially say, in re 5-hour Energy litigation is the activity description with one or the other itemizations deleted.  Which, could lead to this action.

And Mr. Schulze's firm is objecting that how do we know this work is really for the work on Vitamin Energy.  And Mr. Winthrop's firm represents Vitamin Energy in other matters, and apart from the Michigan lawsuit, and they don't know.  It says 5-hour Energy litigation, and they think it's somewhat odd, in their opinion, that the hours are all rounded and there's no tenth of an hour billing.  And the case has been stayed in Michigan and so this is something to consider, but again, I don't know.

But the question is, what do we do in this situation? I don't know if information is deleted because it's covered by the attorney/client privilege or information is deleted just not to make available to Evanston's counsel. The underlying work done on the case, but in some way, this has to be resolved. I can understand the reason for the motion. I can understand the response that involved in document 163. Why don't we hear from Mr. Schulze. It's your motion.

MR. SCHULZE: Okay, Your Honor. This is Jason Schulze for Evanston Insurance Company. Your Honor is correct that the issue really comes down to the parties certainly have a disagreement and their positions are pretty clear. And there's a stark difference between the party's positions and I think we need some guidance moving forward.

Just to be clear about what we are seeking, we're just seeking a clarification of Your Honor's order, document 133, dated October 31st, 2022, where Your Honor ruled, on page 7 of that order, the defendant shall pay plaintiff's counsel the following and in subparagraph 1B, defense costs from January 28th to the present at the hourly rate that is identified there and now, in quotes, "Plaintiff shall provide defendant with timesheets reflecting the hourly work performed by Legal Services Group."

And then in paragraph 2, on the same order, Your

Honor notes that the work by defense counsel should be supported by invoices documenting the work performed. So Evanston clearly, obviously, thinks that Your Honor's order requires timesheets or invoices, whatever we call them, some sort of document that would reflect a number of different -- would reflect the actual time spent and some modicum of explanation of the work that was performed so that Evanston is able to determine and evaluate and pay appropriately, pursuant to Your Honor's order, the defense costs that were incurred.

I'm sure Your Honor did review both the first set of invoices that were completely redacted with no information other than a unit of time and a date. But they were at least broken down into tenths of an hour. And for the reasons that during the time period of February, March, and April 2022, Evanston was aware that Mr. Schooff was communicating with Evanston at times, they were trying to coordinate the defense. He was undertaking some effort that certainly Evanston knew that he was doing and was doing at Evanston's request as an accommodation. And just to hopefully move forward on this issue, Evanston paid those three invoices, even though there was this outstanding issue, we paid them subject to a reservation of rights, but definitely understood that at least some of that time, there was a way to know that what Mr. Schooff was doing in that instance.

But from May through the end of November, every Monday, Mr. Schooff has billed, or Legal Services Group has billed Mr. Schooff's time, for two hours of work on every Monday except for one or two, over that seven month period and one hour of time for every Friday over that seven month period. And the timesheet doesn't reflect at all what has been done other than the wrote words, "Working on 5-hour Energy litigation and ready," and something redacted regarding 5-hour Energy litigation. Those additional phrases were included because of the efforts that we undertook to suggest and to request that more information would be provided.

And that's all the information that was provided. And, obviously, under the circumstances, we do not believe that that is sufficient. And we would request that you're on a clarify the order. That alone, I think, would certainly be enough to request clarification and seek some relief from Your Honor. There's two or three special circumstances, particularly here, that I think raise significant issues and further questions about Evanston needing more information in this instance.

And number one is the fact that Mr. Schooff serves many roles for Vitamin Energy. And so he's coverage counsel. He's one of the coverage counsel in this case. As we've noted many times already this afternoon, this case has been very

active, and it's looking to be probably very active in the foreseeable future.  And so everything that we're talking about right now is not just for these seven months of invoices and these particular charges.  It's going forward because that's what paragraph 2 of Your Honor's order reflects.

And so however it may be, it seems very likely Evanston, that some of that time that Mr. Schooff is spending on this particular litigation against Evanston, that is not something that Evanston should be paying for, could possibly be on these timesheets.  Again, the unique nature of the manner in which this case has been, or in which these time entries were made, is peculiar.  I think it would be probably the most effective word to use in that instance.  I think everybody on this call, including Your Honor, when he was in private practice, was involved in litigation.  And it would be, I guess, a very unique circumstance that for seven months anyone would do two hours of work every Monday and one hour of work every Friday for seven straight months on any particular case. It certainly could happen.  And I'm not in any way suggesting it is impossible or is it even something that happened in this instance, but it would be out of the ordinary, to say, I think, the least.

And third, overarching all of this, which I think is very significant, is the fact that the case has been stayed.

Or is dormant.  I don't know if there's an official stay in the Michigan case, but I have reviewed the docket, and the docket is an exhibit to our motion.  And the docket reflects that there has essentially been no activity in the case for two years, but there has been no entry whatsoever in the case, no litigation activity in the case during all of 2022.  And just to prepare the fact that there has been no litigation activity in the case, the invoices of which we are referring to the May through November invoices is 90 hours of time is being billed. And if you include the other time that Evanston has already reimbursed Legal Services Group for, that's another 120 hours or 125 hours.

So we're looking at over 200 hours of time billed for a case that, essentially, at least by all accounts, has been stayed.  There may be other information of which I'm not aware, but we certainly didn't get it from the invoice.  There's been no actual litigation activity.

THE COURT:  All right, Ms. Schulze, I didn't mean to cut you off.  I just want to ask you just a few questions.

MR. SCHULZE:  Okay.

THE COURT:  The question becomes how much information do you need in the billing in order to satisfy yourself that it is pursuant to the work being done represented by the manager in the Michigan case?  I may tend to agree with you that the

bill you have now is not sufficient.  But the question is how much information do you need and does a lawyer on the other side have the right to filter out information that might be used to defeat on limited coverage?

MR. SCHULZE:  I'll answer -- this is Jason Schulze for Evanston.  I'll answer the second question first.  Yes, of course.  And we have said it repeatedly in response to, I think, some of the other points that -- arguments that have been made by Vitamin Energy in this case.  That independent counsel certainly has a right to filter out information that it tells an insurance company that is paying it as independent counsel to protect the interests of its client in situations such as this in which there's pending coverage litigation.

So yes, certainly attorney-client communications should be redacted.  Confidential information of the client that shouldn't be disclosed to the insurance company should be redacted.  Information that, I guess, one could legitimately be concerned would be used against the client in pending coverage litigation should not be disclosed.  And I think those are all points that were made in the opposition and I don't know that Evanston has a disagreement with that.

So that's answering, I think, your second question. To answer the first question, we provided examples of, and certainly Your Honor has seen fee petitions while -- you know,

interim fee petitions, while cases are still pending, where the other side is obviously going to be reviewing the fee petition and litigating to see the work product that has been done.  I gave an example -- or Evanston gave an example in the reply brief of an example of how four hours of time could theoretically be billed.  Again, I do not know what Mr. Schooff or Legal Services Group has been doing this year.  I don't know what they have done, other than, obviously, late February, I know that they were involved in conference calls with Evanston's claim representative.

And why there was a redaction of a conference call with Mr. Gorman and Rohini Powell of Evanston regarding the defense of the case for 2.0.  Why was that?  I can't imagine why that would be redacted, because we all know that that took place.  That's not disclosing anything that is remotely harmful to anyone and it's not confidential and it's not an attorney-client communication.  That was one example

Going forward, Your Honor, we will prepare an interrogatory.  I can't necessarily go through all of the possible scenarios, but there are certainly a number of litigation activities that are undertaken that have nothing to do with coverage issues, have nothing to do with attorney-client communications per se, and certainly are not confidential.  These invoices are certainly going to be held

protected, subject to Evanston's obligation to protect and hold confidential the invoices that it receives.  So there should be no concern of 5-hour Energy or anyone else seeing them.  The only party that's going to see them is Evanston.  And as they are being sent to Evanston's counsel, certainly Evanston's counsel, they're not going to be public, they're not going to be filed, they're not going to be made aware to anyone.

So we think that there is certainly a level of non-redacted information that can be provided while still protecting, I think, the interest that Mr. Schooff has.

THE COURT:  Mr. Schultz, let me ask, you give me quite a long explanation, Mr. Schulze, and I understand maybe you feel that you have to give me an extended explanation.  It's a little bit more than I need, frankly.  But are these bills being made to your firm?

MR. SCHULZE:  They were -- yes, Mr. Schooff emailed them to our firm.  Correct.

THE COURT:  Yes.  Okay.

And let me hear from Mr. Winthrop.  My sense, Mr. Winthrop, is that the bills that are being sent, that are being challenged at least in this motion, are not sufficient to put Evanston on notice that they're reasonable enough to pay.  And that's the phraseology, I believe, that's used in the insurance policy.  That's really what's, in my other opinion, is really

the legal test that I have to look at.  And from what I'm seeing, I don't think you're providing enough information for them to review and pay your bills.  You have been appointed by the insurance company.  You are independent counsel.  Mr. Schulze agrees that there's some information that can be filtered out.  If you have any issues in attorney/client privilege, that's something that could be sent to a Special Master to resolve, too.  Keep that in mind.  But I think more complete bills have to be filed in this case.  Let me hear from you, Mr. Winthrop.

And -- and one other point I want to make.  I'm used to seeing bills in one tenth of an hour.  We review a lot of billing as federal judges, and it is unusual to see bills just on an hourly basis.  As far as the Monday or the Friday billing, I have no opinion about that.  But it is unusual not to see -- it is unusual to see bills, like I said, every bill is on an hourly basis.  But let me hear from you, Mr. Winthrop.

MR. WINTHROP:  Thank you, Your Honor.  And this is Reid Winthrop.  And let me just make a quick clarification.  These bills are Mr. Schooff's bills, as independent counsel.  Mr. Schooff is my co-counsel on this case.  And as Mr. Schulze has said, he represents Vitamin Energy on a number of different matters.  The bills that were submitted from Mr. Schooff's office, Legal Services, to Evanston, are strictly bills for

time that he spent as independent counsel in the Michigan case. The implication that they somehow --

THE COURT:  Let me say, I'm not disputing that.

MR. WINTHROP:  I understand.

THE COURT:  It's just the sufficiency of the bills, that's the issue.

MR. WINTHROP:  I understand.  And I'll address that because Your Honor has asked the correct questions, which is, you know, one of the questions was, is there a right to redact? And it's more than that.  It's a duty to redact.  It's a duty under Michigan Rules of Professional Conduct.  And it's a duty in light of this case and the positions of the parties.

As has been discussed, Your Honor had noted he had expected to see a wall erected between defense counsel for Evanston and the claims department, which never happened.  I think Your Honor invited Evanston to address that issue.  We've since taken depositions where that issue has not been addressed.  And so there are a number of serious concerns here that have been discussed by Mr. Schulze in front of the court and asking questions.

Now, in terms of the sufficiency of the bills or the redaction, there's an example that Evanston provided, such as conduct research on, or conduct meeting, or stuff like that. Well, that presupposes that there is more detail that can be

provided that would not either be privileged, work product protection, and certainly reveal strategy of the defense going forward. And the defense on a case that, as Mr. Schulze has noted, is pending, I think it's pending a motion, there is ongoing work. What that work is, has to do with the strategy on the defense. There isn't much more that can be said other than it's in defense of the case. Anything more would, in fact, reveal attorney thought process and strategy and therefore work product on the defense of that case.

THE COURT: Well, you have to convince me of that. In other words, I see a lot of billing that, research on this issue. Or I see billing with took a deposition of so and so. I'm not convinced some of the categories fall into what you're saying.

MR. WINTHROP: And Your Honor, I understand. I do understand. And I think you could probably change and I'm not complicit in this. The underlying case is about a trademark, a patent, unfair competition involving complex intellectual property issues. There's all sorts of things going on in that case. I don't know anything about that case, frankly. I'm not involved in it. I'm not involved in whatever the defense is. What I do know is, I'm sure a word could be changed. Instead of work, it could say research. But beyond that, it would be research on or meeting. It's not going to materially change

the information being provided.  And so what Evanston is asking is instead of the word work being used, the word research being inserted, I guess, in theory, that could happen.  I would invite the Court to suggest that maybe going forward that should happen.  But if the Court recalls, these bills, by their nature, needed to be essentially recreated because of the nature of the order, which was that the agreement is no longer going to be honored, and you now have to submit the hours that were worked.

And that is in part why they are structured in the way they are, because Mr. Schooff needed to then go back, and what a lot of attorneys do in circumstances like this, they have to then present their hours based on what an order is in order to comply.  That's why I think you're seeing them to be a little unusual.  But Mr. Schooff knows exactly what he does and has.

THE COURT:  We don't have Mr. Schooff on this phone call and it probably would have been helpful to have him on this phone call.  I am not going to order Evanston to pay these kinds of bills to companies.

MR. SCHOOFF:  Your Honor, this is George Schooff.  I am on the line.  I'm sorry.

THE COURT:  I didn't know you were on the line.

MR. SCHOOFF:  I am here.  I am here.

THE COURT:  You weren't originally, so I didn't know you were on the line.

MR. SCHOOFF:  I did to the gentleman that originally came on, and then I held my tongue knowing that --

THE COURT:  Okay.

MR. SCHOOFF:  I'll be better in the future.

THE COURT:  All right.  Go ahead.

MR. SCHOOFF:  If you have any questions directly to me, I'm happy to ask them -- or happy to answer them.

THE COURT:  And you've heard my comments about the time.

MR. SCHOOFF:  Yes.  And my question is, what to do? I can tell you, I did that.  These were recreated, because, as Your Honor may recall, Mr. Schulze didn't permit me --

THE COURT:  Excuse me.  You cannot continue to speak also.  I'm speaking.

MR. SCHOOFF:  Thank you.  Thank you.

THE COURT:  There's no doubt you can filter out information that might be used in defending on the coverage. But these bills that are being submitted go well beyond that. Have you heard what Mr. Schulze said is acceptable and how do you compromise?

MR. SCHOOFF:  Well, I think the better question is I'm not sure that's a compromise at all.  But regardless, as I

understood, the original objection was that they couldn't tell that the information provided was in defense of the Vitamin Energy litigation. So I went back, these other bills that were recreated after the fact, given our prior relationship, our prior relationship with Vitamin Energy. And what I did then was I made it abundantly clear in these entries that the work was indeed done in defense of litigation and then removed the specifics of the work provided because, as I understood it, there had been no effort at all to exclude off any communications between Ms. Pallet and Mr. Height and that was a concern to me. And it's reflected in the invoices that are presented. If they are not going to -- if Ms. Pallet is going to confer with Mr. Height about the coverage issues or vice versa, if Mr. Height is going to confer with Ms. Pallet, I need to take steps under the district rules of professional conduct, to make sure that I'm not in violation of those rules and subjecting myself to possible discipline here in Michigan.

The upshot is I'm caught between a rock and a hard place here, and I'm not quite sure what more would be provided. And I think Reid addressed this point appropriately. If I simply wrote, having a telephone conference with redact, would that really make a difference? I will in the future. And certainly with bills going forward but those bills were recreated after the decision was made that we could no longer

proceed on the arrangement that I originally had with 5-hour Energy.

THE COURT: Well, what I'm saying is that the bills that are being submitted now are not reasonable to require Vitamin Energy to pay them. I'm sorry, Evanston, to pay it. They're just too unspecific. And if you could submit a case to me that stands for the proposition that you can submit a bill like you're submitting, I'll consider it. But just to say it's to work on a case, I'm not aware of any law that says that's sufficient. If you want to do some research and send it to me and file it in the record, I'll consider it. But I doubt it to find any case that stands for that proposition.

The important thing is that independent counsel has been appointed here. You do have a claim against Evanston for bad faith. And they have a right to see, to some extent, without defeating or limiting coverages, the work you're doing. And you're going to have to submit bills that are more sufficient. If you feel that there's something that should not be said in the bill or that there's an attorney-client privilege or something that might violate the rules of professional conduct in Michigan, I'll afford you the right to send it to the -- send the bill to the Special Master to review, and make a decision whether or not you have to include that. But I just think that's a stretch.

But the bills that are being submitted are not sufficient, in my opinion.  So I want you to go back and go over them.  And obviously, you said that we created those based upon the fee agreement you had with the client up to that point, and make them more specific.  And Mr. Schulze recognizes that there are certain things you can't reveal in those bills. And if you want to look at the transcript of this phone conference, because we've been on the record, as I said, I think I said originally, then do so and hold Mr. Schulze to what he said.

But the bills that have been submitted at this point are not adequate.  So I will grant the motion for clarification only to the extent of what I've said during this phone conference.  There is a need for clarification of what's in those bills.  Obviously, I said in my order that timesheets requesting the hourly work performed by Legal Services Group and yourself, Mr. Schooff, and if those bills just don't comply with that order, I'm not saying you have to put everything in there, that's not what I'm saying.  You understand that.  But what is being submitted is not sufficient.

So I'm going to ask you to go back and see if you can work with Mr. Schulze in submitting timesheets that he can accept.  And if you can't, I'll get back and get involved in some way or the Special Master will.  But there's certainly

been an effort here by the insurance company to appoint independent counsel. Independent counsel is entitled to get paid under that insurance policy, and you are that independent counsel.

And but again, I appreciate the restrictions that you feel you're under, but the bills that are being submitted are not sufficient. So somehow you have to figure out how to give Evanston more information, so they could make an appropriate decision under the terms of policy as to what has to be paid for your services.

All right. Is there anything else that any party wants to put on the record about any of these matters at this point? So look for an order granting the motion to clarification to hit the docket. Look for an order granting the Special Master and referring matters to the Special Master. And look for an order extending the discovery, the dates in the schedule order, I will enter a Fifth Amended Scheduling Order.

I think that covers all of the orders that I'm going to enter at this point. Anything else anyone wants to bring to my attention? Mr. Schulze? Mr. Winthrop? Ms. Schooff?

MR. SCHULZE: No, Your Honor. Thank you.

THE COURT: All right. I thank everybody for being available. It's now 5:55 eastern standard time. I know some of you are still in the middle of your work day, but I'm not.

But I just wanted to make sure we covered everything during this phone conference and try to keep this case moving as efficiently as we can.  It's a heavily litigated case, and that's not meant as any criticism for anyone.  Lawyers have a right to represent their clients as they see fit within the professional rules, and we'll just deal with the court what we have to deal with in the litigation.

All right.  Everyone have a good holiday season and a good new year's.  And I once heard somebody say, further the affiant sayeth not.  All right.  I'm going to end the phone conference at this point.  I appreciate everybody being available. Bye-bye.

* * * * *

# C E R T I F I C A T I O N

We, Pollyanna Hyre , court approved transcribers, certify that the foregoing is a correct transcript from the official electronic sound recording of the proceedings in the above-entitled matter, and to the best of our ability.

_Pollyanna Hyre_
_____
 Pollyanna Hyre


_____January 3, 2023_____


    DATE: