IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

VITAMIN ENERGY, INC.,

              Plaintiff,

    v.

EVANSTON INSURANCE COMPANY,

              Defendant.

CIVIL ACTION
NO. 19-3672

## OPINION

**Slomsky, J.**                                                    **August 29, 2023**

## I.   INTRODUCTION

As trial approaches in the present case, the parties have exchanged expert witnesses and reports.  At issue here is Plaintiff Vitamin Energy, Inc.'s ("Plaintiff" or "Vitamin Energy") intention to introduce the testimony of David A. Gauntlett, an insurance industry expert, in support of its case at trial.  On June 7, 2023, Defendant Evanston Insurance Company ("Defendant" or "Evanston") filed a Motion to Exclude The Opinions of Vitamin Energy's Expert David A. Gauntlett.  (Doc. Nos. 243, 244.)  On July 7, 2023, Plaintiff filed its Response in Opposition.  (Doc. No. 264.)  On July 17, 2023, Defendant filed a Reply.  (Doc. No. 269.)

For reasons that follow, Defendant's Motion to Exclude The Opinions of Vitamin Energy's Expert David A. Gauntlett (Doc. Nos. 243, 244) will be **DENIED**.

## II.   FACTS

Plaintiff has asserted three claims against Defendant: (1) declaratory judgment; (2) breach of contract; and (3) bad faith/violation of 42 Pa. C.S. § 8371.  (See Doc. No. 137 at ¶¶ 74-113.)  As Plaintiff notes in its Response to the present Motion, it "seeks recovery of damages from

1

Evanston on the basis of: (1) breach of contract common law bad faith; and (2) statutory bad faith

under 42 Pa. C.S.A. § 8371." (Doc. No. 264-1 at 1.)

As noted above, Plaintiff retained David Gauntlett as an insurance industry expert to opine

on the pending litigation, specifically as to whether Evanston acted in bad faith. (Doc. No. 244-2

at 8:10-15.) Gauntlett is "an attorney licensed in California . . . who specializes in representing

policyholders in connection with litigating insurance claims under a variety of different coverages

but particularly intellectual property claims and, specifically, claims involving the subspeciality of

personal and advertising injury coverage." (Doc. No. 244 at 3) (citing Doc. No. 244-2 at 32:4-17.)

Gauntlett issued his preliminary report on April 11, 2023. (Doc. No. 244-1.) He issued a rebuttal

report on May 9, 2023, the day he was deposed. (Doc. No. 244-3.)

## III.   LEGAL STANDARDS[1]

Federal Rule of Evidence 702 governs the admissibility of expert testimony. It provides

as follows:

> A witness who is qualified as an expert by knowledge, skill, experience, training,
> or education may testify in the form of an opinion or otherwise if:
>
>> (a) the expert's scientific, technical, or other specialized knowledge will
>> help the trier of fact to understand the evidence or to determine a fact in
>> issue;
>>
>> (b) the testimony is based on sufficient facts or data;
>>
>> (c) the testimony is the product of reliable principles and methods; and
>>
>> (d) the expert has reliably applied the principles and methods to the facts of
>> the case.

Fed. R. Evid. 702.

---

[1]   In the Motion to Exclude, Defendant cites Federal Rules of Evidence 104, 702, and 703 in
support of its argument. (Doc. No. 243 at 1.) However, in the corresponding memorandum in
support of its Motion, Defendant only addresses Rule 702. As such, the Court's analysis only
will cover the standard set forth in Rule 702.

A judge, in applying Rule 702, fulfills the role of a "gatekeeper to ensure that any and all expert testimony or evidence is not only relevant, but also reliable." UGI Sunbury LLC v. A Permanent Easement for 1.7575 Acres, 949 F.3d 825, 832 (3d Cir. 2020) (internal quotation marks omitted) (citing Pineda v. Ford Motor Co., 520 F.3d 237, 243 (3d Cir. 2008)).  The Third Circuit has framed the "three major requirements [of Rule 702 as:] (1) the proffered witness must be an 'expert,' i.e., must be qualified; (2) the expert must testify about matters requiring scientific, technical, or specialized knowledge; and (3) the expert's testimony must assist the trier of fact." Pineda, 520 F.3d at 244 (citing Kannankeril v. Terminix Int'l, Inc., 128 F.3d 802, 806 (3d Cir. 1997)).  Simplified, a judge's exercise of this gatekeeping responsibility is guided by the "trilogy of restrictions on expert testimony: qualification, reliability and fit."  Schneider ex rel. Estate of Schneider v. Fried, 320 F.3d 396, 404 (3d Cir. 2003) (citing In re Paoli R.R. Yard PCB Litig., 35 F.3d 717, 741-43 (3d Cir. 1994)).

For purposes of this Opinion, only the third restriction, "fit," is at issue.[2]  (See Doc. No. 244 at 9.)  Fit requires that the expert's opinion "'help the trier of fact to understand the evidence or to determine a fact in issue.'"  UGI Sunbury LLC, 949 F.3d at 835 (citing Fed. R. Evid. 702(a); Karlo v. Pittsburgh Glass Works, LLC, 849 F.3d 61, 81 (3d Cir. 2017)); see also Daubert v. Merrell Dow Pharms., Inc., 509 U.S. 579, 591 (1993) ("Rule 702 further requires that the evidence or testimony 'assist the trier of fact to understand the evidence or to determine a fact in issue.'  This condition goes primarily to relevance.  'Expert testimony which does not relate to any issue in the case is not relevant and, ergo, non-helpful.'") (citations omitted).

---

[2]  Defendant writes: "Evanston's motion is based primarily on its challenge to the 'fit' of Gauntlett's proffered opinions and testimony." (Doc. No. 244 at 9.)

Typically, the court's power to decide whether expert testimony will assist the trier of fact, and therefore may be admitted, is broad.  See Berckeley Inv. Group v. Colkitt, 455 F.3d 195, 217 (3d Cir. 2006) (citation omitted).  This power is in alignment with the Federal Rules of Evidence's "liberal policy of admissibility for expert testimony and embod[iment of] a 'strong and undeniable preference for admitting any evidence having some potential for assisting the trier of fact.'" Wagner v. Progressive Corp., No. 20-5407, 2021 WL 6137027, at *1 (E.D. Pa. Dec. 29, 2021) (citations omitted).

However, a court's power is curtailed by the following: "the District Court must ensure that an expert does not testify as to the governing law of the case."  Berckeley, 455 F.3d at 217. Under Federal Rule of Evidence 704, however, "[a]n opinion is not objectionable just because it embraces an ultimate issue." Fed. R. Evid. 704.  But the Advisory Committee's Notes to Rule 704 state:

> The abolition of the ultimate issue rule does not lower the bars so as to admit all opinions.  Under Rules 701 and 702, opinions must be helpful to the trier of fact, and Rule 403 provides for exclusion of evidence which wastes time.  These provisions afford ample assurance against the admission of opinions which would merely tell the jury what result to reach . . .

Fed. R. Evid. 704, advisory committee's notes.

Thus, while Rule 704 permits an expert's testimony to "embrace[] an ultimate issue," the Third Circuit cautioned that an expert may not provide a legal opinion because "[s]uch testimony . . . would usurp the District Court's pivotal role in explaining the law to the jury" and would "not [be] helpful to the trier of fact." Berckeley, 455 F.3d at 217 (citing United States v. Leo, 941 F.2d 181, 195-96 (3d Cir. 1991); First Nat'l State Bank v. Reliance Elec. Co., 668 F.2d 725, 731 (3d Cir. 1981) (per curiam)); FedEx Ground Package Sys., Inc. v. Applications Int'l Corp., 695 F. Supp. 2d 216, 221-22 (W.D. Pa. 2010) (citing Leo, 941 F.2d at 197); Weinstein's Federal Evidence

§ 704.04 ("A troublesome issue arises when opinion testimony on an ultimate fact is couched in terms of a legal standard or legal conclusion. In general, testimony about a legal conclusion, or the legal implications of evidence is inadmissible under Rule 704.") This prohibition extends to an expert's opinion "as to legal standards . . . [or] legal conclusions drawn by applying the law to the facts." Highway Materials, Inc. v. Whitemarsh Twp., Montgomery Cnty., Pa., No. 02-3212, 2004 WL 2220974, at *20 (E.D. Pa. Oct. 4, 2004) (citations omitted), aff'd Highway Materials, Inc. v. Whitemarsh Twp., 386 F. App'x 251 (3d Cir. 2010). Relatedly, a witness may not testify as to the "meaning of terms in a statute or regulation or the application of such terms to specified conduct." Jordan v. Temple Health Sys., Inc., No. 16-5561, 2018 WL 3649019, at *1 (E.D. Pa. Aug. 1, 2018); see also Weinstein's, § 704.04 ("Generally, if the expert expresses an opinion using legal terms that follow the statutes related to the tort or crime at issue, it is more likely to be held that the expert is giving a legal conclusion."). It also extends to "opinions which would merely tell the jury what result to reach." Jordan, 2018 WL 3649019, at *1 (citing Fed. R. Evid. 704, advisory committee's notes).

IV.    ANALYSIS

Defendant moves to exclude Gauntlett's opinions and testimony on three grounds: (1) his reports consist of impermissible legal opinions; (2) his rebuttal report is untimely; and (3) his reports impermissibly rely on "non-disclosed and non-discoverable 'facts'" stemming from conversations with George Schooff. (Doc. No. 244 at 1-2, 5-8, 10-17.) The Court need only address the first argument. [3]

---

[3]    As to Defendant's second argument, should Defendant wish to depose Gauntlett on the contents of his rebuttal report, the Court will permit it to do so. Regarding Defendant's third argument, it is unclear exactly what facts Schooff conveyed to Gauntlett. From the cursory information provided during Gauntlett's testimony, the facts appear only to consist of background information a lawyer would provide to an expert witness being retained to give testimony in a case.

Defendant argues that Gauntlett's opinions and corresponding testimony "should be excluded from trial because his opinions constitute purely legal opinions as to his assessment of whether Evanston's actions meet the legal standard for bad faith." (Doc. No. 244 at 1.) But further exploration of relevant case law will shape an understanding of the admissibility of expert testimony that discusses industry customs, practices, and accepted standards, which Gauntlett provides.

    1.  <u>Case Law</u>

The Third Circuit has noted that "the line between admissible and inadmissible expert testimony as to the customs and practices of a particular industry often becomes blurred when the testimony concerns a party's compliance with customs and practices that implicate legal duties." <u>Berckeley</u>, 455 F.3d at 218. Historically, an expert witness may testify as to customs and practices but may not testify as to legal duties stemming from such customs or whether a party met those duties. <u>See</u> <u>id.</u> at 217-19; <u>Leo</u>, 941 F.2d at 196-97 (citations omitted); <u>U.S. v. Monaghan</u>, 648 F. Supp. 2d 658, 661 (E.D. Pa. 2007); <u>Jordan</u>, 2018 WL 3649019, at *2 ("an expert may opine on established industry customs and standards, provided the testimony stops short of defining the legal duties arising from industry customs or opining on whether the defendant has complied with those duties") (citations omitted).

In <u>Berckeley</u>, for example, the court permitted an expert to testify about the "customs and business practices in the securities industry at the time the parties entered into the Agreement," as the court found that this testimony "provides an important context which will aid the jury . . . ." 455 F.3d at 218. However, the court declined to allow the expert to testify as to whether the plaintiff "complied with legal duties that arose under the federal securities laws" because such testimony would constitute a legal opinion and also precluded the expert from testifying that "in

light of the apparent routine industry practice it was reasonable for Berckeley to have believed that it was entitled to the Section 4(1) exemption" because this latter statement again "concern[ed] Berckeley's legal duties resulting from the various SEC pronouncements." Id. (citing Leo, 941 F.2d at 197).

And in bad faith insurance cases such as this one, "the issue of whether an expert is warranted . . . is very fact specific to each case and dependent on the complexity of the material." Wagner, 2021 WL 6137027, at *3 (internal quotation marks omitted) (citing Monaghan v. Travelers Prop. Cas. Co. of Am., 2014 U.S. Dist. LEXIS 96524, at *10 (M.D. Pa. 2014)).

2.  Parties' Arguments and Analysis

To return to Defendant's argument, it contends that Gauntlett opines on the relevant legal standards and whether Defendant violated those standards, thereby "usurp[ing] the role of the Court in advising the finder of fact of the law and the jury in determining whether a party has provided evidence sufficient to prove its case." (Id. at 1, 14.)  Accordingly, Defendant asserts, these opinions "do not assist the trier of fact, are improper under Rule 702 of the Federal Rules of Evidence, and are to be excluded." (Id. at 1.)

Plaintiff maintains that Gauntlett's opinions are permissible because they discuss "the reasonableness of the actions of Evanston in the handling of the claim of Vitamin Energy, i.e. whether the claim handling comported with acceptable practices within the industry." (Doc. No. 264-1 at 2.)  Specifically, Plaintiff argues that Gauntlett's testimony is "proper and appropriate" because it "has [been] offered . . .  to support the allegations that the conduct of Evanston was unreasonable, i.e. failing to comport with accepted standards within the industry for the handling of claims." (Id. at 3.)

Further, Plaintiff cites <u>Wagner</u> in support of its argument.  (Doc. No. 264-1 at 3-5.)  There, in ruling on a Motion to Preclude Testimony of an insurance industry expert, the court stated:

> The Court agrees that some of Setcavage's opinions use the same terms of art and legal phrases that the jury may be required to apply in this case. SCR at 14, 17 (opining that Defendant "never made a good faith attempt" to effectuate prompt settlement of the claim; "it was not indicia of a good faith attempt" to promptly, fairly, and equitably settle the claim; and "claims handling in this regard is indicia of a reckless disregard.")

<u>Wagner</u>, 2021 WL 6137027, at *3.

However, the court in <u>Wagner</u> permitted the expert's testimony, holding:

> Taken at face value, these opinions might sound to the jury like conclusions of law and the Court is wary of expert testimony that could induce the jury to surrender its role to a party's expert.  However, "[t]he basic approach to opinions, lay and expert, is to admit them when helpful to the trier of fact."  Fed. R. Evid. 704, advisory committee's notes.  The Court will admit Setcavage's testimony so long as he refrains from framing his opinions as legal conclusions.

<u>Id.</u>

Here, similarly, Gauntlett's report incorporates legal terms of art which opine on the pending bad faith claims, such as: (1) "[Evanston] unreasonably denied its duty to defend"; (2) "there is clear and convincing evidence of bad faith based on Evanston's unreasonable and continued refusal to defend"; and (3) "Evanston's reckless disregard for its lack of reasonable basis for denial was further shown by its refusal to pay for the defense fees and costs . . . ."  (Doc. No. 244-1 at 36.)

The Court agrees with the holding in <u>Wagner</u>.  Gauntlett may testify about insurance industry customs, practices, and accepted standards but he must be careful to not "fram[e] his opinions as legal conclusions."  Without question, he cannot testify that Evanston breached its duty of good faith and fair dealing.

**V.      CONCLUSION**

For all these reasons, Defendant's Motion to Exclude The Opinions of Vitamin Energy's

Expert David A. Gauntlett (Doc. Nos. 243, 244) will be denied.  An appropriate Order follows.



BY THE COURT:


/s/ Joel H. Slomsky
JOEL H. SLOMSKY, J.